IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **Brian Humphrey**, on behalf of himself and all similarly situated individuals,<br><br>     Plaintiff,<br><br>v.<br><br>**James LeBlanc**,<br><br>     Defendant. | No. 3:20-cv-233-JWD-SDJ<br><br>Hon. John W. deGravelles, District Judge<br><br><br>Hon. Scott D. Johnson, Magistrate Judge |

### Plaintiff's Memorandum in Support of Motion to Compel the Production of CAJUN Data

Plaintiff submits this memorandum in support of his motion to compel Defendant, DOC Secretary James LeBlanc, to produce data from its "CAJUN" database (dkt. 36). These data are central to the claims in this case: they show which DOC prisoners were overdetained, for how long, and when. The CAJUN information is therefore critical to the merits of the case, as it will show whether the DOC has had a widespread practice of overdetaining inmates who are entitled to immediate release, which in turn is essential to prove that Defendant was deliberately indifferent to a pervasive problem. CAJUN discovery is also critical for proving that the class Plaintiff seeks to certify satisfies the criteria of Rule 23: it is the evidence that will show that the proposed class is sufficiently numerous; that Plaintiff was overdetained for reasons similar to the other members of the class, and thus that he is an appropriate class representative; and that the reasons for the overdetention of the class members are sufficiently similar that their overdetention claims should be

tried in a single adjudication, rather than in multiple different trials. Those are the matters that Plaintiff must prove now, during the period for discovery on class certification that the Court has ordered. As such, this is the appropriate time to seek production of this information.

Moreover, the DOC is continually destroying the CAJUN data Plaintiff has requested. Each time a member of the putative class in this case re-enters DOC custody, new data regarding that person is entered into CAJUN. CAJUN is a decades-old computer system that lacks a storage feature, and as a result any new entries for that person overwrite their existing data, including the data that shows the person to be a member of the putative class Plaintiff seeks to represent. After the data is overwritten in CAJUN, the only way to identify class members is to sift through thousands of paper files of *every prisoner* committed to DOC custody, and then re-calculate each person's sentence by hand—a task that is effectively impossible. As a result, once a person's data is overwritten in the CAJUN database, the likely effect is that the person will never be identified and will lose their claims in this case forever.

For these reasons, at the outset of discovery in this case Plaintiff served a Rule 34 request asking for relevant CAJUN data in the form of a "pull document"—data extracted from the CAJUN database that identifies those DOC prisoners who were overdetained during the class period. Indeed, the DOC has previously extracted this same data (for the month of February 2019) in order to demonstrate the magnitude of its overdetention problem, as part of a grant application to the U.S. Department of Justice. Plaintiff's Rule 34 request seeks production of the same data, but covering

the entire class period in this case, so that members of this putative class could be identified and the evidence entitling them to relief would be preserved.

Defendant has refused. First, he objects that the request is unduly burdensome because it would take DOC staff between 18 and 28 hours to compile a pull document for each month of the class period, meaning that it would take hundreds of hours to compile data for the entire class period. But the DOC's own Rule 30(b)(6) witness revealed that this claim was a wild exaggeration: the DOC witness testified that extracting the "pull document" data actually takes only four hours for each month, meaning that the entire production at issue can be accomplished in short order. That is an insignificant burden compared with the central role that the CAJUN data compilations will play in this case.

Second, Defendant claims that producing the pull document will require him to "create" a document, which is beyond the scope of a permissible request under Rule 34. This objection, however, simply ignores both the nature of Plaintiff's request and the language of Rule 34. Plaintiff is not asking Defendant to create a document, but rather to extract and compile certain electronically stored information from the CAJUN database. Rule 34 specifically authorizes requests for production that require translating electronically stored information into a reasonable usable form, which is all Plaintiff seeks here.

Third, Defendant has objected that the request for CAJUN data is premature. That argument is simply a nonstarter. Aside from the fact that the CAJUN data is continually being overwritten, this case is currently in class discovery, and the

CAJUN data is central to satisfying Plaintiff's burden that the class is certifiable under Rule 23—including, for example, Rule 23(a)(1)'s numerosity requirement, which Defendant contests. Plaintiff also bears the burden to show, among other things, that his claims are typical of the members of the putative class, and that common issues would predominate over individual ones in an eventual trial. The data Plaintiff seeks in this discovery motion are central evidence to those issues. This important class-certification discovery should proceed now.

The stakes of this request are weighty for the numerous putative class members identified in the data Plaintiff is requesting. This Court and others Louisiana are well aware of the scope of the problem. One court in this state characterized the overdetention factual record as providing as "staggering volume of factual evidence of incompetence and indifference in the Department headed by LeBlanc." *Traweek v. Gusman*, 19-cv-01384-MLCF-JVM, dkt. 129 at 13 (E.D. La., Jan. 20, 2021). That court also found it "plausible that Secretary LeBlanc engaged in a policy of unconstitutionally over-detaining persons and that policy was the driving force behind" the plaintiff's alleged constitutional injury. *Grant v. Gusman*, 2018 WL 3869494, at *11 (E.D. La. Aug. 14, 2018). And this Court held that the "state of affairs at the DOC, where DOC's staff were passive and essentially flying blind unless contacted by a concerned family member, evinces a reckless disregard for the likelihood of overdetention in the DOC system." *Crittindon v. Gusman*, 2020 WL 1862467, at *15 (M.D. La. Apr. 13, 2020).

Further, overdetention and false imprisonment are serious injuries, a fact recognized by juries and reflected in settlements. *See, e.g.*, *Brzowski v. Sigler*, No. 17-cv-9339, dkt. 168 (N.D. Ill. Aug. 6, 2020) (jury award of $1,000 per day of overdetention to a plaintiff who was overdetained for 721 days); *Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 267 (D.D.C. 2011) (describing a $12 million settlement in an overdetention class action). The data at issue are central to proving that there is a widespread practice of overdetention, and to identifying whom that practice has injured, and how. They are therefore central to the merits of Plaintiff's claims and indispensable to class certification. And each entry that is overwritten will likely deprive yet another class member of the recompense to which they are entitled if Plaintiff succeeds. The Court should order Defendant to produce the data Plaintiff has requested.

## Background

Plaintiff brought this putative class action lawsuit on behalf of himself and other individuals who were entitled to be released at the time of their sentencing but were unlawfully kept in the DOC's custody for more than 48 hours. *See* First Am. Compl., dkt. 11 ¶ 51. The period covered by the putative class, and the period at issue in this discovery dispute, extends from April 2019 through the present. *Id.* The document request at issue is attached as Exhibit A, and Defendant's responses are attached as Exhibit B.

1.    **The CAJUN database and the requested information**

Much of the information necessary to adjudicate Plaintiff's class-action claims is contained within just one repository: the DOC's electronic records database known as "CAJUN" (the Corrections and Justice Unified Network).[1] CAJUN records data about each person in DOC custody, including the date an individual was admitted to custody; the date the individual was released; the individual's "mathematically correct release date," and the date on which the DOC obtained the paperwork necessary to compute the individual's sentence. Ex. C at 56:20–57:22. CAJUN also records an individual's "must serve" information, which reflects how much time the inmate has left to spend in prison. Ex. E at 87:3–10. Anyone with a negative must serve number is eligible for immediate release. *Id.* at 87:23–25. These data identify individuals whose sentences were complete as of the day they were sentenced but who remained in DOC custody for more than 48 hours thereafter. Ex. C at 56:20–57:22. For example, the DOC's representative testified that with three pieces of CAJUN data, most class members could be identified:

> Q: Okay. So with those three pieces of data, raw GTPS date, release date, and admit date, you could find most of the inmates whose sentence was complete at the time of their sentencing, but who were later released more than 48 hours later, correct?
> A: Yes.

---

[1] In this memorandum Plaintiff cites to three different depositions. Exhibit C is Rule 30(b)(6) deposition taken in this case regarding CAJUN. (The deponent, Melanie Gueho, is Director of Data Research for the DOC.) Exhibit D is the deposition testimony of Ms. Gueho, again a 30(b)(6) representative for the DOC, taken in a similar overdetention case, *Grant v. Gusman*, No. 17-cv-2797 (E.D. La.). Exhibit E is the deposition of the DOC, through its 30(b)(6) representative Angela Griffin, who oversees the DOC department that performs time computations for inmates sentenced to DOC custody. Ms. Griffin was also deposed in *Grant*.

*Id*. at 57:16–22.

For the CAJUN data to be usable for identifying persons who were overdetained, the fields described above must be extracted from the CAJUN database. The extracted data are then compiled in a separate file referred to by the DOC as a "pull document." *See* Ex. C at 59:12–61:3; Ex. D at 23:1–24:7. Extracting these data does not create any new data, but merely compiles existing CAJUN data into a format that can be used to identify those persons who have been overdetained. Ex. C at 58:24–59:9. The DOC voluntarily prepared such a "pull document," identifying the persons it overdetained in the month of February 2019, as part of a grant application to the U.S. Department of Justice in order to demonstrate the magnitude of its overdetention problem. Ex. C at 59:12–61:3; Ex. D at 23:1–24:7.

At the same time, CAJUN data is constantly being overwritten. CAJUN is a decades-old information system without a robust data recording feature. As a result, every time new data for a prisoner is entered into CAJUN, the preexisting data is overwritten and simply ceases to exist. *Id*. at 29:21–30:24. For example, if a putative class member re-enters DOC custody for whatever reason, new release data are entered into the fields described above, the existing data are replaced with the new data, and the evidence of their prior overdetention ceases to exist. *Id*. at 30:25–31:18. Once the CAJUN sentencing data are overwritten, the only remaining documentary evidence of a person's overdetention is contained in scanned copies of their sentencing paperwork. Those are also stored by the DOC, but the only way an overdetained person could be identified with this paperwork would be perform a manual

7

examination of the paperwork for *each person released by the DOC*, a task that would be prohibitively labor-intensive. *Id.* at 31:19–33:23.

## 2.    Plaintiff's requests and efforts to reach agreement

Plaintiff requested certain CAJUN information at the outset of discovery on June 23, 2020. *See* Ex. A. These requests asked Defendant to extract and produce compilations of CAJUN data in the form of a pull document similar to the one that the February 2019 pull document that the DOC had created for the Department of Justice, covering each month from April 2019 to the present. *Id.* at 3.

Defendant objected to providing any of this information, contending that the requests were unduly burdensome because they would take between 18 and 28 hours per month, meaning it would take "at least 230 hours to compile and check the information requested." Ex. B at 1–2. To test this claim, Plaintiff took a Rule 30(b)(6) deposition of the DOC. The DOC's Rule 30(b)(6) witness, Melanie Gueho, is the employee who personally puts together pull documents like the ones requested. Ex. C at 33:5–8. Contradicting the Defendant's exaggerated claim, she testified that generating a pull document would take only four hours for each month—a far cry from the 18- to 28-hour range that the Defendant claimed. Even after the DOC's own Rule 30(b)(6) witness gave this testimony, however, Defendant stood on his burden objection, this time unsupported with any description of what that burden might be. *See* Ex. F (Discovery correspondence, Jan. 15, 2021) at 2 (renewing Defendant's objections). Defendant also objected that he was not required to create a "pull

8

document" under Rule 34, and that the request was premature.[2] Ex. B at 2; Ex. F at 2. Despite Plaintiff's efforts, the parties have not been able to reach an agreement for the production of CAJUN data for the period of April 2019 through the present, necessitating this motion.

## Argument

It is difficult to overstate the importance of the CAJUN data to this case. No other repository of information contains the information necessary to identify which individuals were eligible for immediate release upon sentencing, determine their length of incarceration after sentencing, discover when the DOC obtained the paperwork necessary to compute their sentences, or determine how long it took to process that paperwork. This information is indispensable for proving that the putative class is sufficiently numerous, that Plaintiff's overdetention occurred for the same or similar reasons as the numerous other putative class members who were overdetained, and indeed that the various members of the putative class were overdetained for similar reasons.

Defendant's refusal to provide this CAJUN data is even more untenable because this information is constantly being overwritten. Given this ongoing spoliation, the central importance of these data, and the comparably minimal effort required to produce them, Plaintiff respectfully requests that the Court compel the immediate and ongoing production of CAJUN data.

---

[2] Defendant's further objection—that the requests would require the disclosure of private or confidential information—was resolved by this Court's entry of a confidentiality protective order. *See* dkt. 33.

1.      **Legal Standard**

Under Rule 26, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b); *Physicians All. Corp. v. WellCare Health Ins. of Ariz., Inc.*, No. 16-cv-203, 2018 WL 1704108, at *3 (M.D. La. Feb. 27, 2018).

With respect to electronically stored information, Rule 34 authorizes requests for "any designated documents or electronically stored information—including . . . other data or data compilations—stored in any medium from which information can be obtained either directly, or, if necessary, after translation by the responding party into a reasonably usable form." Fed. R. Civ. P. 34(a)(1)(A). Depending on the circumstances, Rule 34 contemplates that the responding party may "produce electronically stored information in the form it which it is ordinarily maintained," Fed. R. Civ. P. 34 advisory committee's note (2006 amendments), or, if necessary, that the "respondent may be required to use his devices to translate the data into usable form." Fed. R. Civ. P. 34 advisory committee's note (2006 amendments).

2.      **The CAJUN discovery is proportional to the needs of this case.**

The categories of CAJUN data that Plaintiff has requested are uniquely relevant to this case—particularly to establish the appropriateness of class certification under Rule 23, as well as to determine Defendant's liability (for both

Plaintiff's individual claims and the claims of the putative class in general) and to assess the resulting damages. Indeed, no other data or documents that could be produced in this case could adequately substitute for this vital information. Defendant has not contested the importance of the CAJUN information, which is beyond dispute.

> **a. The CAJUN data compilations are important evidence to show that class certification is appropriate under Rule 23.**

The CAJUN data are necessary to adjudicate class certification. First, the data are essential to allow Plaintiff to precisely determine how many individuals comprise the proposed class, which in turn is necessary to demonstrate numerosity pursuant to Rule 23(a)(1) and rebut Defendant's contention that Plaintiff's proposed class is insufficiently numerous. *See* dkt. 17 (Def.'s Answer to Am. Compl.) at ¶ 52 (denying Plaintiff's allegation that the proposed class satisfies each element of Rule 26(a)); Ex. G (Def.'s 2nd Am. Answers to Pl.'s First Set of Interrogatories) at 5 ("Defendant denies that Plaintiff can satisfy the requirements of F.R.C.P. Rule 23(a) because he will be unable to satisfy his burden of proving that a sufficient number of individuals were similarly overdue for release."). Defendant cannot on the one hand argue that Plaintiff cannot satisfy numerosity under Rule 23(a)(1) while at the same time refusing to provide the discovery that would allow Plaintiff to disprove that contention.

The CAJUN data are also important to prove that the proposed class satisfies the other factors under Rule 23. By way of example, Plaintiff expects the CAJUN data to show that the putative class members all suffered a lengthy delay for the same

reasons: the DOC waited to receive their sentencing paperwork, and then waited even longer after the sentencing paperwork was in hand to perform the sentencing calculation that would eventually ensure their release. *See* First. Am. Compl., dkt 11 ¶¶ 2, 29, 38 (alleging these two frequent causes of overdetention). The CAJUN data that Plaintiff seeks will demonstrate that these deficiencies—and not others—caused the numerous members of the putative class to be detained for weeks or months when they should have been released within hours. It is evidence that will allow Plaintiff to demonstrate that important, common issues in this case can be adjudicated together, rather than requiring separate trials. Plaintiff intends to rely on the system-wide information contained in CAJUN to show that a class-wide adjudication of these claims is feasible, efficient, and superior to individual litigation.

Under these circumstances, Defendant's contention that Plaintiff's requests are "premature" has no merit. The case Defendant cites for this proposition, *Walker v. Alta Colleges, Inc.*, No. 09-cv-894, 2010 WL 2710769 (W.D. Tex. July 6, 2010)*, see* Ex. B at 2 (citing *Walker*), involved a request for identifying information that was relevant only to damages. *Walker*, 2010 WL 2710769 at *9. That evidence was irrelevant to whether the class should be certified in the first place, and thus evidence that need not be produced until a class certification decision was made. *See id.* (explaining that evidence proving damage exposure "would only be relevant if and when a class is certified"). Here, by contrast, the CAJUN data Plaintiff seeks is relevant to proving both how many individuals were overdetained, and why. And showing that the reasons for the overdetention were common across the putative class

goes to the core of the class certification inquiry on which the parties are conducting discovery now.[3]

The CAJUN data are particularly relevant where the merits intersect with class certification. Plaintiff must demonstrate not only that he was overdetained, but also that he was overdetained because Defendant acted with deliberate indifference when he failed to implement policies to ensure the timely release of inmates. And deliberate indifference requires evidence of a pattern of similar constitution violations that "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice . . . ." *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009). The CAJUN data will demonstrate the frequency of overdetention within the DOC and reveal the extent to which Plaintiff's constitutional injury was caused by a widespread practice. Given Plaintiff's heavy burden of proof, CAJUN data about a large number of inmates are essential to litigate this claim. *See id.* at 851 (noting that "[a] pattern also requires sufficiently numerous prior incidents, as opposed to isolated instances" and explaining that that evidence of even eleven other instances is sometimes insufficient to establish a pattern (internal quotation marks omitted)).

Finally, the CAJUN data will show how long a person remained in DOC custody after the legal authority to detain them expired. The amount of time that individuals were unlawfully incarcerated is important for any damages calculation in

---

[3] Even if the CAJUN data strictly concerned only the merits, moreover, in this case, unlike *Walker*, that data is being destroyed, rendering it effectively inaccessible as time goes on.

a case like this. *See, e.g.*, *Barnes v. District of Columbia*, 278 F.R.D. 14, 21 (D.D.C. 2011) (holding, in an overdetention class action, that "the jury will assign damages using a matrix based upon the length of overdetentions . . . .).

### b. Plaintiff's request is proportional to the needs of the case and would impose a minimal burden on Defendant.

In the context of this case, and considering the unique importance of the CAJUN data, Plaintiff's requests are minimally burdensome. This case concerns the DOC's policies and practices that result in the systematic unlawful deprivation of liberty for numerous individuals. From a purely financial standpoint, therefore, this case is significant. As noted above, a similar overdetention class action settled for $12 million. *See Barnes*, 793 F. Supp. 2d at 267.

In contrast to the social and monetary interests at stake in this litigation, Defendant has not demonstrated that it would be unduly burdensome to provide the CAJUN information. As the DOC's Rule 30(b)(6) witness explained, an entire year's worth of relevant CAJUN data could be provided with just six days of work by one DOC employee. *See* Ex. C at 53:15-54:7. Even after the DOC's own designated witness offered this testimony—which showed that the actual time to complete this production would represent a small fraction of what Defendant originally claimed— Defendant continued to insist, without explanation, that Plaintiff's requests were too burdensome. Ex. F at 2. But unadorned assertions about burden are not sufficient to justify withholding such centrally important information. *See Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. 2014) ("A party resisting discovery must show specifically how each . . .document request is overly broad, unduly burdensome, or

oppressive . . . by submitting affidavits or offering evidence revealing the nature of the burden. Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate." (internal citations omitted)).

The CAJUN information represents the only means of identifying class members and systematically assessing the length of their overdetention. There is no substitute for this data. Simply producing a pull document, as the DOC has done of its own accord on other occasions, represents the most reasonable and efficient way to ensure that this vital information can be used in the litigation. In the absence of an alternative means of obtaining the CAJUN data, Plaintiff's requests are properly tailored to this case.

### c. Plaintiff is requesting the production only of existing data, which is both permissible and commonplace for electronically stored information.

Defendant's objection that Plaintiff's requests would require Defendant to create new documents, and that the requests are therefore improper, is meritless. The CAJUN data constitute ESI governed by Rule 34(a)(1)(A), which expressly states that a party may request data that need to be translated into a "reasonably usable form." As the Rule 34 Advisory Committee's notes explain, Rule 34 "makes clear that Rule 34 applies to electronics data compilations from which information can be obtained only with the use of detection devices, and that when the data can as a practical matter be made usable by the discovering party only through respondent's devices, respondent may be required to use his devices to translate the data into usable form." Fed. R. Civ. P. 34 advisory committee's note (1970 amendments).

The DOC's designated Rule 30(b)(6) witness confirmed that creating a pull document does not require the creation of any new data. Ex. C at 58:24-59:9. She was asked: "Okay, and when you create a pull document, you're not creating any new data; you're just pulling data from different places in Cajun and assembling it into one document. Is that correct?" She responded: "Correct." *Id*. at 58:24–59:4. Extracting existing CAJUN data into a document that can be viewed by the parties and the Court is therefore precisely the type of translation into a reasonably usable form that Rule 34 contemplates. *See Apple Inc. v. Samsung Elecs. Co.*, No. 12-cv-0630, 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013) ("While this court has held that a party should not [be] required to create completely new documents, that is not the same as requiring a party to query an existing dynamic database for relevant information. Courts regularly require parties to produce reports from dynamic databases, holding that the technical burden . . . of creating a new dataset for the instant litigation does not excuse production. Compelling production here would therefore not violate any established discovery principles." (internal quotation marks omitted); *Bean v. John Wiley & Sons Inc.*, No. 11-cv-08028, 2012 WL 129809, at *1 (D. Ariz. Jan. 17, 2012) (overruling the defendant's objection that producing ESI requiring creating a new document and noting that "[i]t is defendant's burden to translate ESI into a useful format"). In short, the discovery rules governing ESI are expressly designed to permit the translation of otherwise inaccessible information into a format that the parties can use—which is all that Plaintiff is requesting here.

## Conclusion

Plaintiff respectfully requests that the Court compel the production of CAJUN data pursuant to Plaintiff's first set of requests for production to ensure that this information essential to class certification, liability, and damages is produced without further delay.

February 22, 2021                    Respectfully submitted,

                                     /s/ John Hazinski
                                     *One of Plaintiff's Attorneys*

Mercedes Montagnes                   William Most
Rebecca Ramaswamy                    David Lanser
Jamila Johnson                       Most & Associates
Nishi Kumar                          201 St. Charles Ave.
Promise of Justice Initiative        Ste. 114 #101
1024 Elysian Fields                  New Orleans, LA 70107
New Orleans, LA 70117                (504) 509-5023
(504) 529-5955

Mike Kanovitz
Sarah Grady
Steve Weil
John Hazinski
Loevy & Loevy
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900