UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BRIAN HUMPHREY, on behalf of himself and all similarly situated individuals, | * * * * * | CIVIL ACTION NUMBER: 3:20-cv-00233-JWD-SDJ |
| VERSUS | * * * | JUDGE JOHN W. DeGRAVELLES |
| JAMES LEBLANC | * * * | MAGISTRATE JUDGE SCOTT JOHNSON |

********************************************************************

# AFFIDAVIT

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

    **BEFORE ME**, the undersigned notary, duly authorized in the State and Parish aforesaid, personally came and appeared:

### MELANIE GUEHO

Who, based upon her personal knowledge, did depose and say the following:

1. I am employed by the Department of Corrections as a Business Analyst. I am the Director of Data Research.

2. As a part of my job duties, I am familiar with the CAJUN System. However, I do not perform any duties related to Pre-Classification or time computation.

3. CAJUN is DOC's electronic data management system where inmate data is stored. CAJUN contains inmate information, which includes the following records that are stored in the system: (1) master record; (2) docket and offense records; (3) preclass and time computation records; (4) transfer records; (5) victim information; (6) relation information;

**EXHIBIT 2**

(7) education and program information for programming obtained while in DOC custody;

(8) restitution data for supervised population; (9) parole and pardon board records relative to hearings scheduled and outcomes.

4. In early 2019, the DOC was applying for a grant to the federal government seeking funds to assist in getting paperwork from the local jail and clerks of court to the DOC after an inmate had been sentenced to DOC time.

5. To assist in providing information for the grant application, I created what has been referred to as the February 19 pull document (attached as Exhibit 2-A).

6. To create this document, I performed code searches within CAJUN to pull various pieces of information from different records contained within CAJUN. In performing my code searches, I was looking for inmates who were released in February 2019 within seven days of the completion of their time computation.

7. The following columns appear on the February 2019 pull document, and a description og the contents of each column is provided:

- Sentence date -  the earliest sentence date for the particular incarceration period
- Admit date -  date the offender is required to serve DOC time
- Time Comp Ready - date of the initial time computation
- Last Time Comp Date - last date time computation was adjusted
- Raw GTPS date – GTPS stands for good time parole supervision. This column is the release date based on sentence length, good time application and jail credits. Does not include CTRP or loss of good time due to behavior.
- Release date – date inmate was released.
- Days over – number of days from admission date to release date. This is the amount of time that the offender spent in DOC custody. As I testified previously, this is a misleading heading and does not necessarily mean an offender was detained pasted his release date. It is simply the number of days from admit date to release date.
- Prec received -  date that the DOC received any information on an inmate. This does not mean that DOC received all paperwork required to calculate an inmate's sentence.

- Sent to Receive - number of days from sentencing until DOC received any paperwork on the inmate
- Received to comp - number of days between the first day that DOC received any paperwork for the inmate to the date that the time comp was complete.
- TM Ready to Rel - number of days between the date that the time computation ready date to the date that the offender was released.
- TM to Last – number of days from initial time computation to last time computation
- CTRP to Rel - Number of Days from CTRP date to Release date
- Raw to Release - Number of days from Raw date to Release date
- Jail Credit – number of jail credit days
- CTRP earned – CTRP credit earned

8. In order to create the pull document, I pulled information contained in various records within CAJUN, matched each record, compared each record and manually exported all information into a text file. I then pulled the information from the text file to an excel spreadsheet.

9. To recreate the pull document for any other month, it would take me about 8 hours of uninterrupted time to complete for each pull document requested. I would not be able to perform my normal job duties during that time.

10. When asked in my deposition how long it would take to create a pull document with only the columns of release date, raw release and admit date, I estimated about four hours. This is substantially less information than what was included on the February 2019 pull document. To create the document as requested by plaintiff in discovery, it would take 8 hours for each monthly pull document requested.

11. When I created the pull document, I matched information contained within several different records in CAJUN. I did not check each inmate's file in depth. The Pre-Classification Department of the DOC would better understand the information contained within the pull document, and the pre-class record would explain the circumstances surrounding release

3

and time computation of each inmate. Further examination by the Pre-Class Department would be required to verify information pulled from the code search within CAJUN.

_____
**MELANIE GUEHO**

**SWORN TO AND SUBSCRIBED** before me, NOTARY PUBLIC, this 12 day of March, 2021

_____
**NOTARY PUBLIC**
JONATHAN R. VINING
NOTARY PUBLIC
State of Louisiana
LA Bar #30781
My Commission Expires at **Death**

4