## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**BRIAN HUMPHREY**                                    **CIVIL ACTION**

**VERSUS**                                            **NO. 20-233-JWD-SDJ**

**JAMES LEBLANC**

## ORDER

Before the Court is a Motion to Compel the Production of CAJUN Data (R. Doc. 36) filed by Plaintiff Brian Humphrey on February 22, 2021.  Plaintiff's Motion seeks an order compelling Defendant James LeBlanc to produce certain data maintained in Defendant's electronic record management system, known as CAJUN, in response to four Requests for Production previously propounded on Defendant.[1]  Defendant opposes this Motion, filing his Opposition on March 15, 2021 (R. Doc. 37), with Plaintiff subsequently filing his Reply, with leave of Court, on March 23, 2021 (R. Doc. 40).  Each of Plaintiff's discovery requests is addressed, in turn, below.

### I.    Legal Standard

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  "For

---

[1] R. Doc. 36 at 1.

purposes of discovery, relevancy is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party." *Tingle v. Hebert*, No. 15-626, 2016 WL 7230499, at *2 (M.D. La. Dec. 14, 2016) (quoting *Fraiche v. Sonitrol of Baton Rouge*, 2010 WL 4809328, at *1 (M.D. La. Nov. 19, 2010)) (internal quotations omitted).

The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items. A party seeking discovery must serve a request for production on the party believed to be in possession, custody, or control of the documents or other evidence. Fed. R. Civ. P. 34(a)(1). The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A).

A party must respond or object to requests for production. *See* Fed. R. Civ. P. 34(b)(2). If a party fails to respond fully to discovery requests in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). "In sum, a party served with written discovery must fully answer each interrogatory or document request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory

or document request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive information or documents have been withheld." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) (internal quotations and citation omitted).

The party filing the motion to compel "bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Tingle*, 2016 WL 7230499, at *2 (quoting *Mirror Worlds Techs., LLC v. Apple Inc.*, No. 13-419, 2016 WL 4265758, at *1 (E.D. Tex. Mar. 17, 2016)). "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted." *Id.* (quoting *Mirror Worlds*, 2016 WL 4265758, at *1). *See also Wymore v. Nail*, No. 14-3493, 2016 WL 1452437, at *1 (W.D. La. Apr. 13, 2016) ("Once a party moving to compel discovery establishes that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests upon the party resisting discovery to substantiate its objections."). Further, "[a] trial court enjoys wide discretion in determining the scope and effect of discovery." *Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982) (citation omitted).

## II.      Plaintiff's Requests for Production

Plaintiff's four Requests for Production all seek certain data from Defendant's CAJUN database for various time periods from April 2019 to present. While generally similar, each request seeks a slightly different set of data from the CAJUN database.

### A.      Request for Production No. 1

Plaintiff's Request for Production No. 1 seeks "[a]ll CAJUN data from April 2019 through May 2020 corresponding to the categories of information contained in the February 2019 Pull

Document … for all inmates who were eligible for immediate release at the point their time was initially computed."[2]  Defendant objects to this requests on the following four (4) grounds: (1) that "it improperly requires defendant to create a document that would not otherwise exist"; (2) that it is "overly broad, unduly burdensome, and not proportional to the needs of the case"; (3) that the request is premature; and (4) that the request "seeks confidential, private and sensitive information."[3]  Each of these objections is addressed below.

### 1.    Whether the request impermissibly requires Defendant to create a document

Defendant first objects to this request by Plaintiffs, arguing that it improperly requires Defendant to create a document that would not exist otherwise, because "Defendant does not create or compile, in the form requested, this information as a matter of ordinary course."[4]  As further explained in his Opposition, Defendant posits that "Plaintiff is not simply requesting the defendant translate ESI into a usable form" and continues that "[i]nstead, DOC employees would be required to perform code searches in CAJUN within plaintiff's parameters, cross check enormous amounts of data, manually fill data in to the columns requested by plaintiff, and create a spreadsheet."[5]  The Court finds this argument without merit.

Rule 34 of the Federal Rules of Civil Procedure governs production of electronically stored information ("ESI") by a party.  According to Rule 34, "these procedures apply to producing

---

[2] R. Doc. 36 at 2.  With regard to the "February 2019 Pull Document," as described by Defendant in his Opposition: "In 2019, DOC [Department of Corrections] applied for a grant with the Department of Justice.  DOC sought funds to assist with obtaining the documents required under the law to perform a time computation from the local jails after inmates were sentenced to DOC time.  Melanie Gueho, a Business Analyst employed by DOC, created what is referred to as the February 2019 Pull Document to present data in connection with the grant application….  Ms. Gueho performed code searches within CAJUN to pull various pieces of information from different records contained within CAJUN.  In performing the code searches, Ms. Gueho was looking for inmates who were released in February 2019 within seven days of the completion of their time computation."  R. Doc. 37 at 4.
[3] R. Doc. 36 at 2.
[4] *Id*.
[5] R. Doc. 37 at 14.

documents or electronically stored information: (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request; (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms …. "  Fed. R. Civ. P. 34(b)(2)(E)(i)-(ii).  Additionally, as explained in the Advisory Committee Notes to Rule 34, an amendment made in 1970 "makes clear that Rule 34 applies to electronics data compilations from which information can be obtained only with the use of detection devices, and that when the data can as a practical matter be made usable by the discovering party only through respondent's devices, respondent may be required to use his devices to translate the data into usable form."

Case law makes clear that simply searching a database and providing the results therefrom does not require creation of a new document beyond the scope of Rule 34.  *See Apple Inc. v. Samsung Elecs. Co. Ltd.*, No. 12-630, 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013) ("While this court has held that a party should not [be] required to create completely new documents, that is not the same as requiring a party to query an existing dynamic database for relevant information. Courts regularly require parties to produce reports from dynamic databases … "); *Bean v. John Wiley & Sons Inc.*, No. 11-8028, 2012 WL 129809, at *1 (D. Ariz. Jan. 17, 2012) (finding that with regard to production of ESI, Rule 34 "explicitly places the burden of translating the data on the responding party" and that "spreadsheets are generally a useable form");  *In re eBay Seller Antitrust Litigation*, No. 07-1882, 2009 WL 3613511, at *2 (N.D. Cal. Oct. 28, 2009) (finding that the magistrate judge did not clearly err in compelling production of new dataset of records from database, noting "[t]he Federal Rules of Civil Procedure clearly contemplate the production of information from dynamic databases").  The testimony of Melanie Gueho, a 30(b)(6) witness for

the Louisiana Department of Public Safety & Corrections, provided in this litigation and cited by

Defendant in his Opposition, supports this finding:

> Q.    Okay, and when you create a pull document, you're not creating any new data; you're just pulling data from different places in Cajun and assembling it into one document.  Is that correct?
>
> A.    Correct.
>
> Q.    And the reason you have to assemble it into a pull document is because there's no screen you can just call up that information on by pressing a button, right?
>
> A.    Correct.[6]

To be clear, while Plaintiffs seek information corresponding to the categories of

information contained in the February 2019 Pull Document, in producing this information,

Defendant does not have to anything other than provide the information requested in a usable form

with the information properly identified.[7]

### 2.    Whether the request is overly broad, unduly burdensome, or disproportionate to the needs of the case

Defendant next objects that the request by Plaintiff is overly broad, unduly burdensome,

and not proportional to the needs of the case.  According to Defendant, "[i]t took Ms. Gueho about

8 hours to prepare the pull document for the month of February 2019."[8]  Defendant then claims

that because the "pull document" showed only inmates "that were released within seven days that

their time was computed, additional work would be necessary to determine whether each inmate

on the list would have been eligible for 'immediate release.'"[9]  Thus, per Defendant, it would take

two Department of Corrections ("DOC") attorneys "10-20 hours to manually review the pre-class

---

[6] R. Doc. 36-4 at 59-60.
[7] The Court references this based on the testimony of DOC Program Manager Angela Griffith that she "created new headings, and added notes reflective of [her] manual review of each Pre-Class packet and information from CAJUN" to create a "modified pull document."  R. Doc. 37-1 at 5 ¶ 17.  This additional work is not required.
[8] R. Doc. 37 at 5.
[9] *Id.* at 7.

documents of each inmate on the list and check all information for accuracy."[10]  It, therefore, would take "approximately 230 hours to compile and check the information" for this period.[11]  Plaintiff, in response, contends that "this claim was a wild exaggeration" and that a DOC witness previously testified that extracting the February 2019 Pull Document data "actually takes only four hours for each month."[12]  Multiplying this alleged 4-hour limit by the 14 months of data requested, Plaintiff appears to be claiming that this data can be produced in 56 hours.

First, the Court expresses its frustration here at the Parties' claims regarding the amount of time required for fulfillment of this request, neither of which, to the Court, presents an accurate estimate of the time required to fulfill this request.  Turning first to Defendant's allegations, the Court notes that while DOC witness Ms. Gueho did testify that compiling the data for the February 2019 Pull Document did take "about a day," she then specifically states that pulling the same data for additional months would not take as long:

> Q.    Okay, and – and you testified before that to create a pull document like the February 2019 one but for the most recent month, it would probably take one person, specifically you, about eight hours to generate that document, correct?
>
> A.    Yes.
>
> Q.    And let's say you were asked to create a pull document like the February 2019 pull document for the two most recent months, would that also take you about eight hours?
>
> A.    Yes.
>
> Q.    Okay.  Because doing it for two months rather than for one month doesn't double the length of time it takes you to create the pull document, correct?
>
> A.    Well, yes and no.  It would expand the amount of data being pulled, so it would expand the – the time that I take to review the different steps and check the data, so, yes.

---

[10] *Id.*

[11] *Id.*  The Court notes that while Defendant claims Plaintiff seeks the information for a 13-month period, the actual period for which information is being requested is 14 months (April 2019 to May 2020).

[12] R. Doc. 36-1 at 3.

****

Q.      Okay.  So if you were asked to do a pull document for two months, you
could do it, and it would take you a little bit more than eight hours, but not double
eight hours, but you prefer to do it one month at a time.  Is that a fair summary?

A.      Yeah, I'd probably say a day and a half instead of – yeah.[13]

Thus, as perceived by the Court, the allegation that 8 hours would be required for each month is

inaccurate.  Further, with regard to the allegation that 10-20 additional hours of review are

required, the Court does not find this allegation accurate either.  This assertion is based on the

affidavit testimony of Angela Griffith, a Program Manager at DOC.[14]  In her Affidavit, Ms. Griffith

testifies:

> 16.  After this lawsuit was filed, Libby Tigner and I reviewed all of the information
> contained in the document known as the February 2019 pull document.  For each
> inmate on the list, I reviewed the CAJUN data, as well as the pre-class paperwork,
> in an attempt to fully understand the contents and information provided in the pull
> document.  I was also determining whether each inmate on the pull document was
> actually eligible for "immediate release" as alleged by plaintiff.
>
> 17.  In reviewing this information, I created the attached "modified pull document."
> (Exhibit 1-A).  I created new headings, and added notes reflective of my manual
> review of each Pre-Class packet and information from CAJUN.  It took me and my
> employee, Libby Tigner, approximately 20 hours total to prepare the modified pull
> document for the month of February 2019.[15]

The request here is for the same information in the February 2019 Pull Document, though for

different months.  No manual review, additional notes, or new headings are required.  Although

Ms. Griffith further testifies that upon review, some of the information in the February 2019 Pull

Document was inaccurate, no actual percentage or number of errors is provided.[16]  Further, the

---

[13] R. Doc. 36-4 at 50-52.
[14] R. Doc. 37 at 7 n. 27.
[15] R. Doc. 37-1 at 5.
[16] *Id.* at 5 ¶ 19: "Because the original February 2019 pull document listed the 'raw release date,' which did not include
CTRP credits, many of the inmates included on the document had additional time to serve with DOC at the time of
their sentencing.  In addition, some of the information on the original February 2019 pull document was incorrect, it
did not account for multiple docket numbers."

February 2019 Pull Document, which was not subject to this review, was submitted to the Department of Justice in support a grant application. The Court, therefore, finds, at this point only, that 10-20 hours of additional review is not necessary to create the pull document being requested by Plaintiff.

Plaintiff's representation that compiling the data for each month would take only four hours also does not appear to be accurate. If Plaintiff is basing this assumption on the testimony set forth above, then it does not account for the eight hours required to compile the information for the first month. Plaintiff also may be basing this on testimony elicited from Ms. Gueho about the amount of time required to compile a pull document with only three columns, which is not the request currently before the Court.[17]

Based on the evidence presented, it will take at most eight hours to compile the information for the first month and no more than four hours for each subsequent month, though, based on Ms. Gueho's testimony that compiling subsequent months takes less time, it appears to the Court that it may not even take four hours for each subsequent month. This equates to 60 hours, or seven and a half working days, for a single employee. Given this new estimate of time required, the Court now turns to whether the request is overly broad, unduly burdensome, or disproportionate to the needs of the case.

Considering the Rule 26(b)(1) factors,[18] the Court does not find that this request is overly burdensome or disproportionate to the needs of the case. First, requiring just over a week of work is not overly burdensome. *See Mervyn v. Atlas Van Lines, Inc.*, No. 13-3587, 2015 WL 12826474,

---

[17] *See* R. Doc. 36-4 at 54 (Ms. Gueho testifying that it would take half of a day to compile a pull document consisting only of release date, raw GTPS date, and admit date).

[18] As set forth above, Rule 26(b)(1) allows for discovery that is relevant and proportional to the needs of the case considering (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the discovery outweighs its likely benefit.

at *6 (N.D. Ill. Oct. 23, 2015) ("Simply put, two weeks of active work to provide relevant data that Atlas is required to produce under the federal rules of evidence is not unduly burdensome."); *Gonzalez v. Google, Inc.*, 234 F.R.D. 674, 683 (N.D. Cal. 2006) (rejecting argument by third party that compliance with a subpoena "requiring up to eight full time days of engineering time" was unduly burdensome). Further, the benefit here outweighs the burden alleged. This data is needed for Plaintiff to determine whether a class of inmates overdetained by the DOC can be established, and this data system is in DOC's sole possession and not available elsewhere. Further, while the specific amount in controversy for this case is unknown at this point, other overdetention cases have resulted in large settlements. *See, e.g., Barnes v. District of Columbia*, 793 F.Supp.2d 260, 267 (D.D.C. 2011) (referencing a $12 million settlement in a prisoner overdetention class action case). The Court, therefore, does not find that this request is overly broad, unduly burdensome, or disproportionate to the needs of the case.[19]

### 3.    Whether Plaintiff's request is premature

As argued by Defendant, Plaintiff's request is premature because "it is clear that the true reason plaintiff is requesting this information is to identify potential class members."[20] Defendant goes on the argue that Plaintiff's claim that the pull document data will show how many individuals were overdetained is "untrue" because it "does not provide a complete picture of each inmate's release, which can only be accomplished through individual review and analysis of each inmate's

---

[19] The Court notes Defendant's citation to the *Grant v. Gusman* case in which the Eastern District of Louisiana found a similar data request unduly burdensome. No. 17-2797, 2020 WL 1864857, at *13 (E.D. La. Apr. 13, 2020). However, that holding is not persuasive here. In that case, which is not a class action, the plaintiff requested CAJUN data for all inmates who meet the criteria for inclusion in the February 2019 Pull Document for each month from January 2012 to the present. *Id.* The court then simply states that "DOC Defendants objected to this request pursuant to Rule 26(b)(2)(B) because Plaintiff's demand encompasses 'a vast amount of highly specific data that is difficult to easily retrieve and store for a large selection of the entire inmate population of the Louisiana Department of Corrections'" and finds the request unduly burdensome. *Id.* This *Grant* case, however, involves a single plaintiff, rather than a putative class of plaintiffs, as in the instant matter. Further, the *Grant* court provides no analysis of or basis for its finding. As such, the Court declines to follow its holding here.
[20] R. Doc. 37 at 11.

entire pre-class file."[21]   Defendant then lambasts Plaintiff for "fail[ing] to take any discovery on this particular issue, only deposing Ms. Gueho as to how long it took to create the pull document."[22] Defendant continues that "while plaintiff alleges that the pull document will prove his case, he has not conducted the required discovery to determine such, or to show that the enormous burden is necessary here."[23]

Defendant appears to be conflating arguments here.   First, Defendant's argument that Plaintiff seeks only to identify specific class members is meritless.   As specifically explained in his Motion to Compel, Plaintiff seeks this information to satisfy the requirements of Rule 23 for class certification.   Specifically, Plaintiff claims that "the data are essential to allow Plaintiff to precisely determine how many individuals comprise the proposed class, which in turn is necessary to demonstrate numerosity pursuant to Rule 23 (a)(1) …"[24]   Plaintiff also asserts that the CAJUN data also is expected "to show that the putative class members all suffered a lengthy delay for the same reasons," thereby constituting "evidence that will allow Plaintiff to demonstrate that important, common issues in this case can be adjudicated together, rather than requiring separate trials."[25]   While the Court agrees that identification of individuals is not necessary at this stage, the Court also finds that this request is not premature in that the data, at this point, is being sought for purposes of determining whether the requirements of Rule 23 are met here.

Defendant then takes Plaintiff to task for not conducting additional discovery to prove that the requested CAJUN data will prove his case.   But we are not there yet.   Discovery being conducted now is for class certification purposes; Plaintiff is not required to prove his case at this

---

[21] *Id.* at 12.
[22] *Id.*
[23] *Id.*
[24] R. Doc. 36-1 at 11.
[25] *Id.* at 11-12.

point.  Further, the Court finds this argument—that Plaintiff has not conducted enough discovery—interesting in the current context where Defendant is objecting to the extent of discovery being requested by Plaintiff.  As this Court finds that the information requested is relevant to the issue of class certification, the Court does not find this request premature.

### 4.    Whether Plaintiff's request seeks confidential information

Finally, Defendant objects that Plaintiff's Request for Production No. 1 seeks confidential, sensitive information, "including the criminal and personal records belonging to individuals who may or may not be included in the proposed class in this matter."[26]  To this end, Defendant then states that he "is willing to enter into a mutually agreeable Protective Order to protect certain identifying information belonging to the persons included in the records requested and some information must be redacted to protect privacy and confidentiality."[27]  Following his response to these discovery requests, Defendant filed a motion for entry of a stipulated protective order, which this Court granted, entering a Protective Order in this case on November 2, 2020 (R. Doc. 33).  As such, the Court finds that any concern Defendant may have had as to protective of certain sensitive and/or confidential information is mitigated by the existence of the Protective Order, which allows the Parties to protect any such information from public disclosure.

### B.    Request for Production Nos. 2 and 3

Plaintiff's Request for Production Nos. 2 and 3 are similar.  Request for Production No. 2 seeks "[a]ll Documents, including CAJUN data, master prison records, and time computation documents for all inmates in the custody of the DOC between April 2019 through May 2020 with a 'must serve' number less than or equal to zero."[28]  Similarly, Request for Production No. 3 asks

---

[26] R. Doc. 36 at 2-3.
[27] *Id.* at 3.
[28] *Id*.

for "[a]ll Documents, including CAJUN data, master prison records, and time computation documents for all inmates in the custody of the DOC between April 2019 through May 2020 with a 'must serve' number less than the number of days between the inmate's sentencing date and the date of the inmate's initial time computation."[29]  Defendant objects to both of these requests on the grounds that compiling this information allegedly could take up to 2,000 employee hours for each request, that the requests are premature, and that these requests also "seek[] confidential, private and sensitive information."[30]  Because both of these requests seek the same information for prisoners with only slightly different sentence lengths and because, as the Court interprets it, Request for Production No. 3 necessarily will include the information sought in Request for Production No. 2, the Court will address these two discovery requests together.

To prevent redundancy in addressing Defendant's objections, the Court here incorporates its analysis set forth above regarding Defendant's objections that this request is premature and/or improperly seeks confidential information, again dismissing both.  With regard to the amount of time required to produce this information, Defendant asserts that, using Plaintiff's estimate in the Complaint that over 2,000 inmates may have been overdetained from April 2019 to May 2020, and alleging that "[i]t could take up to one hour per inmate to pull all requested documents," it could take DOC employees up to 2,000 hours to compile the requested documents.[31]

First, the Court finds that spending "up to one hour per inmate"—meaning it could very well be less than one hour—is not unreasonable.  Second, Defendant in essence argues that, because there are so many overdetained inmates, the burden of providing information on them is too great.  To say this is unpersuasive is an understatement.  Further, it appears to the Court that

---

[29] *Id.* at 4.
[30] *Id.* at 3.  The Court notes that Defendant made these objections in response to Request for Production No. 2 and "adopt[ed] and incorporate[d]" them into his response for Request for Production No. 3.  *Id.* at 4.
[31] *Id.* at 3.

providing this information may potentially alleviate any concerns Defendant has that the information provided in Request No. 1 may include some incorrect or incomplete information, thereby necessitating the lengthy manual review of the data, as discussed above.  These requests are granted.

### C.    Request for Production No. 4

Plaintiff's Request for Production No. 4 seeks the CAJUN data sought in Request for Production Nos. 1-3 "as it exists on the first day of every month, during the pendency of this action."[32]  Defendant objects to this requests on the same grounds as for the previous three requests.[33]

At this point, while the Parties are engaged only in class discovery, the Court will not impose this continuing burden of production on Defendant, particularly as the information being sought is for the vague, undefined "pendency of this action," which burden will last after the Court determines whether a class should be certified in this case.  The Court finds this request impermissibly broad.  As such, this request, at this point in the litigation, will be denied.

### III.   Conclusion

Accordingly,

**IT IS ORDERED** that the Motion to Compel the Production of CAJUN Data (R. Doc. 36) filed by Plaintiff is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's Motion to Compel is **GRANTED** as to Requests for Production Nos. 1, 2, and 3, and Defendant is **ordered** to provide the CAJUN data requested in those three discovery requests.  Plaintiff's Motion to Compel is **DENIED** as to Request for Production No. 4.

---

[32] *Id.* at 4.
[33] *Id.*

Defendant is further **ORDERED** to commence its efforts to compile the responsive information immediately. A Status Conference will be held at **3:00 p.m.** on **September 1, 2021**, at which time Defendant will report to the Court on its efforts to compile the responses ordered herein. Based upon the information provided at the Status Conference, the Court will establish deadlines for discovery and other activities related to class certification.

Signed in Baton Rouge, Louisiana, on August 11, 2021.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**