UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BRIAN HUMPHREY**, | * | CIVIL ACTION |
| on behalf of himself | * | |
| and all similarly situated individuals, | * | NUMBER: 3:20-cv-00233-JWD-SDJ |
| | * | |
| | * | |
| **VERSUS** | * | |
| | * | JUDGE JOHN W. DeGRAVELLES |
| | * | |
| **JAMES LEBLANC** | * | MAGISTRATE JUDGE |
| | * | SCOTT JOHNSON |

*************************************************************************

### OBJECTION TO MAGISTRATE'S RULING ON PLAINTIFFS' MOTION TO COMPEL

MAY IT PLEASE THE COURT:

Defendant, James Leblanc ("DOC") files this objection to the Magistrate's ruling on the motion to compel filed by plaintiff, Brian Humphrey[1] (R.Doc. 56.) in accordance with Federal Rule of Civil Procedure 72.

### I.     Factual and Procedural Background

In this action, plaintiffs allege that DOC delays computation of release dates, specifically including release dates for inmates that are allegedly entitled to "immediate release" upon sentencing. Plaintiffs' pleadings oversimplify the time computation process. Defendant incorporates the overview of the time computation process in Section 1(A) of its opposition to plaintiffs' motion to compel. See R.Doc. 37 at pp. 2-6.

In June 2020, Plaintiffs issued discovery seeking the following information:

REQUEST FOR PRODUCTION NUMBER 1: All CAJUN data from April 2019 through May 2020 corresponding to the categories of information contained in the February 2019 Pull Document, attached as Exhibit A, for all inmates who were eligible for immediate release at the point their time was initially computed. A

---

[1] Following the filing of the motion to compel, plaintiff amended his complaint to add two additional plaintiffs.

description of the process to identify and compile the data reflected in Exhibit A is set out in Exhibit B.

REQUEST FOR PRODUCTION NUMBER 2: All Documents, including CAJUN data, master prison records, and time computation documents for all inmates in the custody of the DOC between April 2019 through May 2020 with a "must serve" number less than or equal to zero.

REQUEST FOR PRODUCTION NUMBER 3: All Documents, including CAJUN data, master prison records, and time computation documents for all inmates in the custody of the DOC between April 2019 through May 2020 with a "must serve" number less than the number of days between the inmate's sentencing date and the date of the inmate's initial time computation.

REQUEST FOR PRODUCTION NUMBER 4: Produce the following data from CAJUN as it exists on the first day of every month, during the pendency of this action.
  a. Produce all Documents described in Request No. 1 (i.e., All CAJUN data corresponding to the categories of information contained in the February 2019 Pull Document, attached as Exhibit A, for all inmates who were eligible for immediate release at the point their time was initially computed. A description of the process to identify and compile the data reflected in Exhibit A     is set out in Exhibit B.)
  b. Produce all Documents described in Request No. 2 (i.e., All Documents, including CAJUN data, master prison records, and time computation documents for all inmates in the custody of the DOC with a "must serve" number less than or equal to zero.)
  c.  Produce all Documents described in Request No. 3 (i.e., All Documents, including CAJUN data, master prison records, and time computation documents for all inmates in the custody of the DOC with a "must serve" number less than the number of days between the inmate's sentencing date and the date of the inmate's initial time computation.)

R.Doc. 36-2. Defendant timely objected to the unduly burdensome discovery for the following reasons: (1) the discovery sought is not proportional to the needs of the case; (2) the information sought is not reasonably assessible because of undue burden and cost; (3) DOC would be required to expend an enormous amount of time to compile the information; (4) the requests seek confidential, private and sensitive information, including the criminal and personal records

2

belonging to individuals who may or may not be included in the proposed class in this matter; (5) and the discovery requests were premature and not relevant to class certification. R.Doc. 36-3.

In February 2021, plaintiffs filed a motion to compel the requested information. R.Doc. 36. In the motion to compel, plaintiffs focused on the "pull documents" as requested in Request No. 1. Plaintiffs did not brief how the information sought in Request Nos. 2 and 3 is not overly broad, premature or proportional to the needs of the case. On August 11, 2021 the Magistrate Judge issued a ruling, granting plaintiffs' motion to compel as to Requests Nos. 1, 2 and 3, and denying the motion to compel as to Request No. 4. R.Doc 56.

Defendant files this objection to address the improper ruling as to Request Nos. 2 and 3, and to seek clarification on Request No. 1. While defendant maintains that the pull documents do not contain the information that plaintiffs assert they contain, and that the pull documents are not relevant to class certification, defendant is compiling the pull documents sought in Request No.1, and is not objecting to that portion of the ruling.

Defendant specially objects to the Magistrate's finding that potentially 2,000 hours of DOC employees' time to respond to Request Nos. 2 and 3 "is not unreasonable." Defendant further objects to the finding that the information sought in Request Nos. 2 and 3 is not premature, and that the information sought is proportional to the needs of the case.

To comply with Request Nos. 2 and 3, DOC employees would be required to undertake an individualized and time-consuming analysis of every file belonging to every inmate identified in the pull documents created and produced in response to Request No. 1 – a process involving potentially thousands of inmate files. Then, the DOC employees would have to analyze every file to determine whether to produce documents for inmates that meet the definitions set forth in the

3

requests.[2] Specifically, DOC employees would be required to review the time computation file of each inmate on all 13 pull documents.[3] Plaintiffs estimate this could be thousands of inmates. A DOC employee would be required to analyze the time computation documents to determine whether: (1) each inmate's "must serve" number less than or equal to zero; and (2) each inmate's "must serve" number less than the number of days between the inmate's sentencing date and the date of the inmate's initial time computation.[4] Then, if an inmate meets the definitions set forth in the requests, a DOC employee would be required to pull that inmate's file from its electronic storage system and print the master prison records and time computation documents. It is estimated that it would take approximately one hour per inmate to analyze and potentially print the files for production.[5] Then, undersigned counsel would be required to review and redact inmate files for sensitive, personal and confidential information.

The burden to produce this information is great, especially at this point in the litigation, prior to class certification. Plaintiffs failed to demonstrate how an individual review of inmate files, who may or may not even fall within plaintiffs' proposed class definition, is relevant to class certification. The Magistrate Judge erred in granting plaintiffs' motion to compel on Request Nos. 2 and 3, and this ruling should be overturned.

---

[2] While plaintiffs took the deposition of Melanie Gueho to determine how long production of the pull document would take, plaintiffs took no discovery on what would be required to comply with Requests Nos. 2 and 3.
[3] Affidavit of Angela Griffin, dated August 25, 2021.
[4] Affidavit of Angela Griffin, dated August 25, 2021.
[5] Affidavit of Angela Griffin, dated August 25, 2021.

## II. Law and Argument

### A. Scope of Discovery

Under Federal Rule of Civil Procedure 26, a party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. However, the discovery must be proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. F.R.C.P. 26(b)(2)(1). Further, a party need not produce discovery if it is shown that the documents are not reasonably accessible because of undue burden or cost. F.R.C.P. 26(b)(2)(B).

### B. Request for Production No. 1

The Magistrate Judge granted plaintiffs' motion to compel as to Request for Production No. 1, which seeks the following:

> Request No. 1 – All CAJUN data from April 2019 through May 2020 corresponding to the categories of information contained in the February 2019 Pull Document, attached as Exhibit A, for all inmates who were eligible for immediate release at the point their time was initially computed. A description of the process to identify and compile the data reflected in Exhibit A is set out in Exhibit B.

Defendant is in the process of creating and compiling the pull documents for this time period, a total of 13 months. Defendant is not objecting to the ruling requiring production, but is seeking clarification of the ruling.

Request No. 1 seeks "pull documents" from April 2019 to May 2020 for "all inmates who were eligible for immediate release at the point their time was initially computed." Plaintiffs further attached the process for preparing the "pull documents," which was prepared by Melanie Gueho. When preparing the February 2019 pull document, Gueho ran code searches to pull

5

inmates who were released in February 2019 within seven days of the completion of their time computation.[6] As such, the "pull document" does not give a list of inmates who were "entitled to immediate release at the point their time was computed."

In responding to the discovery and motion to compel, defendant advised plaintiffs and the court that in order to determine whether an inmate on a "pull document" was entitled to immediate release when their time was computed, additional analysis of each inmate's Pre-Class file was necessary (additional 10-20 hours of review per pull document). The Magistrate Judge found that this additional review time was "not necessary to create the pull document being requested by plaintiff." R.Doc. 56.

Defendant is in the process of preparing the pull documents, which are being prepared using the same process as used in February 2019, i.e. pulling inmates that were released within 7 days of completion of their time computation. Defendant seeks clarification that it is ordered to produce "pull documents" for the months of April 2019 through May 2020, using the same criteria as the original February 2019 pull document was created, and not using a criteria for inmates "eligible for immediate release at the point their time was initially computed."

### C. Request For Production Numbers 2 and 3

The Magistrate Judge granted plaintiffs' motion to compel as to Request for Production Nos. 2 and 3, which seek the following:

> Request No 2 – "[a]ll Documents, including CAJUN data, master prison records, and time computation documents for all inmates in the custody of the DOC between April 2019 through May 2020 with a 'must serve' number less than or equal to zero."

> Request No. 3 – "[a]ll Documents, including CAJUN data, master prison records, and time computation documents for all inmates in the custody of the DOC between April 2019 through May 2020 with a 'must serve' number less than the number of

---

[6] Affidavit of Melanie Gueho, R.Doc. 37-3.

6

days between the inmate's sentencing date and the date of the inmate's initial time computation."

To comply with Request for Production Nos. 2 and 3, an individualized inquiry of each inmate on each of the newly-created pull documents would be required. A "must serve" field is not included on the pull document columns.[7] To determine what an inmate's "must serve" number is, a DOC employee would have to review the time computation worksheet for each inmate located on each pull document.[8] Time computation worksheets are found in an inmate's institutional file.[9] Inmate institutional files are either: (1) stored in Oracle; or (2) if an inmate was put on probation/parole prior to 2013, located only in hard copy files housed at the facility from which the inmate was released.[10] Therefore, it is likely that for some inmates on the pull documents, DOC would have to request the hard copy file from a facility before the documents can even be reviewed.[11]

Once the inmate's Pre-Class packet is located, an individualized review of each file is required to determine whether the inmates meets the definitions set forth in Requests Nos. 2 and 3. To determine whether an inmate has a "must serve" number less than or equal to zero, a DOC employee must locate the time computation worksheet.[12] If an inmate was sentenced on multiple dockets, the time computation worksheets would have multiple "must serve" numbers.[13] If the "must serve" numbers on multiple dockets are different, an analysis to determine the actual "must

---

[7] Affidavit of Angela Griffin, dated August 25, 2021.
[8] Affidavit of Angela Griffin, dated August 25, 2021.
[9] Affidavit of Angela Griffin, dated August 25, 2021.
[10] Affidavit of Angela Griffin, dated August 25, 2021.
[11] Affidavit of Angela Griffin, dated August 25, 2021.
[12] Affidavit of Angela Griffin, dated August 25, 2021.
[13] Affidavit of Angela Griffin, dated August 25, 2021.

7

serve" number would be required.[14] This would entail reviewing the time computation file and sentencing documents to determine whether the sentences were to be served consecutively.[15] To determine whether an inmate's 'must serve' number is less than the number of days between the inmate's sentencing date and the date of the inmate's initial time computation," (Request for Production No.3) a DOC employee would be required to determine the number of days between an inmate's sentencing date and the date of the initial time computation, then compare it with the must serve number.[16] Again, if an inmate was sentenced on multiple dockets, an additional analysis would be required to determine the actual "must serve" number. This individualized and time-consuming process is required for every inmate identified in the new pull documents to determine if that inmate's records should be produced or not.

Once an analysis for each inmate is performed to determine whether the "must serve" number is less than or equal to zero, or "must serve" number is less than the number of days between the inmate's sentencing date and the date of the inmate's initial time computation, a DOC employee must compile the master prison record and time computation documents.[17] Again, this is required for every inmate on the new pull documents before a production can occur.

Given that each inmate's sentencing documents, number of dockets and time computation files will be different, defendant estimates that it would take about one hour per inmate to: (1) determine whether the inmate meets the "must serve" definitions in Requests No. 2 and 3; and (2) compile and print the requested documents for each inmate.[18] Following DOC's compilation of

---

[14] Affidavit of Angela Griffin, dated August 25, 2021.
[15] Affidavit of Angela Griffin, dated August 25, 2021.
[16] Affidavit of Angela Griffin, dated August 25, 2021.
[17] Affidavit of Angela Griffin, dated August 25, 2021.
[18] Affidavit of Angela Griffin, dated August 25, 2021.

the requested files, undersigned counsel would be required review the files and redact confidential information.

### 1. The Requested Discovery is Not Proportional To the Needs of the Case

At this stage of the litigation, prior to class certification, the burden of analyzing potentially thousands of inmate files – which is necessarily required to comply with the Court's order – is not proportional to the needs of the case. In determining whether discovery is proportional to the needs of the case, courts look to the following: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

In addressing defendant's objection that Request Nos. 2 and 3 were not proportional to the needs of the case, the Magistrate Judge found that 2,000 hours to compile the information "is not unreasonable." The Magistrate Judge further misinterprets defendant's argument regarding the burden, stating that defendant argues that "because there are so many overdetained inmates, the burden of providing the information on them is too great." This is not defendant's argument. In fact, defendant firmly states that neither the pull document, nor the definitions set forth in Request Nos. 2 and 3, provide a list of "overdetained inmates." Defendant is objecting to the burden of an individualized analysis of thousands of inmate files, prior to class certification, where the review does not even correlate with plaintiffs' class definition.

Again, the Magistrate Judge failed to conduct an analysis on the factors set forth in FCRP 26(b)(1) as it relates to Request Nos. 2 and 3. Here, the burden imposed on DOC employees to conduct an individual analysis of inmate file, and at the same time perform their essential job functions, is not proportional to the needs of the case, especially at this stage of the litigation.

### (a). Importance of issues at stake

As to the first factor, the individualized review of inmate files as requested would not contain information relevant to the claim of "overdetention," the claims at issue here. Instead, it seeks confidential and personal information on inmates that may not even be included within plaintiffs' class definition. The information sought could have no bearing on the issues of class certification or liability.

### (b). Amount in controversy

The second factor also does not support production of this information. The amount in controversy for the named plaintiffs is relatively low in comparison to the burden to produce the information. This is especially true as this matter is a proposed class action that has not been certified.

### (c). Relative access to information

As demonstrated above, the DOC's access to the information requested is extremely burdensome. DOC employees would be required to undergo an enormous burden to undertake an individualized review of every inmate file to determine whether the inmates on the pull documents meet the definitions of Request Nos. 2 and 3. As estimated by the DOC, the process to assess if the inmate meets the definition for production could take an average of one hour per inmate. Thus, the DOC employees would be required to undertake this analysis in lieu of their essential job functions. As an estimate, this process could take a single DOC employee over a year to complete.

### (d).    The parties' resources

Performing an individualized review of potentially thousands of inmate files would undeniably strain DOC's resources. It would require DOC employees, including employees whose essential job functions are performing time computations and releases, to perform potentially thousands of hours of work. These employees would not be able to perform their normal and essential job duties during that time.

### (e).    The importance of the discovery in resolving the issues

As to the fifth factor, inmate files are not important to the named plaintiffs' claim, nor have plaintiffs identified how inmate files are relevant to class certification.

### (f).    Whether the burden or expense of the proposed discovery outweighs its likely   benefit

Lastly, any benefit this information would provide to the named plaintiffs is outweighed by the burden in producing it, as discussed above. As such, the discovery is not proportional to the needs of the case at this stage in the litigation.

### 2.  The Discovery Requests Are Premature

Request for Production Nos. 2 and 3 seek master prison records and time computation documents for potentially thousands of inmates. Plaintiffs have failed to demonstrate how inmate files for, what plaintiffs estimate to be over 2,000 inmates, is relevant to class certification.

In addressing defendant's objection that the analysis of production of inmate files is premature, the Magistrate incorporated its analysis on Request for Production No. 1, the pull document request. However, while plaintiffs argued that the "pull documents" were relevant to Rule 23, plaintiffs' motion to compel failed to set forth any reasoning why an entire inmate file for each inmate on a pull document is relevant to class certification.

11

An individualized inquiry into potentially thousands of inmate files has no relevance to class certification. For this additional reason, the Magistrate Judge erred in granting the motion to compel.

### 3. The Discovery Requests Seek Irrelevant Information

Request for Production Nos. 2 and 3 seek information for: (1) inmates with a 'must serve' number less than or equal to zero; and (2) inmates with a 'must serve' number less than the number of days between the inmate's sentencing date and the date of the inmate's initial time computation. Neither of these requirements set forth in the discovery requests correlate with plaintiffs' proposed class definition, i.e., inmates "who were entitled to release at the time they were remanded to the DOC's custody, but who were released by the DOC more than 48 hours past the time that they were remanded." Therefore, the criteria set forth in Request Nos. 2 and 3 will include inmates that do not meet plaintiffs' class definition. As such, the request seeks confidential, private and sensitive information, including the criminal and personal records belonging to individuals who may or may not be included in the proposed class in this matter.

The requests are not narrowly tailored to seek relevant and discoverable information. As such, the Magistrate Judge erred in granting the motion to compel.

### 4. An Individualized Inquiry is Not Appropriate for Class Certification

Class certification is inappropriate where individualized inquiries predominate over common questions of law or fact. *Mims v. Stewart Title Guar. Co*., 590 F.3d 298, 307 (5th Cir. 2009). Here, plaintiffs seek discovery that would necessarily require DOC employees to undertake an individualized inquiry to determine if the requested documents for each inmate are responsive to the requests. While this is one of the reasons that defendant asserts class certification is

inappropriate in this case, it is clear that defendant should not be required to conduct individualized inquires to respond to discovery prior to class certification.

### 5. In the Alternative, Defendant Requests Sampling of Inmate File Production

The burden to review and analyze files for every inmate included in the 13 pull documents is enormous, and not relevant to class certification. However, if this Court determines that plaintiffs are entitled to the requested information, defendant requests a narrowly tailored order whereby defendant would only be required to undertake the individualized review of a sampling of inmates on each pull document. Defendant suggests a 10-inmate sample from each pull document, which would provide review of 130 inmates total.

### III.   Conclusion

The Magistrate erred in granting plaintiffs' motion to compel as to Request Nos. 2 and 3. The burden to produce the requested information is great, and would require an individualized review of inmate files, who may not even fall within plaintiffs' proposed class definition. Further, plaintiffs failed to demonstrate that they are entitled to the information requested in Request Nos. 2 and 3, and the Magistrate Judge failed to conduct an analysis of those specific requests. Defendant requests that this ruling be overturned; or in the alternative, that defendant only be required to review a sampling of inmates on each pull document.

                Respectfully submitted,

                **JEFF LANDRY**
                **Attorney General**

By:   /s/ Andrew Blanchfield
        Andrew Blanchfield, T.A. (#16812)
        Email: ablanchfield@keoghcox.com
        Christopher K. Jones (#28101)
        Email: cjones@keoghcox.com
        Chelsea A. Payne (#35952)
        Email: cpayne@keoghcox.com
        Special Assistant Attorneys General
        701 Main Street (70802)
        Post Office Box 1151
        Baton Rouge, Louisiana 70821
        Telephone: (225) 383-3796
        Facsimile: (225) 343-9612

## CERTIFICATE OF SERVICE

I hereby certify that I have this date electronically filed the foregoing with the Clerk of Court by utilizing the CM/ECF system, and a copy of the above and foregoing was this day forwarded by the Court's ECF Delivery System to all counsel of record.

Baton Rouge, Louisiana, this 25th day of August, 2021.

                /s/ Andrew Blanchfield
                Andrew Blanchfield