UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRIAN HUMPHREY, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-233-JWD-SDJ** |
| **JAMES LEBLANC** | |

### ORDER

Before the Court is a Motion to Compel Defendant's Discovery Responses filed by Plaintiffs on August 17, 2021 (R. Doc. 57). Plaintiffs' Motion seeks an order compelling Defendant James LeBlanc to produce supplemental responses to certain written discovery requests previously propounded by Plaintiffs.[1] Defendant opposes this Motion, filing his Opposition on September 7, 2021 (R. Doc. 60). Each of Plaintiffs' discovery requests is addressed, in turn, below.

**I.    Legal Standard**

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "For purposes of discovery, relevancy is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or

---

[1] R. Doc. 57 at 1.

defense of any party." *Tingle v. Hebert*, No. 15-626, 2016 WL 7230499, at *2 (M.D. La. Dec. 14, 2016) (quoting *Fraiche v. Sonitrol of Baton Rouge*, 2010 WL 4809328, at *1 (M.D. La. Nov. 19, 2010)) (internal quotations omitted).

The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 33 of the Federal Rules of Civil Procedure provides for the service of written interrogatories. A party seeking discovery under Rule 33 may serve interrogatories on any other party, and the interrogatory "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(1)-(2).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items. A party seeking discovery must serve a request for production on the party believed to be in possession, custody, or control of the documents or other evidence. Fed. R. Civ. P. 34(a)(1). The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A). A party must respond or object to each request for production. *See* Fed. R. Civ. P. 34(b)(2).

Rule 36 of the Federal Rules of Civil Procedure allows a party to serve on another party a written request to admit the truth of any matters within the scope of Rule 26(b)(1) relating to "facts, the application of law to fact, or opinions about either" and "the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer

or objection" and "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(3)-(4).

If a party fails to respond fully to discovery requests in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). "In sum, a party served with written discovery must fully answer each interrogatory or document request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive information or documents have been withheld." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) (internal quotations and citation omitted).

The party filing the motion to compel "bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Tingle*, 2016 WL 7230499, at *2 (quoting *Mirror Worlds Techs., LLC v. Apple Inc.*, No. 13-419, 2016 WL 4265758, at *1 (E.D. Tex. Mar. 17, 2016)). "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted." *Id.* (quoting *Mirror Worlds*, 2016 WL 4265758, at *1). *See also Wymore v. Nail*, No. 14-3493, 2016 WL 1452437, at *1 (W.D. La. Apr. 13, 2016) ("Once a party moving to compel discovery establishes that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests upon the party

resisting discovery to substantiate its objections."). Further, "[a] trial court enjoys wide discretion in determining the scope and effect of discovery." *Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982) (citation omitted).

## II.     Plaintiff's Discovery Requests

### A.     Requests for Admission

In their Motion, Plaintiffs seek supplemental responses to the following eight (8) Requests for Admission ("RFA"): Nos. 1-4, 25-26, and 43-44, addressed below.

#### 1.     RFA Nos. 1-4

Beginning with RFA Nos. 1-4, the Court denies Plaintiffs' request to compel supplemental responses from Defendants. These four RFAs seek similar admissions. RFA Nos. 1 and 2 seek admissions that the Department of Corrections ("DOC") either has or has not "been over-detaining more than one thousand persons every year" since January 1, 2013.[2] RFA Nos. 3 and 4 seek admissions that the Defendant either has or has not known that the DOC "over-detains more than one thousand persons per year" since January 1, 2014.[3]

Defendant objects to these requests on several grounds, including that the term "overdetaining" as defined by Plaintiffs "improperly presumes liability and calls for a legal conclusion."[4] Defendant further objects that the word "detained" in said definition "is undefined

---

[2] R. Doc. 57 at 2-3.

[3] *Id.* at 4. The Court notes that in their Requests for Admissions, Plaintiffs present an identical request for RFA Nos. 3 and 4, *i.e.*, that "Defendant has known that the DOC over-detains more than one thousand persons per year." Presumably, Plaintiffs meant to request in one whether "Defendant has known" and in the other whether "Defendant has not known," and the Court will analyze them as such. However, whether this was an oversight by Plaintiffs or whether Plaintiffs intended to propound identical RFAs would not affect or otherwise change the Court's ruling on these requests.

[4] R. Doc. 60 at 2. The term "overdetain" is defined by Plaintiffs in their Second Set of Requests for Production of Documents. *See* R. Doc. 57-9 at 3. As defined by Plaintiffs, the term "refer[s] to the detention of persons who have been sentenced to the custody of the DOC and whose sentence was complete at the time of their sentencing, but who were not released by the DOC at the time of sentencing and or shortly (within 48 hours) past the time that they were sentenced. This includes such persons being held in either jails or DOC facilities." R. Doc. 57-9 at 3. While Defendant argues that Plaintiffs have referenced multiple different definitions of "overdetention," allegedly adding

and is susceptible to multiple definitions or connotations, particularly in the legal context, thus making this request incapable of a response."[5] In his supplemental response, Defendant, in addition to these objections, also claims that the RFAs "imprecisely describe[] the applicable time period applicable to the request" and "is not limited in time."[6]

While the Courts finds these objections without merit, it does find that Defendant has adequately responded to Plaintiffs' RFAs. As mandated by Rule 36(a)(4), "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). In its supplemental responses to these RFAs, Defendant states that "the DOC is unable to determine from its records whether any particular individual has been 'overdetained.'"[7] Defendant further expands on this in his Opposition, stating that "the burden imposed on DOC to analyze and assess CAJUN data and inmate files for the past year is enormous" and that "[i]t would be impossible for defendant to ascertain this information for the past seven years."[8] Per Defendant, his response that he cannot determine whether more or less than 1,000 people have been overdetained each year since either January 1, 2013, or January 1, 2014, "meets the requirements of Rule 36."[9] The Court agrees. While the Court wants to be clear that it is not going to allow Defendant to hide behind an antiquated computer system to avoid having to produce necessary information, the Court also is mindful of the fact that this case is only in the class discovery phase. Thus, discovery at this point should be limited to that which is related to class certification issues, not necessarily the merits of the underlying case. *See Lord v.*

---

further confusion, the Court notes that in their Requests for Admissions, with regard to definitions and instructions, Plaintiffs specifically state that the ones to be used are those "set forth in Plaintiff's Second Set of Requests for Production (served on July 7, 2020)." R. Doc. 57-2 at 2. The Court, therefore, finds this argument of Defendant without merit.
[5] R. Doc. 60 at 2.
[6] *Id.*
[7] *Id*.
[8] *Id.* at 5.
[9] *Id.*

*Sidewinder Drilling, Inc.*, No. 15-0022, 2015 WL 13805094, at *2 (W.D. Tex. May 8, 2015) ("In light of Fed. R. Civ. P. 23(c)(1)'s mandate to determine class certification at 'an early practicable time,' the court must be permitted to limit pre-certification discovery to evidence that, in its sound judgment, would be helpful or necessary to the certification decision.") (quoting *Stewart v. Winter*, 669 F.2d 328, 331 (5th Cir. 1982)). Here, while Plaintiffs' RFAs arguably pertain to the elements of class certification, they also go, as worded, to the very heart of the merits of Plaintiffs' underlying case. The Court finds that Defendant's responses to these RFAs are sufficient and will deny Plaintiffs' request for additional responses to them.

### 2.    RFA Nos. 25-26

RFA Nos. 25 and 26, also similar, ask Defendant to admit that from April 16, 2019, through April 25, 2019, the DOC either made no attempt or made one or more attempts to determine whether it had any legal right to imprison Plaintiff.[10] Defendant responds with several objections to these requests, primary among them that "this request impermissibly calls for a legal conclusion and matter of law."[11] Per Defendant, "[a] determination of whether the DOC had a 'legal right' or not, and when that 'legal right' ended, is a question of law that is not appropriate for an admission of fact."[12] The Court disagrees.

"Fed.R.Civ.P. 36(a) 'allows litigants to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact. Such breadth allows litigants to winnow down issues prior to trial and thus focus their energy and resources on disputed matters.'" *In re Katrina Canal Breaches*, No. 05-4182, 2007 WL 1852184, at *1 (E.D. La. June 27, 2007)

---

[10] R. Doc. 57 at 5. The Court notes that while this Motion was brought by the collective group of Plaintiffs, the singular "Plaintiff" is used in these RFAs because they were propounded by Plaintiff Brian Humphrey. *See* R. Doc. 57-2.
[11] R. Doc. 60 at 5-6.
[12] *Id.* at 6.

(quoting *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001)). "Moreover, requests for admissions are properly used for facts or facts as applied to law, not pure legal conclusions…." *Id.* (quoting *Warnecke v. Scott*, 79 F'Appx. 5, 6 (5th Cir. 2003)). In addition, any legally-related requests must provide specific facts and circumstances of the case, thereby connecting the legal proposition to that particular case. *Dauphine v. REC Marine Logistics, LLC*, No. 16-15370, 2008 WL 2100636, at **2-3 (E.D. La. Jan. 8, 2018). The RFAs at issue here simply ask if the DOC made an attempt to determine whether it had a legal right to imprison Plaintiff; this request does not seek a legal conclusion. If anything, it seeks an admission of the application of law to fact, which is permissible under Rule 36. *See Thompson v. Beasley*, 309 F.R.D. 236, 241 (N.D. Miss. 2015) (while Rule 36 allows a party to request an admission of the application of law to fact, requests for purely legal conclusions generally are not permitted). Defendant, therefore, is instructed to provide a supplemental response to these two RFAs.

### 3. RFA Nos. 43-44

RFA Nos. 43 and 44, which are also similar, ask Defendant to admit that the DOC either has or has not "implemented the policy of picking up necessary paperwork to process release dates rather than waiting for that paperwork to be delivered."[13] Defendant objects to these requests as impermissibly vague because they do not specify "the policy" or the "necessary" paperwork referenced in the requests.[14] The Court agrees. Plaintiffs' reference to "the policy" indicates that the requests focuses on a specific policy, which is not identified. Similarly, the paperwork Plaintiffs consider "necessary" also is not identified. Because of the vagueness of these requests, the Court will deny Plaintiffs' request to compel further responses from Defendant as to RFA Nos. 43 and 44. *See F.T.C. v. Think All Publ'g, L.L.C.*, No. 07-011, 2008 WL 687455, at *3 (E.D. Tex.

---

[13] R. Doc. 57 at 6-7.
[14] R. Doc. 60 at 7.

Mar. 11, 2008) (sustaining vagueness objection to request for admission involving the phrase "pay any fee").

### B.     Interrogatories

Plaintiffs seek additional responses to two contention Interrogatories previously propounded on Defendants, Interrogatories No. 7 and No. 10.

#### 1.     Interrogatory No. 7

The information sought in Interrogatory No. 7 is as follows:

> Identify the date on which the legal authority for the DOC to detain Plaintiff expired, and why it was then. If in answering this interrogatory you identify a date before May 13, 2019, state every reason that Plaintiff was not released on the date identified in your answer.[15]

Defendant objects to this request on multiple grounds, including that it is premature.[16] Without addressing Defendant's remaining objections, the Court agrees that this request is premature. "Most courts agree that due to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted—typically at the end of the discovery period." *Trident Mgmt. Group, LLC v. GLF Constr. Corp.*, No. 16-17277, 2017 WL 3011144, at *3 (E.D. La. July 14, 2017) (citation and internal quotations and alterations omitted). Here, the Parties are engaged strictly is class discovery. This request is a contention interrogatory dealing only with a single Plaintiff, and its pertinence to the elements of class certification have not been demonstrated. As such, the Court will deny this request without prejudice to its being reurged during fact discovery following either approval or denial of class certification. Defendant, however, is here cautioned that his response simply directing Defendant to his responses to

---

[15] R. Doc. 57 at 8. The Court again notes that these Interrogatories also pertain only to Plaintiff Brian Humphrey. *See* R. Doc. 57-5.
[16] R. Doc. 60 at 8.

Interrogatory No. 4 and Interrogatory No. 6[17] is insufficient, as those responses do not provide the information being sought here.

### 2. Interrogatory No. 10

As requested by Interrogatory No. 10:

> Identify all steps you have taken since January 1, 2012 to mitigate or prevent the risk that prisoners in the custody of the DOC will be detained beyond the date on which the DOC's legal authority to detain a particular prisoner expires.[18]

Defendant again raises multiple objections to this Interrogatory, primary among them that "[i]n order to answer this interrogatory, the DOC would have to admit to the underlying liability question as to whether the plaintiff or members of the class were improperly over-detained or not."[19] In his Opposition, Defendant continues, noting that in the related *Giroir* case, the plaintiff there issued a similar interrogatory, requesting from Defendant a list of "every action you have taken since January 1, 2019, to ensure the timely release of defendants from DOC custody."[20] Per Defendant, his response to this Interrogatory in the *Giroir* matter sufficiently answers Plaintiffs' Interrogatory No. 10 in the instant litigation.[21] While admittedly similar, the Court does not find the requests the same, particularly with regard to the date range of the requested information. The instant Interrogatory No. 10 seeks information from January 1, 2012, to present, while the request in the *Giroir* case only sought information dating back to January 1, 2019. Defendant's response to the request in the *Giroir* case, therefore, is insufficient.

Further, the Court disagrees with Defendant's argument that responding to this request would require the DOC to admit to the underlying liability. The request seeks information

---

[17] *Id.* at 9.
[18] R. Doc. 57 at 9.
[19] R. Doc. 60 at 10.
[20] *Id.* at 11.
[21] *Id.*

regarding steps taken by the DOC to prevent or mitigate a risk of overdetention. Because the Court finds that this contention interrogatory pertains to the issue of class certification, and because the class discovery period has closed, making such a request timely, the Court instructs Defendant to provide a substantive response to Interrogatory No. 10.

### C.  Requests for Production

Finally, Plaintiffs seek supplemental responses to two Requests for Production, Nos. 40 and 41. Because both Parties address these two requests together in their briefing, the Court will address them together here as well.

#### 1.  Requests for Production Nos. 40 and 41

Plaintiffs' Request for Production No. 40 seeks "[a]ll documents sent to the Louisiana Legislative Auditor related to the calculation of offender release dates."[22] Request for Production No. 41 seeks "[a]ll communications regarding House Bill No. 401 (2020 Regular Session)."[23] In response to these requests, in addition to boilerplate objections, Defendant states that "if any such responsive documents exist, defendant will provide ESI discovery in accordance with the ESI protocol once finalized."[24] To that end, in his Opposition to Plaintiffs' Motion to Compel, Defendant states that "[i]n accordance with the ESI protocol," "Defendant ran over 25 search terms through numerous custodians," which terms included "house bill 401" or "h.b. 401" or "hb 401" and "Rep*/4 dwight."[25] Per Defendant, "[b]ecause these search terms were provided by plaintiffs, presumably, these search terms were meant to capture email communications related to Requests

---

[22] R. Doc. 57 at 10.
[23] *Id.*
[24] R. Doc. 60 at 10-11.
[25] *Id.* at 12.

[for Production] Nos. 40 and 41" and that requiring Defendant to comply with the ESI protocol "and also locate specific communications" would be overburdensome.[26]

In response, Plaintiffs point to the following language in the Parties' ESI protocol:

> Notwithstanding the use of search terms to identify relevant and responsive email ESI, if a Party is aware of the existence of specific relevant and responsive documents maintained in hard copy or as ESI, then that party shall produce such documents even if they do not include any of the search terms being applied generally to email ESI.[27]

As argued by Plaintiffs, this provision "prohibits" Defendant from taking the stance that production of these documents is overburdensome, as this is "a discrete set of documents, which almost certainly were sent at a specific time and by a particular DOC employee whom defense counsel could easily identify by simply asking around in the office."[28] Defendant replies that he "is not aware of the existence of any specific relevant responsive documents" and that "[e]mails sent to the legislative auditor or emails related to House Bill No. 401 should be encompassed in the search terms provided by plaintiff."[29]

Based on the information provided, the Court will grant Plaintiffs' request as to both RFPs. These RFPs were propounded on Defendant on July 7, 2020.[30] The Parties' ESI Discovery Plan is dated October 6, 2020,[31] indicating to the Court that it was developed not only after Plaintiff had propounded his RFPs, but also after Defendant had replied thereto on August 31, 2020, stating that it would "provide ESI discovery in accordance with the ESI protocol once finalized."[32] However, as described by Defendant in his Opposition, it appears to the Court that the ESI protocol pertains

---

[26] *Id.*
[27] R. Doc. 57-1 at 14; R. Doc. 57-14 at 4.
[28] R. Doc. 57-1 at 15.
[29] R. Doc. 60 at 12.
[30] R. Doc. 57-9.
[31] R. Doc. 57-14 at 1.
[32] R. Doc. 57-10 at 1, 9.

to emails only.³³ In addition, it is unclear to the Court whether this agreement has been finalized and executed, based on Plaintiff's representation that "[t]he parties have been conducting discovery under an informal, written ESI protocol since last year" and because the copy provided by Plaintiff is unsigned.³⁴ Because it is unclear whether the referenced ESI protocol is a binding agreement between the Parties and because, regardless, it appears that any searches that have been conducted thus far pertains only to emails, the Court finds Defendant's responses here inadequate. Defendant is instructed to supplement his response to these Requests for Production.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that the Motion to Compel Defendant's Discovery Responses filed by Plaintiffs (R. Doc. 57) is **GRANTED IN PART**, **DENIED IN PART**, and **DENIED WITHOUT PREJUDICE IN PART**. Plaintiffs' Motion to Compel is **GRANTED** as to Requests for Admissions Nos. 25 and 26, Interrogatory No. 10, and Requests for Production Nos. 40 and 41, and Defendant is **ordered** to provide sufficient, supplemental responses to these discovery requests **within 21 days** of the date of this Order. Plaintiffs' Motion to Compel is **DENIED** as to Requests for Admission Nos. 1-4 and 43-44. Plaintiffs' Motion to Compel is **DENIED WITHOUT PREJUDICE** as to Interrogatory No. 7.

---

³³ *See* R. Doc. 60 at 12 ("In accordance with the ESI protocol, the parties agree to numerous search terms … regarding email communications through multiple email boxes."); *id.* ("Because these search terms were provided by plaintiffs, presumably, these search terms were meant to capture email communications related to Requests Nos. 40 and 41."); *id* ("Defendant undertook the burden to produce thousands of emails as agreed to under the ESI protocol.").
³⁴ R Doc. 57-1 at 14; R. Doc. 57-14.

**IT IS FURTHER ORDERED** that a telephone status conference is set in this case for **November 17, 2021, at 2:00 p.m.** to reset deadlines related to class certification. Counsel participating in the Conference shall call using the AT&T Teleconference System five minutes prior to the conference. Counsel will receive a separate e-mail containing dial-in information prior to the conference.

Signed in Baton Rouge, Louisiana, on November 9, 2021.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**