UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BRIAN HUMPHREY,** on behalf of himself and all similarly situated individuals, | * * * * * | **CIVIL ACTION** **NUMBER: 3:20-cv-00233-JWD-SDJ** |
| **VERSUS** | * * * | |
| **JAMES LEBLANC** | * * * | **JUDGE JOHN W. DeGRAVELLES** **MAGISTRATE JUDGE SCOTT JOHNSON** |

*******************************************************************

# AFFIDAVIT

**STATE OF LOUISIANA**

**PARISH OF EAST BATON ROUGE**

**BEFORE ME**, the undersigned notary, duly authorized in the State and Parish aforesaid, personally came and appeared:

**ANGELA GRIFFIN**

Who, based upon her personal knowledge, did depose and say the following:

1. I am employed by DPS&C as a Program Manager. As a part of my job duties, I oversee the DPS&C's Pre-Classification Department. The Pre-Class Department handles time computation of inmates sentenced to DPS&C custody and release of inmates.

2. Not every offender who is sentenced to a DPS&C sentence is transferred to the physical custody of DPS&C. For example, inmates who are awaiting their sentence dates at the local jail will generally remain at the local jail after they are sentenced to DPS&C time. DPS&C must rely on the local jails to send the necessary paperwork to advise DPS&C that the offender is sentenced to DPS&C time. The local jail must send the paperwork on all

1

EXHIBIT 1

offenders sentenced to DPS&C, even the offenders that transfer into DPS&C state facilities.

3. Pre-Classification is the process by which DPS&C identifies offenders who have been sentenced to DPS&C custody and determines the logistics of their sentences. Pre-Classification includes time computation, awards of credits, qualifications for parole, and other matters affecting the length of an offender's time in DPS&C custody. Pre-Classification process includes the release of offenders sentenced to DPS&C custody and housed in the local facility.

4. The Pre-Classification process includes, but is not limited to: verification of the offender's identity, review and collection of conviction and sentencing information, time computation of release dates and parole eligibility dates in compliance with applicable sentencing laws, clearance of each offenders' records prior to their release, and the creation of offenders' release certificates for transmission to their holding facilities or Probation and Parole District Office.

5. Louisiana Code of Criminal Procedure Article 892 lists the documentation and information that must be transmitted by the Parish Sheriff to DPS&C for the purpose of completing time computation.

6. The information that DPS&C receives from the local sheriff of the Parish of conviction is referred to as a "Pre-Class Packet," and must include:

   - Basic Information and Interview for Local Jail Facilities Form,
   - Credit for DPSC Commitment Form,
   - Bill of Information,
   - Uniform Commitment Order with Judges Signature,
   - Suspect Rap Sheet with photo, State Identification Number (SID) and the Arrest Tracking Number (ATN) from the fingerprint for the conviction/disposition of the sentence from the Automated Fingerprinting Identification System, and
   - DPSC Acknowledgements and Signature Statement signed by the inmate.

7. When DPS&C receives a Pre-Class Packet, the first page of the packet is either stamped or signed with the date it was received. Then, the documents contained within the packet are scanned into Oracle, an electronic filing system, and saved by the offender's DPS&C Number if he has one. If not, he is assigned a DPS&C Number by DPS&C.

8. Once DPS&C receives the Pre-Class Packet from the parish jail, DPS&C personnel within the Pre-Class Department verifies all paperwork included is for the same person, confirms the sentence on the Uniform Commitment Order is a hard labor sentence to be served in the custody of DPS&C, and prints criminal history from NCIC and verifies that the offender's tracking number, from the NCIC fingerprinting paperwork and criminal history, coincides with the disposition for the conviction on the Uniform Commitment Order. The requirements to process a release of an offender are outlined in the attached Release Clearing Checklist (Exhibit 1-A).

9. If the required documents are missing from the Pre-Class Packet, or if one of the required documents are not completely filled-out and executed as set forth in La. C.C.P. art. 892, in most instances, DPS&C cannot process the offender's time computation. Missing or delayed documentation from the local facility can cause delays in the time computation process.

10. For example, even though the Supreme Court requires courts to prepare a Uniform Commitment Order, some courts do not send or prepare such orders.

11. The Pre-Class Department must update the Criminal and Justice Unified Network (CAJUN) using an offender's previously-assigned DPS&C number or new DPS&C number, with the information obtained or learned from the Pre-Class Packet.

12. After the necessary information is located in or entered into CAJUN, DPS&C personnel completes the offender's time computation, which requires reviewing: any and all jail credit that is applicable for each sentence (found on the Credit for DPS&C Commitment Form received from the jail and listed on CAJUN); the crime convicted of (found on the Uniform Commitment Order), the date the crime was committed (found on the Bill of Information), the sentence date (the date the offender was given an imposed sentence to DPS&C (found on the Uniform Commitment Order); the sentence start date (if deferred sentence, the date the Uniform Commitment Order gives to report to jail and the date the offender was remanded as listed on the Credit for DPS&C Commitment Form from the jail); the sentence length for each charge (the amount of time listed on the Uniform Commitment Order to serve in the custody of DPSC on a new commitment); offender class for the charge related to number of felony convictions(calculated by using the information on the CAJUN system and the Criminal History Reports; and Good time rate and parole eligibility for each charge (determined by the commitment date and the type of crime).

13. DPS&C personnel also consider whether the offender has any time to serve on other sentences based on the information obtained from their criminal history and dispositions.

14. DPS&C personnel obtains the offender's criminal history reports (State Police criminal history, FBI criminal history and any out of state criminal history) to determine whether the offender has any warrants, charges without dispositions, and any Louisiana or out of state proceedings in which the offender may need to serve time. For every arrest or charge without a recorded disposition, DPS&C personnel must contact the arresting agency, clerk of court, or prosecuting agency, to determine the disposition of each charge. This task must

be completed before a release certificate can be issued, as it may impact the calculation of an inmate's release date.

15. If it is determined that an offender is entitled to release, the proper release certificate and form letter will be transmitted by email or fax to the supervising Probation and Parole district, or to the local facility where the offender is being held. The DPS&C personnel transmitting the release paperwork confirm the release paperwork was received by either the supervising Probation and Parole district or by the facility where the offender is located.

16. However, if any of the information listed above is missing, or incomplete, DPS&C cannot legally release an offender until the information is obtained or verified.

17. Following the Lean Six Sigma project in 2012, an important outcome of the internal review was the centralization of the Pre-Class Department. Prior to 2012, each state facility performed time computation. Following the internal review, DPS&C used the information gained to revamp the Pre-Class Department to two central departments, to ensure uniformity and streamlined time computation processes.

18. Sometime in 2016, Secretary LeBlanc met with the Clerks of Court Association to address the delay in receiving paperwork and court documents. It was suggested that the clerks could email the Uniform Commitment Orders directly to DPS&C. After analyzing the issues, we determined that receiving piecemeal paperwork from the clerk's office would not solve any issues and would only cause more confusion. To process time computation, Pre-Class needs the entire Pre-Class Packet from the local facility. Receiving just the Uniform Commitment Order electronically would not assist in time computation, especially if the local facility does not timely send the Pre-Class Packet.

19. In 2017, DPS&C cooperated with the legislative auditors in reviewing time computation errors. DPS&C implemented a secondary review of every time computation, and conducts an additional random review of 25 time computations per month by each Pre-Class supervisor.

20. DPS&C has a department regulation that requires identification of offenders who are potential immediate releases, and gives those offenders priority for time computation. A copy of Department Regulation NO. IS-B-3 is attached to this affidavit as Exhibit 1-B. If immediate release offenders are not released within two days of DPS&C receiving the paperwork, the Pre-Class employees must create a case narrative to explain the problems encountered during the time computation process.

21. In response to the Six Sigma Project, DPS&C also attempted have legislation passed to mandate a time period for the clerks and sheriffs to provide the Pre-Class packet to DPS&C. This legislation did not pass. A copy of the bill is attached to this affidavit as Exhibit 1-C.

22. In October 2019, an Interactive Sentencing Workshop was conducted at the fall Judge's Conference though the Louisiana Supreme Court. DPS&C was a presenter at the conference which was aimed at assisting judges with sentencing and correctly providing required UCO to DPS&C. The presentation is attached to this affidavit as Exhibit 1-D.

23. As a part of my job duties, I reviewed the Pre-Class Packet and time computation information regarding plaintiff, Joel Giroir. Giroir's Master Prison Record and other pertinent documentation is attached as Exhibit 1-E (redacted).

24. According to the documents, the following is an outline of Giroir's release process:
    a. Giroir's probation was revoked and he was sentenced to one year hard labor on January 26, 2021.

b. DPS&C had no knowledge of this sentencing until February 12, 2021, when St. Tammany Parish emailed Giroir's Pre-Class Packet to the Pre-Class Department at Raymond Laborde Correctional Center at 11:05 am.

c. In accordance with Pre-Class Intake, a Pre-Class employee, Joseph Bordelon, ran Giroir's criminal history on February 12, 2021. It was discovered that the Arrest Tracking Number (ATN) on plaintiff's fingerprint rap sheet did not match the ATN numbers on plaintiff's criminal history. Bordelon called to notify St. Tammany Parish Jail of the discrepancy. Bordelon was transferred to the booking department, who advised that they would "re-book" Giroir on the charges and fax the corrected information once it was completed. Bordelon called St. Tammany Parish Jail two more times on February 12, 2021, but was not sent the updated information.

d. Due to an ice storm, all state offices in Avoyelles Parish were closed from February 15, 2021 through February 19, 2021. Once Bordelon was able to return to the office on February 22, 2021, he had received the requested updated information from St. Tammany Jail and was able to calculate plaintiff's time that morning.

e. Bordelon sent the packet to Headquarters at 8:22 am on February 22, 2021.

f. Jessica Smith at Headquarters received Giroir's packet at 8:22 am. Smith then performed the following tasks necessary to process the release: (1) print and send submittal, clearance and residence plan to St. Tammany Parish Prison; (2) request criminal history to begin clearing release; (3) called Jefferson Parish Sheriff Office to determine whether plaintiff had an active warrants or detainers; (4) called Orleans Municipal Court to check for active warrants or detainers; (5) obtain disposition of charges on criminal history sheet from Sr. Tammany; (6) updating

7

information in CAJUN; (7) prepare release packet for signature; and (8) send final release packet to St. Tammany.

    g. Giroir was released on February 22, 2021.

25. As a part of my job duties, I reviewed the Pre-Class Packet and time computation information regarding plaintiff, Brian Humphrey. Humphrey's Master Prison Record and other pertinent documentation is attached as Exhibit 1-F (redacted).

26. According to the documents, the following is an outline of Humphrey's release process:

    a. Humphrey was sentenced by the 26th Judicial District on April 16, 2019. The UCO states the sentence is three years, DOC time is "0" years, and there is not indication that the sentence is at hard labor.

    b. Pre-Class Packet was transmitted to DPS&C by the Bossier Parish Sheriff on April 26, 2019 at the end of the day. It was initially received by the Pre-Class Department at David Wade Correctional Center, which is responsible for processing sentence computations and releases for offenders in certain parishes, included with a group of Pre-Class Packets from the Bossier Parish Sheriffs Office. Because it was received at the end of the day on Friday, Plaintiffs Pre-Class Packet was not sorted and assigned until the following Monday (April 29, 2019), when it was assigned to Carlisa Lewis to begin processing. On that day Lewis accessed CAJUN, which showed that Plaintiff was already reporting to Probation and Parole ("P&P"). Lewis returned Plaintiffs Pre-Class Packet to Cecilia Lawrence for further handling

    c. On April 29, 2019 Lawrence began the process of confirming the information relating to Plaintiff in CAJUN and to verify his whereabouts. She also performed a criminal history check on Plaintiff. Because the information in CAJUN, indicating

8

Plaintiff was reporting to P&P, contradicted the information provided in the Pre-Class Packet, Lawrence contacted the Webster, Caddo and Bossier Parish jails by telephone to confirm whether Plaintiff was housed there. She was told by each facility that Plaintiff was not there. Lawrence then sent an e-mail to P&P to verify the information in CAJUN. P&P responded that it had no information but assumed Plaintiff had been released because his case had been assigned as a "no show," indicating he did not appear for his initial meeting with P&P after release. Lawrence then returned the Pre-Class Packet to Lewis because Plaintiff could not be located at that time.

d. Between the dates of May 3, 2019 and May 6, 2019, Lewis entered additional information in CAJUN relative to Plaintiff to process his time computation and release. On May 9, 2019, DPS&C Headquarters updated information in CAJUN that indicated Plaintiff was currently at the Bayou Dorcheat Correction Center. Lawrence then notified Lewis of Plaintiffs whereabouts. Lewis then transmitted the Pre-Class Packet to Jeffrey Norred at David Wade Correctional Center for further processing.

e. Between the dates of May 9, 2019 and May 13, 2019, Norred was provided with Plaintiffs file by Lewis so that he could run an initial time computation. A release packet, comprised of all information required according to the DPS&C's Release Clearing Checklist and according to the applicable Instructions, was provided by Norred to Sally Gryder on May 13, 2019. Gryder checked the time computation, signed the Release Clearing Checklist and returned it to Norred to process the release. Norred started the releasing process on May 13, 2019 at or about 8:30 AM.

The Webster Parish Sheriff sent the residence plan and clearance sheet back to Norred on May 13, 2019 at 11:01 AM. Norred then printed out the release certificate information and presented it to David Wade Correctional Center Assistant Warden Angie Huff. The signed release certificate was then faxed by Norred to the Bayou Dorcheat Correctional Center, where Plaintiff was located. Norred then called Carolyn Douglas, Assistant Warden at Bayou Dorcheat Correctional Center, to confirm the certificate was received.

    f. Humphrey was released on May 13, 2019.

27. As a part of my job duties, I reviewed the Pre-Class Packet and time computation information regarding plaintiff, Bryant White. White's Master Prison Record and other pertinent documentation is attached as Exhibit 1-G (redacted).

28. According to the documents, the following is an outline of White's release process:

    a. On January 10, 2018, White was released on parole on charged of armed robbery, aggravated battery and possession of a firearm.

    b. On March 12, 2019, White was arrested on new charges of aggravated battery and armed robbery.

    c. On April 25, 2019, White elected to defer his preliminary hearing, and agreed to postpone the final parole revocation hearing before the Parole Board until the pending felony charges were disposed of.

    d. On March 1, 2021, White pled guilty to aggravated battery and unauthorized use of a movable.

e. On March 12, 2021, after receiving the necessary court minutes and UCO pertaining to White's guilty plea on felony charges, White's parole officer completed the required report recommendation revocation of White' parole.

f. The report was submitted to DOC Headquarters and then to the Parole Board on March 19, 2021.

g. On April 15, 2021, the Parole Board issued a letter revoking White's parole.

h. On April 19, 2021 the DOC Pre-Class Department received White's parole revocation packet. Melissa Morrison sent the parole revocation letter to the Orleans Parish Sheriff's office requesting the Pre-Class packet for White. The Pre-Class packet was received the same day, and Morrison calculated White's time and scanned and indexed all documents into Oracle. Morrison then email the time computation to Headquarters.

i. On April 20, 2021, Amy Caruso received White's information. She sent off the residence plan and release clearance to Orleans Parish Sheriff's office, and discovered that White had a detainer from St. Bernard Parish. On April 20, 2021, White was released from DOC custody to St. Bernard Parish on the detainer.

_____
ANGELA GRIFFIN

**SWORN TO AND SUBSCRIBED** before me, **NOTARY PUBLIC**, this 22 day of August, 2022.

_____
NOTARY PUBLIC



OFFICIAL SEAL
JONATHAN R. VINING
NOTARY ID # 30781
STATE OF LOUISIANA
PARISH OF EBR
My Commission is for Life

11