IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| Brian Humphrey *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> James LeBlanc, <br><br> Defendant. | No. 3:20-cv-233-JWD-SDJ <br><br> Hon. John W. deGravelles, <br> District Judge <br><br> Hon. Scott D. Johnson, <br> Magistrate Judge |

### PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Named Plaintiffs in this case, by and through their undersigned counsel, respectfully submit this reply in support of their motion for class certification, ECF 104, and in rejoinder to the memorandum in opposition filed by Defendant, ECF 118.

Named Plaintiffs were imprisoned by the Louisiana Department of Public Safety & Corrections ("DOC") for lengthy periods when they were sentenced (or remanded on parole) to time served or an equivalent, entitling them to immediate release. The Named Plaintiffs—and thousands of people like them—were (and continue to be) overdetained because while DOC Secretary James LeBlanc has been put on notice that the DOC's standard sentencing practices result in the illegal overdetention of people entitled to immediate release upon sentencing, he has chosen to ignore the problem, and has made little effort to change the DOC's practices so that people sentenced to time served (or an equivalent disposition) are released on time.

As a result, the DOC's *de facto* policy is to detain people sentenced to time served well past the 48-hour threshold that the Supreme Court has identified as the outer limit for a jailer to detain a person without judicial authority. Named Plaintiffs have brought this action to seek redress for the injuries that have resulted. Named Plaintiffs and each of the absent class

1

members alike will rely on this same evidence to prove that Secretary LeBlanc's policy choices caused them to be overdetained. This case therefore calls for class treatment.

The Secretary's responsive brief does not counsel otherwise. If anything, it confirms the central, common dispute in this case is whether the Secretary chose to adopt a policy of indifference when confronted with the DOC's widespread overdetention problem, and whether that policy of inaction resulted caused the DOC's *de facto* overdetention policy. Those questions are common to the entire class, confirming that this is an ideal case for class certification.

1. **The class claims are centered around alleged policies that have caused the DOC to overdetain thousands of people well past their release dates.**

Before addressing Rule 23, the Secretary makes several preliminary arguments. Each fails. ***First***, he argues that the proposed class is based on a "flawed theory that [the DOC] would legally be obligated to release an offender whom it has no knowledge of, within 48 hours of sentencing, is unsupported by the law." ECF 118 at 14. The DOC recently made this same argument in *Crittindon v. LeBlanc*, 37 F.4th 177, 188-91 (5th Cir. 2022), *pet for reh'g en banc filed* (June 24, 2022), and the Fifth Circuit rejected it, explaining that the "[DOC] is responsible for the local jails once they house DPSC prisoners." 37 F.4th at 191. But in all events, the Secretary's argument presents a merits question, and it is one that is common to the class, whether the Secretary is right or wrong. It does not counsel against certification.

***Second***, the Secretary suggests that *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) is irrelevant even as a standard because it concerned Fourth Amendment rights implicated by pre-arraignment detention. *See* ECF 118 at 14-15. This argument is a nonstarter. Courts apply *McLaughlin* to the length of detention after court authority *ends* as a matter of routine. *See* ECF 104-1 at 3-4 (collecting cases).

***Third***, the Secretary argues that Named Plaintiffs have proposed an impermissible "fail-safe" class, because the term "eligible" defines class membership in terms of liability. ECF 118 at 16. In the proposed class, however, "eligible" characterizes the release date of a person's sentence, not a presumption of legal liability. A person who is sentenced to "time served," for example, is "eligible" for release at the time of sentencing, because the court authority to imprison them has ended. The definition does not assume liability, and does not negate the reasonable period to effectuate such a person's release that is contemplated in *McLaughlin* and other overdetention cases. This is not a fail-safe class.

2. **The proposed class turn on an unreasonable amount of delay, but rather on whether Secretary LeBlanc's policy choices caused widespread delay.**

The Secretary repeatedly argues that Named Plaintiffs propose to certify a class that would require individual examination of each overdetention to determine whether it was reasonable. Specifically, he argues that Named Plaintiffs propose to draw a "bright line" at 48 hours of detention, and propose to certify a class solely based on the contention that detention past 48 hours is unreasonable. Such a class, argues the Secretary, cannot be certified because reasonableness must be decided case-by-case. As the Secretary puts it, courts do not certify overdetention classes "where the only complaint is the alleged unreasonable amount of delay, because reasonableness of delay necessarily implicates individualized issues." ECF 118 at 26.

That is not the class that Named Plaintiffs have actually proposed. The 48-hour threshold is certainly an important backdrop for understanding a jailer's obligations. As *McLaughlin* emphasized, while the reasonableness standard gives jailers flexibility for numerous scenarios, "flexibility has it limits," 500 U.S. at 55, and when detention exceeds 48 hours without a court's authority, "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id*. at 57. As the Seventh Circuit observed in

3

in ruling for certification of a Rule 23(b)(3) overdetention class, "*McLaughlin* recognized that at some point the State has no legitimate interest in detaining persons for an extended period of time, and if the regular practice exceeds that time period deemed constitutionally-permissible, the State is not immune from systemic challenges such as a class action." *Driver v. Marion County Sheriff*, 859 F.3d 489, 491-92 (7th Cir. 2017).

The proposed class, however, does not center on the unreasonableness of each particular class member's detention exceeding 48 hours. Rather, it is grounded on the fact that Secretary LeBlanc has adopted unlawful policies that have *caused* the DOC to overdetain thousands of people past the 48-hour threshold set out in *McLaughlin*. Overdetention classes centered on such policy claims are routinely certified by courts, because they turn on common questions about whether a defendant-government's policies caused numerous people to be overdetained.

The court in *Healey v. Louisville Metro Gov't*, No. 3:17-cv-00071, 2021 WL 149859 (W.D. Ky. Jan. 15, 2021) surveys overdetention class action decisions and draw this exact distinction. On the one hand, *Healey* examined decisions in which certification was denied (including the cases cited by the Secretary), and observed that "courts have been reluctant to certify classes based on whether the amount of delay is unreasonable . . . because determining whether a given detention rises to the level of a constitutional violation requires individualized determinations about the reason the inmate's release was delayed." *Healey*, 2021 WL 149859, at *16. On the other hand, looking to *Driver* and *Berry v. Baca*, 379 F.3d 764, 770 (9th Cir. 2004) (a jailer's "system of administrative processing cannot be immune from allegations that, in practice, it amounts to a policy of deliberate indifference"), *Healy* observed that "courts have been willing to certify over-detention classes where the class can answer questions about whether a municipality's policy (or lack of one) for releasing inmates caused over-detentions."

4

*Id.* at *17. "Put differently," said *Healey*, "an over-detention class may be certified if it alleges a systemic issue—which impacts all inmates—with the municipality's release process." *Id*.

This is the class proposed here. To borrow from *Healey*, the class claims here "are not premised on the unreasonableness of each over-detention. Rather, they are based on common questions about whether Defendants' inadequate process for timely releasing inmates caused [class] members to be over-detained for [more than 48] hours." *Healey*, 2021 WL 149859, at *25 (bracket text added). Courts routinely certify such classes charging unlawful overdetention.

**3. The secretary's overdetention policy choices present questions common to the class.**

The substance of the Secretary's opposition brief demonstrates that the central question in this case concerns legal questions and factual evidence common to the entire class. Named Plaintiffs' memorandum presented at length evidence that the Secretary had notice of the DOC's widespread overdetention problem, but simply failed to take serious steps to fix it. *See* ECF 104-1 at 4-10. In his response, the Secretary counters that he *has* made policy changes to mitigate the DOC's overdetention problem and that, in a nutshell, overdetention persists because other government actors, which he does not control, do not provide sentencing paperwork that the DOC needs to complete its calculations. ECF 118 at 8-9.

This argument misconstrues the facts and the law; notably they are at war with multiple district court decisions analyzing and then rejecting these same defenses, *see* ECF 104-1 at 26-27 (collecting cases). At this juncture, however, these claims are important for another reason: they show that the question of Secretary LeBlanc's policy choices are common to the entire class. If the trier of fact agrees with Plaintiffs that the Secretary's policy choices reflect indifference, a central question in the case will be resolved in every class member's favor. If the factfinder agrees with the Secretary, a central question will be resolved against every class member and in the Secretary's favor.

The same is true for Secretary LeBlanc's defense of the DOC's policy of waiting passively for the delivery of sentencing paperwork by sheriffs and courts. ECF 118 at 2, 22-23. If it is determined that the DOC is powerless (or has no obligation) to gather the papers on its own initiative, the Secretary will have scored a victory against every proposed class member. Or, if the trier agrees with Named Plaintiffs (and with *Crittindon*, *see supra at* 2) that the Secretary should have adopted a policy requiring the DOC to gather sentencing paperwork earlier, *see* ECF 104-1 at 8-10, that decision will apply to every member of the class as well.

The same is also true of the DOC's policy of insisting on continuing to imprison people while it gathers all warrant and detainer paperwork (part of the "pre-class packet"), including warrants in other jurisdictions or even ICE detainers, *see* ECF 118 at 6-7 (noting DOC's policy of releasing a prisoner only after all pre-class documents are gathered, including warrants or detainers from other jurisdictions). The Secretary insists that the DOC can hold a person until this information is gathered, whereas Named Plaintiffs assert that the DOC has no authority to imprison people otherwise entitled to release while it waits for paperwork to conduct such investigations, *see* ECF 104-1 at 10 (citing Rossi report). Resolving the legality of the DOC's practice of detaining people after it received their sentencing paperwork while it waited for "pre-class" paperwork relating to other matters will likewise resolve an important issue, up or down, for the entire proposed class. *Cf. Thompson v. Jackson*, No. 1:16-CV-04217, 2018 WL 5993867, at *8 (N.D. Ga. Nov. 15, 2018) (certifying a class based on jailers' "decision to detain inmates eligible for release . . . . simply because they wanted to run [Georgia Crime Information Center] GCIC checks, and the GCIC system was down.").[1]

---

[1] The secretary also notes that some prisoners otherwise eligible for release might be detained pursuant to La. R.S. 574.4.3, which requires a residency plan, *see* ECF 118 at 27. But La. R.S. 574.4.3 applies only to sex offenders, who are noted in CAJUN with a simple, easily ascertainable notation. *See, e.g.*, Ex. 1 (annotated CAJUN excerpt showing sex offense status). For this limited set

### 4. The members of the proposed class are ascertainable and sufficiently numerous.

Named Plaintiffs have explained that information in the DOC's CAJUN database can be used identify class members, and they have demonstrated this fact with data extracted and presented through "Negative Must Serve" and "Pull Document" spreadsheets. Specifically, Plaintiffs explained that anyone with a negative must serve number is eligible for immediate release. These data identify individuals who served their required time in custody as of the day they were sentenced or revoked on parole, but who remained in DOC custody for more than 48 hours thereafter. ECF 104-1 at 15-16. Plaintiffs further note that the DOC's "pull" documents using this data show that 1,700 people were overdetained in just part of the class period. *Id*. at 16. Plaintiffs do not suggest that these documents are the only step determining class members; instead, they show the granularity of the DOC's data and how it can be compiled to identify persons who meet specific, relevant criteria.

The Secretary claims this is insufficient to support Rule 23's ascertainability and numerosity requirements. ***First***, he argues that Named Plaintiffs' motion did not attach the spreadsheets they refer to, and the spreadsheet "therefore is not considered evidence" for class certification. ECF 118 at 18. The Secretary fails to provide any legal support for that proposition, which is best addressed in Plaintiffs' response to his motion to strike filed contemporaneously with this reply. Suffice it to respond here that "evidence supporting a motion for class certification need not be admissible under the Federal Rules of Evidence." *Edwards v. City of Tupelo, Mississippi*, No. 1:17-CV-131-DMB-DAS, 2019 WL 4643989, at *4 n.9 (N.D. Miss. Sept. 24, 2019). ***Second***, the Secretary suggests that Named Plaintiffs

---

of class members, whether or not a residency plan was lacking and therefore contributed to delay can be determined through a mechanical examination of DOC records. *Cf. Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 197 (E.D. Va. 2015) (noting that review of individual class member records does not create an individual issue where the relevant determination can be made mechanically).

misconstrue the relevant testimony about the utility in identifying persons who are overdetained—but does not explain why, or provide any citation. See ECF 118 at 17 n. 46. And it is notable that the DOC itself used the same form of "pull document" that Named Plaintiffs relied upon to describe the number of overdetained people when applying for a grant from the U.S. Department of Justice. See ECF 104-2 at 16 n.3. The Secretary ultimately offers no reason to doubt that data extracted from CAJUN can be used to ascertain class members, nor that the thousands of class members identified in those documents are sufficiently numerous that joinder is impracticable, as required by Rule 23(a)(4).

   **5. Named Plaintiffs' claims are typical and they will adequately represent the class.**

The Secretary argues that Named Plaintiffs' claims are not typical of the class, since the reasonableness of each overdetention will turn on whether each individual overdetention had a reasonable justification. ECF 118 at 22-23. As the Secretary acknowledges, though, *see id.*, this argument assumes that the proposed class turns on the reasonableness of each overdetention, rather than the policy choices attributable to Secretary LeBlanc, which *caused* the DOC to engage in widespread overdetention. *Cf.* § 2, *supra.* Those questions, as explained above, are common to the class. *Id.* The Secretary points out that one portion of the delay in plaintiff Giroir's case was caused by an ice storm that caused the DOC's sentencing calculation office to close. See ECF 113-2. Mr. Giroir's overdetention, with or without the ice storm, was well past 48 hours, *see id.* at 11, but even if the storm had impacted his claims, the effect of such an extraordinary event on a few class members does not defeat certification. "The typicality requirement does not require that an identical harm result from the same type of practice." *Ladd v. Dairyland Cnty. Mut. Ins. Co. of Texas*, 96 F.R.D. 335, 337 (N.D. Tex. 1982). There is no indication that this event will impact Mr. Giroir's ability to represent the class members.

### 6. Individual damage questions do not predominate.

The Secretary claims individual damage questions will predominate, since emotional damages and the like are likely to vary, and such damages "'will not be presumed from the mere violation of constitutional or statutory rights.'" ECF 118 at 29 (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 416-17 (5th Cir.1998)).  This argument misunderstands the law. The term "damages" certainly appears in the authorities that the Secretary cites, but both cases really concern the absence of common questions of injury and causation.  *Allison*, for example, involved a proposed class alleged to have suffered disparate impacts from race discrimination, which could not be certified since such damages required "proof of . . . actual injury to each class member," for which individual issues would predominate.  151 F.3d at 417.  Put differently, in the cases cited by the Secretary, the questions of whether the defendant's conduct caused a class member to suffer an injury or to suffer damage are interrelated.

The injuries in this case do not present such a problem:  each of the proposed class members, by definition, spent days or weeks in a cage when they should have been free.  Such wrongful incarceration is a concrete, indisputable injury, and while individual class members may be called on to prove the *amount* of damages caused by such incarceration, that showing is not required to prove that a wrongful incarceration caused *some* injury as a threshold matter.  In such circumstances, the need for damage calculations and evidence alone cannot defeat class certification on the ground that individual questions predominate over common questions. *Menocal v. GEO Group, Inc.*, 882 F.3d 905 (10th Cir. 2018).  This case, moreover, presents a ready measure of damages:  damage caused by time spent in a cage.  That measure may make

damage calculations practicable,[2] and if it is not, "'the question of damages can be severed from that of liability and tried on an individual basis.'" *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 307 n. 16 (5th Cir. 2003) (quoting 7B Charles Alan Wright *et al.*, Federal Practice and Procedure § 1781 (2d ed. 1986)). Common issues predominate in this class.

### 7. The class action device is superior.

The Secretary argues that the class action device is not superior, noting that a handful of individual cases have been brought to challenge the practice. ECF 118 at 30. That argument ignores the denominator: those cases represent a miniscule fraction of the thousands of cases of overdetention since at least 2012. *See* ECF 104-1 at 28. Over the past five years, there have been approximately a dozen overdetention lawsuits in Louisiana, and approximately ten thousand overdetained persons. The availability of attorney fees might *theoretically* serve as a basis for declining to find superiority, *cf.* ECF 118 at 30 (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996)), but the reality here shows that not to be the case. The class device is superior, and the class should be certified.

Dated: September 19, 2022                    Respectfully submitted,

/s/ Rebecca Ramaswamy                        /s/ Stephen H. Weil
Rebecca Ramaswamy                            Stephen H. Weil

*One of Plaintiff's attorneys*

Mercedes Montagnes, La. Bar No. 33287        Michael Kanovitz
Rebecca Ramaswamy, La. Bar No. 39524         Stephen Weil - weil@loevy.com
Nishi Kumar, La. Bar No. 37415               Loevy & Loevy
The Promise of Justice Initiative            311 N. Aberdeen, 3rd FL
1024 Elysian Fields Avenue                   Chicago, IL 60607
New Orleans, LA 70117                        Tel: (312) 243-5900
Telephone: (504) 529-5955                    Fax: (312) 243-5902
Facsimile: (504) 595-8006

---

[2] *See, e.g.*, *Driver v. Marion County Sheriff*, No. 1:14-cv-02076-RLY-MJD (S.D. Ind.) (https://mariondetentionsettlement.com/FAQ settlement administration page ("Class Members who file a valid claim will be paid $40 per hour of over-detention.").

William Most, La. Bar No. 36914
Caroline Gabriel, La. Bar No. 38224
Law Office of William Most, L.L.C.
Louisiana Bar No. 37764
201 St. Charles Ave., Ste. 114 #101
New Orleans, LA 70170
Tel: (504) 509-5023
Email: williammost@gmail.com