## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**BRIAN HUMPHREY, ET AL.**

**CIVIL ACTION**

**VERSUS**

**NO. 20-233-JWD-SDJ**

**JAMES LEBLANC**

### RULING ON MOTION TO EXCLUDE AND/OR STRIKE (1) AMENDED REPORT OF DORA SCHRIRO AND (2) REPORT OF RITA ROSSI

Before the Court is the *Motion to Exclude and/or Strike (1) Amended Report of Dora Schriro and (2) Report of Rita Rossi* ("*Motion*") (Doc. 115) brought by James LeBlanc in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections ("LeBlanc" or "Defendant") and the Louisiana Department of Public Safety and Corrections ("DOC") ("*Motion*"). The Court notes at the outset that while DOC and LeBlanc in his official capacity as Secretary of DOC were originally made defendants, the only defendant as per the operative complaint, (the *Second Amended Class Action Complaint* ("*SAC*")), is James LeBlanc in his individual capacity. (Doc. 43 at 3–4, ¶ 10.) Neither DOC nor LeBlanc in his official capacity are currently defendants. (*Id.*) Only LeBlanc answered the *SAC*. (Doc. 44.)

The *Motion* is opposed by Plaintiffs Brian Humphrey ("Humphrey"), Joel Giroir ("Giroir") and Bryant White ("White") (collectively, "Plaintiffs"). (Doc. 125.) Defendant filed a reply brief. (Doc. 140.) The Court has carefully considered the law, facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *Motion* is denied.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Humphrey filed this suit on April 15, 2019, asserting class action allegations and seeking monetary damages related to Defendant's alleged overdetention of him and others

similarly situated. (Doc. 1.) Plaintiffs Giroir and White were later added as named Plaintiffs. (*SAC*, Doc. 43 at 2, ¶ 4; *id.* at 3, ¶¶ 7–9.) Plaintiffs allege that they and others similarly situated were "remanded to the custody of the DOC since April 16, 2019 (pursuant to a criminal sentence or parole or probation revocation), and [ ] were entitled to release at the time they were remanded to the DOC's custody, but [ ] were released by DOC more than 48 hours past the time that they were remanded." (*Id.* at 2, ¶ 4.)

In Plaintiffs' *Motion for Class Certification*, Plaintiffs define their proposed class as follows:

> [A]ll persons who have been remanded to the custody of the DOC since April 16, 2019, and who were entitled to release at the time of the remand (either pursuant to sentencing or parole revocation), but who were released by DOC more than 48 hours past the time that they were remanded to the DOC's custody.

(Doc. 104 at 1; *see also SAC*, Doc. 43 at 16, ¶ 65.)

Plaintiffs filed a *Motion for Class Certification* on July 21, 2022. (Doc. 104.) Defendant filed an opposition (Doc. 118), and Plaintiffs filed a reply (Doc. 123).

The *SAC* alleges that "[f]or years now, the [DOC] has been unlawfully and knowingly overdetaining thousands of Louisiana residents in its custody every year. [LeBlanc] has known about this misconduct since at least 2012." (*SAC*, Doc. 43 at 1, ¶ 1.) Plaintiffs allege the particular facts and circumstances of their individual confinements and ultimate releases. (*Id.* at 4–8, ¶¶ 11–30.)

Plaintiffs allege that DOC has a pattern and practice of overdetaining people in its custody (*id.* at 8), which alleged pattern and practice is described in more detail at *SAC*, Doc. 43 at 8, ¶¶ 31–33. DOC is alleged to have committed this wrongful over-detention to thousands of prisoners every year (*id.* at 8–12, ¶¶ 34–47) and LeBlanc is alleged to have known or should have known

2

about the problem since a 2012 DOC investigation revealed the same (*id*.). Plaintiffs allege that notwithstanding the 2012 investigation and multiple additional studies and investigations since, nothing significant has been done to solve the problem and, indeed, LeBlanc has been deliberately indifferent to the problem. (*Id*. at 12–15, ¶¶ 48–62.)

Plaintiffs next allege why the proposed class as defined above meets the numerosity, commonality, typicality and adequacy requirements of Federal Rule of Civil Procedure 23(a). (*SAC*, Doc. 43 at 16–19, ¶¶ 65–81.)

Plaintiffs then claim entitlement to damages from LeBlanc under 42 U.S.C. § 1983, in that LeBlanc's deliberate indifference violated Plaintiffs' constitutional rights to liberty and due process under the United States Constitution (*id*. at 19–21, ¶¶ 82–90); under Art. I § 2 of the Louisiana Constitution, for violating their rights of due process (*id*. at 21, ¶¶ 91–94); for false imprisonment under Louisiana state law (*id*. at 21–22, ¶¶ 95–97); for state law negligence (*id*. at 22, ¶¶ 98–103); and state law intentional infliction of mental distress (*id*. at 23, ¶¶ 104–08). Plaintiffs seek compensatory and punitive damages and attorney fees. (*Id*. at 23.)

In his answer to the *SAC*, LeBlanc denies all allegations of wrongdoing. (Doc. 44.)

## II.    THE CHALLENGED EXPERTS

LeBlanc challenges both Schriro and Rossi on the same four grounds: first, their opinions are irrelevant since they address the merits issues and not the requirements of class certification under Federal Rule of Civil Procedure 23; second, their opinions are legal conclusions which an expert may not render; third, their opinions are both based on insufficient facts and information, and are speculative and conclusory; and fourth, they lack the necessary qualifications to render the opinions they have given. (Doc. 115 at 1–2.) The Court begins by reviewing and summarizing the qualifications and opinions of the two experts as contained in their reports.

### A. Dora Schriro

Schriro's report includes her credentials, materials reviewed, prior testimony, rate charged, and her opinions. (Doc. 104-8 at 2–20.) Among her listed qualifications, Schriro notes that she was Commissioner of two city jail systems (in New York City and St. Louis) and was Director of two state correctional systems (Missouri and Arizona). (*Id*. at 2.) She also served as an adjunct faculty member of the Criminology Department of the University of Missouri-St. Louis and of two law schools: St. Louis University School of Law and Arizona State University Sandra Day O'Connor School of Law. (*Id*. at 3.) Additionally, Schriro participated in the development of the American Bar Association's ("ABA's") Treatment of Prisoners standards and ABA's professional standards for state and local correctional systems. (*Id*.)

Among the documents reviewed in preparation for her opinion are various discovery documents in this case, including the deposition of James LeBlanc; The Second Amended Complaint and answer with exhibits; and LeBlanc's deposition in the *Giroir v. LeBlanc* case, among others. (*Id*. at 4, 13, and 16 nn.5–7.)

After providing a "Statement of the Problem" and background information, Schriro provides a history of DOC's and LeBlanc's efforts to solve the overdetention problem and expresses harsh criticism of their efforts. (*Id*. at 7-20.) She concludes, "In my opinion, Sec. LeBlanc is indifferent to the serious problem of unlawful over-detention." (*Id*. at 19.)

### B. Rita Rossi

Rossi's report includes her credentials, materials reviewed, prior testimony, rate charged and her opinions. (Doc. 104-14 at 2–9.) Among her listed qualifications, she states that for more than 25 years, she worked for the "Illinois Department of Corrections ('IDOC') in various roles relating to the computation of sentences and the release of prisoners." (*Id*. at 3.) She details those

roles, which included "supervising all releases of persons from IDOC's custody, as well as the discharge of all former prisoners from parole . . . [and] additionally supervised the development of the IDOC's Parole School Program to train parole officers in numerous aspects of parole, including calculation and discharge." (*Id*.) She served as Assistant Chief Legal Records Officer for the State of Illinois, where she "oversaw all sentence calculation issues for all IDOC facilities." (*Id*.) Through this experience, she "developed substantial knowledge and expertise regarding the manner in which departments of corrections must calculate sentences . . . in a manner that does not result in either over- or under-detention. This includes preventing the overdetention of persons who, when sentenced, are entitled to immediate release . . ." (*Id*.)

Among the materials she reviewed were the various DOC 30(b)(6) subpoena, deposition transcripts and exhibits taken in this case, along with LeBlanc's deposition transcripts and exhibits also taken in this case. (*Id*.)

In her report, Rossi describes generally a department of corrections' "sentence calculation function" (*id*. at 4) and describes "multiple means of performing prompt calculations" (*id*. at 4–6). She then reviews the sentencing calculations function as performed under Defendant's oversight (*id*. at 6–7) and offers expert criticism of same (*id*. at 7–8).

**III.    SUMMARY OF ARGUMENTS OF THE PARTIES**

**A.  LeBlanc's Original Motion (Doc. 115) and Memorandum (Doc. 115-1)**

LeBlanc's *Motion* seeks to exclude the reports and opinions of the two experts on the ground that they are irrelevant to class certification issues and therefore cannot be considered in connection with the class certification motion in support of which Plaintiffs offer the reports. (Doc. 115 at 1–2). In addition, LeBlanc challenges the reports more broadly as being deficient and

unreliable for all purposes in violation of the requirements of *Daubert v. Merrell Dow Pharmaceuticals*, *Inc*., 509 U.S. 579 (1993). (*See, e.g.*, Doc. 115-1 at 1–3.)

LeBlanc argues that both experts offer legal conclusions since "whether an individual has been overdetained . . . is a legal conclusion . . . upon which an expert witness cannot opine." (*Id.* at 3.) According to LeBlanc, Schriro opines that Humphrey was overdetained and that the DOC has for years "over-detained thousands of people in [their] custody" which, again, are prohibited legal conclusions. (*Id*. at 5.) LeBlanc points the Court to a case where her testimony was excluded for this reason. (*Id*. at 6 (citing *Dean v. Bearden*, No. 19-6022, 2021 WL 4066336 (W.D. Mo. Sept. 7, 2021)).)

In addition, Schriro's testimony should be excluded, argues LeBlanc, because it "relate[s] to the merits of the Plaintiffs' claims . . . - not to whether any of the Rule 23 requirements are satisfied." (*Id.* at 5.) LeBlanc levels the same criticism at Rossi. Rossi's conclusion that DOC's "sentence calculation function is inadequate, resulting in overdetentions . . . [is a ] legal conclusion related only to merits questions . . . that is irrelevant to the issue of class certification." (*Id*. at 6.)

LeBlanc also argues that Schriro lacks the qualifications to opine regarding overdetention since she has no education or experience "related to the process of sentence calculation." (*Id*. at 7.) "Simply because Schriro had a career in prison administration, which never remotely involved the state of Louisiana, does not qualify her to opine on whether [DOC] has overdetained anyone." (*Id*. at 8.)

According to LeBlanc, Rossi too is unqualified since she has no experience or knowledge with respect to the Louisiana DOC and her only experience has been with IDOC. (*Id*. at 9.) LeBlanc maintains that Rossi could not state the steps which are taken in Louisiana to calculate sentences and did not bother to analyze Louisianas laws germane to the subject. (*Id*. at 9–10.)

Finally, Rossi violated the requirements of Fed. R. Civ. P. 26 when, by her own admission, she failed to identify in her report all the documents she utilized in rendering that report. (*Id*. at 10–11.)

### B.  Plaintiffs' Opposition (Doc. 125)

Plaintiffs argue that the expert testimony of Schriro and Rossi are indeed relevant to the class certification issue because "[i]n assessing predominance under Rule 23(b)(3), a court determines whether 'common questions represent a significant aspect of [a] case' by determining whether 'the same evidence will suffice for each member to make a prima facie showing' on an important question." (Doc. 125 at 10 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012)).) Because a significant question in the case common to all putative class members is "whether [ ] LeBlanc exhibited deliberate indifference to the DOC's overdetention problem and whether DOC's system for gathering paper created unnecessary delays." (*Id*.) Therefore, the Schriro and Rossi reports are important evidence common to every class member, thus informing the issue of whether Rule 23(b)(3) is met.

Plaintiffs counter Defendant's attack on the qualifications of Schriro and Rossi by pointing the Court to their credentials, which the Court has summarized above. (*Id*. at 1, 4–5.) Plaintiffs argue that Defendant, in attacking Schriro's qualifications regarding the mechanics of sentencing calculation (about which she is not testifying), misunderstands the nature of the testimony which she is offering. (*Id*. at 3.) Rather, she is "assess[ing] the way in which Secretary LeBlanc has addressed the DOC's overdetention problem from the perspective of a[ ] statewide-level administrator . . ." (*Id*.)

Regarding Defendant's attack on the foundation for Schriro's opinions, Plaintiffs argue that Defendant fails to "explain what material information is lacking" but, in any event, "[t]his

claim is wrong on the facts [since Schriro] reviewed key evidence in the case in addition to the deposition transcripts." (*Id*. at 4.)

As to Rossi, Plaintiffs maintain she is not offering legal opinions but merely describes the "legal backdrop" under which sentencing calculations function and how they should operate "in light of what are understood to be those legal requirements." (*Id*. at 7.) Plaintiffs state that Rossi "does not seek to define to the jury what constitutes overdetention . . ." but rather "explain[s] how operating a sentencing calculation function in one manner versus another can inevitably result in detention without court authority." (*Id*. at 7–8.)

Plaintiffs contend that Defendant's attack on Rossi's lack of familiarity with Louisiana's system is misplaced because "[her] report describes the operation of . . . DOC's sentencing calculation function in detail as it relates to the sequence of gathering paperwork and the delay in performing a sentencing calculation to check for things like warrants and detainers . . ." (*Id*. at 8 (citing Doc. 104-14 at 5–6).) Since the core issue is what is required by the U.S. Constitution (and not whether Louisiana's system complies with Louisiana law), her knowledge of how the system works in Illinois is relevant. (*Id*. at 8–9.)

Plaintiffs admit that Rossi's report could have "contained more detail" about the materials she relied upon but argue that Defendant has not been prejudiced and the timing of her disclosure is more a matter of discovery than the admissibility of the report. (*Id*. at 9–10.)

### C.  LeBlanc's Reply (Doc. 140)

In his reply, LeBlanc reiterates his argument that both experts "offer legal conclusions only and opine on the merits of the Plaintiffs' claims – not on any issues relevant to class certification." (Doc. 140 at 1.) The "peer-level assessment" Plaintiffs claim that Schriro is making does not address "whether Plaintiffs can satisfy each of the procedural requirements set forth in [Fed. R.

Civ. P.] 23 . . ." (*Id.* at 2.) "[W]hile she may have opined on Secretary LeBlanc's deficiencies, Schriro has taken no position on whether his actions impacted any specific class member, all of them, or only one." (*Id.*) Thus, she "only offers opinions on the ultimate legal conclusion in this case – whether the plaintiffs can prove the elements of the causes of action they allege – which is impermissible for an expert witness." (*Id.*)

Defendant repeats that argument as it applies to Rossi's opinions, stating, "she is exclusively, and impermissibly, opining on legal conclusions, not class certification." (*Id.* at 3.) Defendant also returns to his argument that Rossi lacks the necessary qualifications to testify as "she literally possess no knowledge of any law or process specific to Louisiana . . ." on "the manner in which the Louisiana DOC's sentencing calculation function operates," and therefore the report must be excluded. (*Id.* at 4–5.) Finally, the failure to provide all materials relied upon by Rossi is Plaintiffs "play[ing] fast and loose" with the rules and is "unfair and prejudicial[.]" (*Id.* at 5.)

## IV.    DISCUSSION

### A.  Relevance of Reports to Class Certification Issues

LeBlanc complains that the two experts opine on "ultimate merits issues" and are therefore "irrelevant to the issue of class certification." (Doc. 115-1 at 3–5.) Plaintiffs counter that the reports are relevant and important as a part of the predominance evaluation the Court must make under Rule 23(b)(3). (Doc. 125 at 10.)

Here, the Court agrees with Plaintiffs. In conducting "the rigorous analysis of the rule 23 prerequisites" required of a court in deciding whether to certify a class action, *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996), "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," and the "rigorous analysis" required of the court may "entail some overlap with the merits of the plaintiff's

underlying claim." *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quotation and citations omitted).

"The Rule 23(b)(3) predominance requirement tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 253 (5th Cir. 2020) (cleaned up).  The Court in *Cruson* explained the role of examining merits issues in evaluating the question of predominance.

> "At bottom, the [predominance] inquiry requires the trial court to weigh common issues against individual ones and determine which category is likely to be the focus of a trial." *Crutchfield* [*v. Sewerage and Water Board of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016)]; *see also, e.g., Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 218 (5th Cir. 2003) (court considers "how a trial on the merits would be conducted if a class were certified"). The court must "go[ ] beyond the pleadings" to "understand the claims, defenses, relevant facts, and applicable substantive law." *Madison* [*v. Chalmette Refining, L.L.C.*, 637 F.3d 551, 555 (5th Cir. 2011)] (quoting *Unger* [*v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005)]). "This, in turn, 'entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class,' a process that ultimately 'prevents the class from degenerating into a series of individual trials.' " *Id*. (quoting *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003)).

*Id.* at 254; 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1785 (3d ed. 2022) ("In order to effectively make the Rule 23(b)(3) inquiry, it is necessary for the court to consider what will have to be proved at trial and whether those matters can be presented by common proof or whether individual proof will be required.").

As detailed in their reports and summarized above, the Schriro and Rossi reports and opinions inform broadly the question of whether LeBlanc exhibited deliberate indifference to DOC's alleged overdetention problem and whether DOC's system for gathering paper created

unnecessary delays. These alleged system wide deficiencies address the issue of whether common issues predominate over individual ones. Therefore, the Court concludes that these reports and the opinions contained therein are relevant to class certification.

### B. Reliability of Schriro's and Rossi's Opinions

#### 1. Standard

Pursuant to Federal Rule of Evidence 702, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if the rule's preconditions are met.

LeBlanc's *Motion* rests in part on its *Daubert* challenge to Schriro's and Rossi's opinions based on their alleged lack of qualifications, lack of a sufficient foundation for their opinions and that their opinions are, at least in part, legal opinions. (Doc. 115-1 at 1–2 (citing *Daubert*, 509 U.S. 579).) When *Daubert* is invoked, a district court may, but is not required to, hold a hearing at which the proffered opinion may be challenged. *See Carlson v. Bioremedi Therapeutic Sys., Inc*., 822 F.3d 194, 201 (5th Cir. 2016). However, when no hearing is held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry[.]" *Id*. "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting expert testimony. . . .' " *Id.* (quoting *Rodriguez v. Riddell Sports, Inc.,* 242 F.3d 567, 581 (5th Cir. 2001)).

The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is sufficiently reliable. As the Fifth Circuit has held:

> [W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case. *Daubert* went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has

11

been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." The [Supreme] Court summarized:

> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability-of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997) (internal citations omitted).

As this Court has explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert . . .* which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Fayard v. Tire Kingdom, Inc.*, No. 09-171, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010) (internal citations omitted) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)).

This Court has broad discretion in deciding whether to admit expert opinion testimony. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997) (appellate courts review a trial court's decision to admit or exclude expert testimony under *Daubert* under the abuse of discretion standard); *Watkins*, 121 F.3d at 988 ("District courts enjoy wide latitude in determining the admissibility of expert testimony. . . ."); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence.").

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (citing Fed. R. Evid. 702, Advisory Committee Note (2000 amend.)). Further, as explained in *Scordill v. Louisville Ladder Grp., LLC.*:

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system.    As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."    The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"

No. 02-2565, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003) (Vance, J.) (internal citations omitted) (relying on, among others, *Rock v. Arkansas*, 483 U.S. 44, 61 (1987), and *United States v. 14.38 Acres of Land, More or Less Sit. In Leflore Cnty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

The Supreme Court has recognized that not all expert opinion testimony can be measured by the same exact standard. *See Kumho*, 526 U.S. at 150.   Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.*, *cited with approval in Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 244 (5th Cir. 2002).

Cases following *Daubert* have expanded upon these factors and explained that *Daubert*'s listing is neither all-encompassing nor is every factor required in every case. *See, e.g.*, *Joiner*, 522

U.S. at 142; *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, courts may look to other factors. *Joiner*, 522 U.S. at 146.

In that vein, the Fifth Circuit has concluded that "soft [ ] sciences" involve "necessarily diminished methodological precision" when compared to other scientific disciplines like mathematics and engineering. *See United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006) (quoting *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1297 (8th Cir. 1997)).

> In such instances, other indicia of reliability are considered under *Daubert*, including professional experience, education, training, and observations. Because there are areas of expertise, such as the "social sciences in which the research, theories and opinions cannot have the exactness of hard science methodologies", trial judges are given broad discretion to determine "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case."

*Id.* (internal citations omitted) (relying on *Pipitone*, 288 F.3d at 247).

## C. Qualifications

### 1. Standard – Qualifications

Federal Rule of Evidence 702 requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony and then leave to the jury the extent of those qualifications. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 506 (5th Cir. 1999), *superseded by statute on other grounds*. The Supreme Court in *Kumho Tire*, 526 U.S. at 148–49, 156, and *Daubert*, 509 U.S. at 592, endorsed expert testimony based on personal observation and experience.[1] Additionally, the 2000 Advisory Committee Notes to Rule 702 state, "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience" which may be the "predominant, if not sole, basis for a great deal of reliable expert testimony."

---

[1] *See also, LeBlanc v. Chevron USA, Inc.*, 396 F. App'x. 94, 100 (5th Cir. 2010) (per curiam) (unpublished).

14

If the expert's testimony does not rest on traditional scientific methods, the court may permit testimony "where a proposed expert witness bases her testimony on practical experience rather than scientific analysis[.]" *Davis v. Carroll*, 937 F. Supp. 2d 390, 412 (S.D.N.Y. 2013). "In such cases . . . courts recognize that "[e]xperts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called general truths derived from . . . specialized experience." ' " *Id.* (quoting *Kumho Tire*, 526 U.S. at 149–50); *see also Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001). ("[T]here is no question that an expert may still properly base his testimony on 'professional study or *personal experience*.' " (emphasis added)); *Watson v. Snap-On Tools, Inc*., No. 04-1313, 2006 WL 2114558, at *5 (W.D. La. July 26, 2006).

LeBlanc notes that Rossi has never acted as an expert witness before. (Doc. 115-1 at 9.) Courts have rejected the notion that the Federal Rules of Evidence require an expert to have previously opined on a specific issue to be "qualified" as an expert on that issue. *See, e.g.*, *BP Expl. & Prod., Inc. v. Callidus Techs, L.L.C.*, No. 02-2318, 2003 WL 26118097, at *1–2 (E.D. La. Apr. 8, 2003). Furthermore, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Carlson*, 822 F.3d at 199 (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

### 2. *Application - Qualifications*

Here the Court finds that both Schriro and Rossi are sufficiently qualified and rejects LeBlanc's challenge on this ground. The Court summarized their credentials above and will not repeat them here. Both have extensive experience in the areas about which they are testifying. LeBlanc's main criticism of Schriro's qualifications is that she lacks experience or knowledge in "the process of sentence calculation." (Doc. 115-1 at 7.) But the Court agrees with Plaintiffs that

Schriror's opinions focus not on the process of sentencing calculations but on "assess[ing] the way in which Secretary LeBlanc has addressed the DOC overdetention's problem from the perspective of a[ ] statewide-level administrator . . ." (Doc. 125 at 3.) In that regard, the Court finds that Schriro is sufficiently qualified.

Defendant's criticism of Rossi's qualifications is that she is only familiar with Illinois' sentencing calculation procedures and knows nothing about Louisiana's. (Doc. 115-1 at 9–10.) Plaintiffs counter that her "report describes the operation of . . . DOC's sentencing calculation function in detail as it relates to the sequence of gathering paperwork and the delay in performing a sentencing calculation to check for things like warrants and detainers . . . " (Doc. 125 at 8 (citing Doc. 104-14 at 5–6).) Since the core issue is what is required by the U.S. Constitution (and not whether Louisiana's system complies with Louisiana law), her knowledge of how the system works in Illinois is relevant. (*Id.* at 8–9.)

A review of Rossi's reports shows that she is familiar with Louisiana's procedures based on her review of documents and deposition testimony, which is summarized in her report (Doc. 104-14 at 6–7.) While Defendant extracted concessions from the witness during her deposition regarding her knowledge of Louisiana's system (*see, e.g.*, Doc. 115-1 at 10), these go to the weight to be given her opinions, not their admissibility. *See, e.g.*, *Carlson*, 822 F.3d at 199.

### D.  Legal Conclusions

#### 1.  *Standard – Legal Conclusions*

Federal Rule of Evidence 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." However, the Fifth Circuit has "repeatedly held that this rule does not allow an expert to render conclusions of law." *Snape-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996); *see also Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

While the rule is clear, applying it is not always easy. "The task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one." *Owen*, 698 F.2d at 240. In *Owen*, the Fifth Circuit explained:

> The example given in the Advisory Committee Notes to Rule 704 is helpful. The question "Did T have capacity to make a will?" should be excluded. The question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" is permissible. The first question is phrased in such broad terms that it could as readily elicit a legal as well as a fact based response. A direct response, whether it be negative or affirmative, would supply the jury with no information other than the expert's view of how its verdict should read. Moreover, allowing an expert to give his opinion on legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."

*Id. See also Jones v. Blue Cross Blue Shield of Louisiana*, No. 16--340, 2018 WL 585543, at *7 (M.D. La. Jan. 29, 2018) (deGravelles, J.).

### 2. *Application – Legal Conclusions*

LeBlanc argues that both experts offer legal conclusions since "whether an individual has been overdetained . . . is a legal conclusion . . . upon which an expert cannon opine." (Doc. 115-1 at 3.) According to LeBlanc, Schriro opines that Humphrey was overdetained and that the DOC has for years "over-detained thousands of people in its custody" which, again, are prohibited legal conclusions. (*Id*. at 5.) LeBlanc points the Court to a case where Schriro's testimony was excluded for this reason. (*Id*. at 6 (citing *Dean*, 2021 WL 4066336).)

Plaintiffs maintain that Schriro's reference to "thousands" of persons being overdetained by Louisiana is not an opinion but background information provided for context and that "[n]owhere in her report does [she] delve into what it means to be 'overdetained' . . . and nowhere does she purport to calculate the number of people of who have been overdetained." (Doc. 125 at 2.)

Plaintiffs argue that Rossi is not offering legal opinions but merely describing the "legal backdrop" under which sentencing calculations function and how they should operate "in light of what are understood to be those legal requirements. . . ." (*Id*. at 7.) Plaintiffs state that Rossi "does not seek to define to the jury what constitutes overdetention . . ." but rather to "explain how operating a sentencing calculation function in one manner versus another can inevitably result in detention without court authority." (*Id*. at 7–8.)

The Court agrees with Defendants that experts may not render legal conclusions. *Snape-Drape*, 98 F.3d at 198. Based on the explanation given by Plaintiffs, it appears that Schriro and Rossi were not giving legal opinions but regardless, in its evaluation of the class certification issues, the Court will not use any legal opinion given by either of the two experts.

### E.  Sufficiency of Foundation

Defendant's attack on the foundation of the experts' opinions focuses mainly on the experts' alleged legal conclusions made regarding the word "overdetention" (Doc. 115 at 2; Doc. 115-1 at 7–8) and Rossi's lack of familiarity with Louisiana law and sentencing calculations (Doc. 115-1 at 9–10). The Court has ruled above on the issue of legal conclusions. As to the sufficiency of the information relied on by Rossi, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility . . ." *14.38 Acres*, 80 F.3d at 1077 (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). Defendant has pointed to certain weaknesses in Rossi's report, but the Court finds these go the weight rather than the admissibility of the evidence.

In her report she says that she reviewed the various 30(b)(6) depositions of the DOC in this case (along with their with exhibits) as well as the *SAC* with answers and exhibits. (Doc. 104-14

at 2–3; *see also* Doc. 115-4 at 48–52) The Court finds that she has provided a sufficient foundation

for the Court to consider her report and opinions in connection with Defendant's *Motion*.

### F.  Data Not Included in Rossi's Report

Defendant argues that Rossi's report and opinions should be stricken because it became

apparent at her deposition that she had reviewed certain documents in addition to those listed in

her report. (Doc. 115-1 at 10–11 (citing Doc. 115-4 at 48–52).) Therefore, argues LeBlanc, the

report should be stricken for not complying with Fed. R. Civ. P 26(a)(B)(2)(iii). (*Id.* at 11.)

Plaintiffs respond that the materials upon which she relied that were not referenced in her

report were provided to defense counsel "well in advance of Ms. Rossi's deposition" and,

furthermore, Defendant claims no prejudice from this late production. (Doc. 125 at 9–10.)

Defendant replies that Plaintiffs are playing "fast and loose" and that he was prejudiced. (Doc. 140

at 5.)

Not every violation of Rule 26 results in an exclusion of the expert's report since some

violations are harmless. Rule 37(c)(1) provides that "[i]f a party fails to provide information . . .

as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply

evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified *or is*

*harmless*." (emphasis added). The Fifth Circuit has explained that the "basic purpose of [Rule 26

is to] prevent [] prejudice and surprise." *Joe Hand Promotions, Inc. v. Chios, Inc.*, 544 F. App'x

444, 446 (5th Cir. 2013) (quoting *Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85 (5th Cir.

1994)).

> In evaluating whether a violation of rule 26 is harmless, and thus
> whether the district court was within its discretion in allowing the
> evidence to be used at trial, we look to four factors: (1) the
> importance of the evidence; (2) the prejudice to the opposing party
> of including the evidence; (3) the possibility of curing such

> prejudice by granting a continuance; and (4) the explanation for the
> party's failure to disclose.

*Id*. at 447 (quoting *Tex. A & M Research Found. v. Magna Transp., Inc*., 338 F.3d 394, 402 (5th Cir. 2003). *See also Hebert v. Prime Ins. Co*., 459 F. Supp. 3d 766, 772 (W.D. La. 2020); *BASF Corp. v. Man Diesel & Turbo N. Am., Inc.,* No. 13-42, 2016 WL 590465, at *2 (M.D. La. Feb. 11, 2016) (deGravelles, J.).  "The burden is on the party facing sanctions to prove that its failure to comply with Rule 26(a) was substantially justified or harmless. The Court's decision on this issue is subject to an abuse of discretion standard." *Mealey v. Gautreaux*, No. 16-716, 2020 WL 3483562, at *2 (M.D. La. June 26, 2020) (deGravelles, J.) (cleaned up).

Neither side identifies in briefing what documents are at issue, *i.e.*, the documents which were not mentioned in Rossi's report but which were provided after the report. The pages of Rossi's deposition to which Defendant points the Court likewise shed no light on this. (Doc. 115-1 n.41 (citing Doc. 115-4 at 48–52).) Therefore, it is impossible for the Court to gauge the importance of the documents.

While Defendant claims prejudice (Doc. 140 at 5), he doesn't explain how he was prejudiced. Defendant doesn't dispute Plaintiffs' statement that the materials not listed in Rossi's report were provided to defense counsel "well in advance of Ms. Rossi's deposition." (Doc. 125 at 9.) It is clear from the deposition that Defendant was aware of the documents when she was deposed and his counsel had an opportunity to question her about them and did so. (Doc. 115-4 at 48–52.) The Court finds that Defendant has suffered no prejudice.

If, indeed, Defendant was prejudiced, that prejudice could be cured by allowing Defendant to re-depose Rossi as to those documents. But no prejudice has been shown nor has any request of that kind been made.

The final factor, the reason for the Rule 26 failure, favors Defendant since Plaintiffs have offered no explanation for that failure except to admit that Rossi's report, "which summarizes the materials she relied on, should have contained more detail." (Doc. 125 at 9.)

On balance, the Court finds that there are insufficient grounds strike Rossi's report. The Fifth Circuit has counselled that the "basic purpose of [Rule 26 is to] prevent [ ] prejudice and surprise." *Joe Hands Promotions, Inc.*, 544 F. App'x at 446. Given that the documents in question were supplied well in advance of Rossi's deposition and Defendant questioned her about them, the Court finds there was neither prejudice nor surprise, and, thus, Defendant's *Motion* on this ground is denied. *Anderson v. Allstate Ins. Co.*, No. 17-597, 2021 WL 292440, at *16 (M.D. La. Jan. 28, 2021) (deGravelles, J.) (rejecting Rule 26 challenge because there was neither prejudice nor surprise); *Nkansah v. Martinez*, No. 15-646, 2017 WL 2812733, at *8 (M.D. La. June 28, 2017) (deGravelles, J.) ("While the report is bare bones, to say the least, especially when viewed together with her deposition and supplemental affidavit, the opinions in the report can be ascertained."); *Am. Gen. Life Ins. Co. v. Russell*, No. 16-851, 2019 WL 4411819, at *5 (M.D. La. Sept. 16, 2019) (deGravelles, J.) ("When the report is combined with the deposition, it is clear that sufficient information has been provided regarding Bacon's opinions, data relied upon and reasons supporting it.").

## V.    CONCLUSION

For the foregoing reasons, LeBlanc's *Motion to Exclude and/or Strike (1) Amended Report of Dora Schriro and (2) Report of Rita Rossi* (Doc. 115) is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>May 25, 2023</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**