## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**BRIAN HUMPHREY,**                      **CIVIL ACTION**
**JOEL GIROIR AND**
**BRYANT WHITE**


**VERSUS**                               **NO. 20-233-JWD-SDJ[1]**


**SECRETARY JAMES**                      **CONSOLIDATED WITH**
**LEBLANC, IN HIS**                      **NO. 21-108-JWD-SDJ**
**INDIVIDUAL CAPACITY[2]**

---

### ORDER RESOLVING DISCOVERY-RELATED MOTIONS

---

Before the Court are several discovery-related Motions filed by the parties to this consolidation: Defendant, James LeBlanc, Secretary of the Louisiana Department of Public Safety and Corrections (LeBlanc or LDPSC);[3] and Plaintiffs, Brian Humphrey, Joel Giroir, and Bryant White. (No. 20-233, R. Docs. 149, 179, 188); (No. 21-108, R. Doc. 93).

LDPSC has filed both a Motion for Protective Order (R. Doc. 149)[4] and a Motion to Quash (R. Doc. 188). And in both cases, Plaintiffs have filed Motions for Leave to Serve Additional

---

[1] This Order applies to both cases in this consolidation: *Humphrey v. LeBlanc*, No. 20-cv-233-JWD-SDJ (M.D. La. filed April 14, 2020), and *Giroir v. LeBlanc, et al.*, No. 21-cv-108-JWD-SDJ (M.D. La. filed Feb. 19, 2021). On May 3, 2021, the two cases were consolidated for "purposes of discovery." (No. 21-108, R. Doc. 23 at 1).

[2] In *Humphrey*, three named Plaintiffs — Brian Humphrey, Joel Giroir, and Bryant White — sue only James LeBlanc, Secretary of the Louisiana Department of Public Safety & Corrections, in his individual capacity and for monetary relief. (R. Doc. 43 at 23). In *Giroir*, the sole Plaintiff, Joel Giroir, seeks declaratory and injunctive relief from two named Defendants — the Louisiana Department of Public Safety & Corrections and its Secretary, James LeBlanc, who is sued in his official capacity. (No. 21-108, R. Doc. 46 at 13).

[3] While both LeBlanc and LDPSC are Defendants in *Giroir*, for purposes of this Order, the Court simply refers to the defense as LDPSC.

[4] Where a case number is not included in the record citation — e.g., (R. Doc. [ECF No.]) — the Court is citing to the record in *Humphrey*, No. 20-cv-233-JWD-SDJ.

Requests for Admission. (No. 20-233, R. Doc. 179); (No. 21-108, R. Doc. 93). As the Court explains below, the LDPSC's Motion for Protective Order (R. Doc. 149) is largely denied. Merits-based discovery will proceed immediately. (R. Doc. 149). Plaintiffs' Motions for Leave are granted, and LDPSC will respond to Plaintiffs' additional Requests for Admission. (No. 20-233, R. Doc. 179); (No. 21-108, R. Doc. 93). Finally, LDSPC's Motion to Quash (R. Doc. 188) is denied, and the scope of discovery includes the following non-confidential items: inspecting the operations of LDPSC's Preclass facilities and any documents provided to the Civil Rights Division of the United States Department of Justice (DOJ) during its investigation into LDPSC's history of overdetention. *See* DOJ Press Release No. 20-1309 (Dec. 3, 2020).[5]

## I.    BACKGROUND

In both consolidated cases, Plaintiffs allege that LDPSC has a longstanding practice of overdetaining individuals in its custody for weeks or months, even when those individuals are entitled to immediate release upon sentencing. (No. 20-233, R. Doc. 43 at 1, 8); (No. 21-108, R. Doc. 46 at 4-5, 8-9). They allege that LDPSC's deliberate indifference to this overdetention violates their rights under the Fourteenth Amendment to the United States Constitution, among other things. (No. 20-233, R. Doc. 43 at 19-21); (No. 21-108, R. Doc. 46 at 16). Both cases seek to proceed as a class action on behalf of individuals in LDPSC custody who are "entitled to release at the time of their sentencing, but who nevertheless remain in custody . . . for more than 48 hours past their sentencing dates." (No. 21-208, R. Doc. 46 at 13).

---

[5] On December 3, 2020, the DOJ issued a press release announcing that it had "opened a statewide [CRIPA] investigation into Louisiana's prisoner release practices" that would "examine the [LDPSC's] policies and practices for ensuring the timely release of state prisoners . . . ." DOJ Press Release No. 20-1309. (Available at: https://www.justice.gov/opa/pr/justice-department-announces-civil-investigation-louisianas-prisoner-release-practices).

In *Humphrey*, three named Plaintiffs — Brian Humphrey, Joel Giroir, and Bryant White — sue only James LeBlanc, Secretary of the Louisiana Department of Public Safety & Corrections, in his individual capacity for monetary relief. (R. Doc. 43 at 23). In *Giroir*, Plaintiff Joel Giroir seeks declaratory and injunctive relief from two named Defendants—the Louisiana Department of Public Safety & Corrections and its Secretary, James LeBlanc, who is sued in his official capacity. (No. 21-108, R. Doc. 46 at 13). Eventually, the two cases were consolidated for "purposes of discovery." (No. 21-108, R. Doc. 23 at 1).

The original Scheduling Order (R. Doc. 23) only provided deadlines for discovery, experts, and motion practice related to class certification. In effect, the Court bifurcated discovery, although it did not explicitly order that merits-based discovery could not proceed. After several extensions (R. Docs. 35, 51, 67, 75), the deadline for completing discovery related to class certification expired on January 21, 2022 (R. Doc. 78). Since then, the parties have filed briefs on whether the cases should proceed as class actions (No. 20-233, R. Docs. 104, 118, 123, 158, 164, 166, 176, 177, 182, 196, 197), (No. 21-108, R. Docs. 25, 27, 30, 43, 44, 48, 49, 50, 52, 80, 81, 82, 91, 96, 102, 103); and following a months-long stay (No. 20-233, R. Docs. 173, 186), (No. 21-108, R. Docs. 87, 100), a hearing on class certification is set for September 27, 2023 (No. 20-233, R. Doc. 186), (No. 21-108, R. Doc. 100).

As it currently stands, this litigation is 3 years old. The issue of class certification has not been decided. And, as the parties made clear during the June 27, 2023 Status Conference, discovery is dead in the water. (R. Doc. 194). This is because LDPSC refuses to engage in any merits-based discovery until the pending Motions to Certify Class are resolved. It is therefore not surprising that, after receiving discovery requests from Plaintiffs, LDPSC filed a Motion for Protective Order asking the Court to stay all discovery pending a ruling on the issue of class certification. (R. Doc.

149). This theme — a refusal to engage in merits-based discovery — runs through every pending discovery Motion and has caused significant delays.

      With class certification fully briefed, LDPSC suggests that we all sit tight, making zero progress on merits-based discovery, until we have a ruling on class certification. The Court disagrees. It has been three years since *Humphrey* was filed and one year since the Motions for Class Certification were filed. Too much time has already been wasted.

## II.    DISCUSSION

      A Status Conference was held on June 27, 2023, to discuss the requested stay of discovery (R. Doc. 149), including the parties' more specific discovery issues presented in Plaintiffs' Motions for Leave to Serve Additional Requests for Admission (No. 20-233, R. Doc. 179), (No. 21-108, R. Doc. 93), and LDPSC's Motion to Quash (R. Doc. 188). In that Conference, the parties explained that, aside from the stay, there are three "buckets of discovery" at issue in the pending Motions: (1) Plaintiffs' discovery related to the DOJ's Report, including the additional Requests for Admission and the May 15, 2023 Requests for Production; (2) Plaintiffs' request to inspect four Preclass facilities; and (3) Plaintiffs' December 2022 requests for 3 Pull Documents (CAJUN Data).

      As explained below, Defendant's Motion for Protective Order (R. Doc. 149) will be denied. Merits-based discovery will proceed immediately. The CAJUN Data sought in Plaintiffs' December 3, 2022 discovery requests must be produced. The Court will also grant Plaintiffs leave to serve 77 additional Requests for Admission related to the DOJ Investigation and Report on overdetention. (No. 20-233, R. Doc. 179); (No. 21-108, R. Doc. 93). The Motion to Quash (R. Doc. 188) is denied, and Plaintiffs will inspect the LDPSC Preclass facilities at issue.

### A.    Stay of Merits-Based Discovery

LDPSC's Motion for Protective Order (R. Doc. 149) is **DENIED** to the extent it seeks a stay of merits-based discovery pending a decision on class certification. Merits-based discovery will begin immediately. After three years, the circumstances that originally warranted limiting discovery to class certification are no longer present. *See Rolan v. E.I. Du Pont De Nemours & Co.*, 2019 WL 8111972, at *2 (N.D. Ind. Nov. 5, 2019) (bifurcation of discovery in potential class action issued 3 years ago no longer warranted and refusing to stay discovery on the merits; "Whatever gain in expediency bifurcation was intended to produce has since been lost" and given "the length of time this case has already been pending, the Court sees no practical efficiency in [staying] [merits] discovery."). And the Court finds LDPSC's argument that starting merits-based discovery would be *premature*, *burdensome*, and *inefficient* to be wholly unavailing.

Beyond that, the class certification analysis will frequently "overlap with the merits of the plaintiff's underlying claim," as it "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011); *see also* Ann. Manual Complex Lit. § 21.14 (4th ed.) ("A preliminary inquiry into the merits may be required to decide whether the claims and defenses can be presented and resolved on a class-wide basis."). That is certainly the case here.[6] Therefore, the prejudice to Plaintiffs greatly outweighs any concerns suggested by LDPSC if we were to grant its stay and continue this unreasonable delay.

Also compelling, Plaintiffs will pursue their actions, even in the absence of class certification. "Accordingly, even if the claim is not certified as a class action, merits-based

---

[6] Indeed, when asked during the Status Conference what discovery may be obsolete if class certification were denied, LDPSC could only point to Pull Documents. And even then, some amount of Pull Documents would still be relevant to the merits of each Plaintiff's claims. But more would be relevant if this were a class action.

discovery will be necessary and undertaking it now will not be a waste of time and effort." *Rolan v. E.I. Du Pont De Nemours & Co.*, 2019 WL 8111972, at *3; *see also* Manual For Complex Litigation (Fourth), § 21.14; *see also* McLaughlin on Class Actions § 3:10 (8th ed. 2011) ("Courts are more likely to decline requests to stay pure merits discovery when the nature of the putative representative's claims suggests that it would continue to prosecute individual claims if certification is denied."). For this additional reason, the Court must deny LDPSC's request to stay discovery on the merits. *See Piney Woods ER III, LLC v. Blue Cross & Blue Shield of Texas*, 2020 WL 13042506, at *2 (E.D. Tex. Oct. 2, 2020) (Delaying merits discovery is "particularly disfavored in actions that are large and likely to continue even if a class is not certified."); *Ahmed v. HSBC Bank USA, Nat. Assoc.*, 2018 WL 501413, at *3 (C.D. Cal. Jan. 5, 2018) (finding that discovery produced during the course of the case "will be relevant and useful" even absent class certification).

And finally, the hearing on Plaintiffs' Motion for Class Certification is currently set for September 27, 2023—just over one month from now. (R. Doc. 186). No irreparable harm will come to LDPSC if discovery begins. However, Plaintiffs will continue to suffer unfairly from any further delay.

In making this determination, the Court is mindful of the many discovery disputes that have already occurred. And because the issue of class certification "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," *Dukes*, 564 U.S. at 351, the parties are advised that this Court will not waste its time and resources "to resolve disputes over what is 'merits' versus 'class' discovery," *Piney Woods ER III, LLC*, 2020 WL 13042506, at *2; *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 258 F.R.D. 167, 174 (D.D.C. 2009) (Bifurcated discovery would not promote judicial economy. Instead, it would

result in "the continued need for supervision and the increased number of disputes, [which] would further delay the case proceedings. Such prevention of the expeditious resolution of the lawsuit would prejudice plaintiffs."). Therefore, discovery will proceed on the merits and in accordance with the sole limitation outlined below concerning Pull Documents from LDPSC's CAJUN Data System.

### B.    Requests for Production of Pull Documents

As for the Requests for Production at issue in the Motion for Protective Order, the Court cannot understand how Defendant could vehemently object to simply producing 3 Pull Documents already provided during the Settlement Conference—i.e., Pull Documents for the months of February, June, and July of 2022. (R. Doc. 149-3). The Court agrees with Plaintiffs that the documents are relevant to the merits, in addition to class certification. *See Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022) ("Supervisory [liability] . . . only arises when the officials act, or fail to act, with deliberate indifference . . . . This typically requires showing notice of a pattern of similar constitutional violations due to deficient policies, permitting the inference that Defendants deliberately chose policies causing violations of constitutional rights."); *Parker v. LeBlanc*, -- F.4th --, 2023 WL 4558517, at *4 (5th Cir. July 17, 2023) (A single Plaintiff had sufficiently stated a claim of supervisory liability for overdetention based on evidence that defendant had knowledge that others were overdetained—i.e., defendant "knew of a pattern of similar constitutional violations"— as the "standard for deliberate indifference requires only a pattern of similar constitutional violations by untrained employees, rather than an exact duplication.").

This Court's prior Order regarding the discoverability of Pull Documents appears to have been misconstrued by LDPSC. (R. Doc. 56 at 14). While the Court previously refused to compel

a response to a document request for Pull Documents, it did not do so because it found additional pull documents would never be relevant to the merits. Instead, that Order was largely based on the unlimited temporal scope of the request at issue, and the procedural posture of the litigation at that time, which was nearly two years ago. (R. Doc. 56 at 14).

Finally, relying on Rule 408 of the Federal Rules of Evidence, LDPSC contends the 3 Pull Documents (February, June, and July of 2022) are privileged or otherwise confidential because they were provided during a settlement conference. LDPSC does not provide any legal support for this assertion, and it is hard to imagine how this argument could be made in good faith.

"If Rule 408 created a privilege it would say so." *Hyde & Hyde, Inc. v. Mount Franklin Food, LLC*, 2012 WL 12862826, at *2 (W.D. Tex. Jan. 6, 2012). And to be clear, the Pull Documents at issue are factual in nature. And discoverable facts do not suddenly become privileged just because they are presented during settlement negotiations. Therefore, the Motion for Protective Order is **DENIED** as to the December 3, 2022 Requests for Production (R. Doc. 149-3), and LDPSC must **produce** the responsive documents within **3 days** of this Order.

When LDPSC responded to the December 3, 2022 document requests by erroneously claiming privilege, Plaintiffs issued revised discovery requests on December 7, 2022. (R. Doc. 149-4). In their Opposition, Plaintiffs explain these revised discovery requests were just another way of describing the same 3 Pull Documents previously requested on December 3, 2022 (R. Doc. 152 at 2). They simply omitted any reference to the Settlement Conference, hoping LDPSC would no longer claim the Pull Documents for February, June, and July of 2022 were privileged.

As written, the December 7, 2022 discovery requests are not limited to the 3 Pull Documents used during the Settlement Conference. (R. Doc. 149-4). Nonetheless, the Court will construe them as such, consistent with Plaintiffs' representations. (R. Doc. 152 at 2). And so, given

this limitation, the December 7, 2022 discovery requests (R. Doc. 149-4) are duplicative of Plaintiffs' December 3, 2022 discovery (R. Doc. 149-3). Therefore, the Motion for Protective Order (R. Doc. 149) is **GRANTED** as to the December 7, 2022 discovery requests (R. Doc. 149-4).

As a final matter, even if the December 7, 2022 discovery requests were not duplicative, the Court would still not compel LDPSC to respond because the requests, as written, are overly broad. (R. Doc. 149-4). For example, they are not temporally limited in any way. This Order should not be construed as preventing Plaintiffs from again requesting this type of information in a more limited manner. The Court simply finds that these requests appear overbroad. Indeed, to avoid discovery issues related to Pull Documents going forward, the Court reiterates that Pull Documents will be relevant, regardless of class certification. However, the amount of Pull Documents falling within the scope of discovery may decrease if the class is not certified.

### C.    Requests for Admission

The Due Process Clause of the Fourteenth Amendment mandates that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, §1. The Supreme Court has recognized that incarceration "for any purpose constitutes a significant deprivation of liberty" — a fundamental right "that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). These due process protections include the right to be timely released from incarceration. *See Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011).

On December 3, 2020,[7] the Civil Rights Division of the United States Department of Justice announced it had opened a CRIPA[8] investigation "focused on whether [LDPSC] detains people in its custody beyond their release dates." *Investigation of the Louisiana Department of Public Safety & Corrections* (DOJ Report) at 3, Civil Rights Div., U.S. Dep't of Justice (issued Jan. 25, 2023).[9] Following its investigation, the DOJ issued a Report on January 25, 2023, that found:

> [LDPSC] violates the constitutional rights of people in its custody by detaining them for weeks and often months past their release dates. . . . [LDPSC's] pattern and practice of depriving those in its custody of their Fourteenth Amendment right to timely release is the direct result of its numerous failures to adopt functional policies and procedures and adequately train its employees . . . .

---

[7] On December 3, 2020, the DOJ issued a press release announcing that it had "opened a statewide [CRIPA] investigation into Louisiana's prisoner release practices" that would "examine the [LDPSC's] policies and practices for ensuring the timely release of state prisoners . . . ." *See* DOJ Press Release No. 20-1309. (Available at: https://www.justice.gov/opa/pr/justice-department-announces-civil-investigation-louisianas-prisoner-release-practices).

[8] The Civil Rights Division enforces the Civil Rights of Institutionalized Persons Act (CRIPA), 42 U.S.C. § 1997 *et seq*., which allows it to investigate and remedy violations of the constitutional rights of incarcerated individuals when those violations are "pursuant to a pattern or practice of resistance to the full enjoyment of such rights." 42 U.S.C. §§ 1997(1)(B)(ii), 1997a(a).

[9] During its investigation, DOJ also found that "LDOC routinely detains people more than 30 days past their release date." And while there is no bright line rule, there is also no question that "overdetention by thirty days is a per se deprivation of due process." *Buchicchio v. LeBlanc*, 2023 WL 2027809, at *7 (M.D. La. Feb. 15, 2023); *Crittindon v. LeBlanc*, 37 F.4th 177, 188 (5th Cir. 2022) ("While courts have declined to define the amount of delay that is reasonable, it is without question that holding without legal notice a prisoner for a month beyond the expiration of his sentence constitutes a denial of due process."); *Owens v. Stalder*, 638 F. App'x 277, 282 (5th Cir. Jan. 6, 2016) ("The Fourteenth Amendment Due Process Clause is violated where a prisoner remains incarcerated after the legal authority to hold him has expired."). But DOJ also found that "LDOC [] routinely detains people less than 30 days past their release date." (DOJ Report at 7-8). Whether an overdetention under 30 days amounts to a constitutional violation requires consideration of (1) the duration of the overdetention and (2) whether it was caused by reasonable administrative procedures. *Berry v. Baca*, 379 F.3d 764, 771 (9th Cir. 2004); *Traweek v. Gusman*, 414 F. Supp. 3d 847, 868 (E.D. La. 2019) ("That an inmate has a due process right to 'timely' release from custody after a judicial determination that he is entitled to release begs the question: how much time is reasonable and how much tolerance is there for administrative delay attendant to processing an inmate's release?"). This second factor is most relevant here.

(DOJ Report at 1, 8). The DOJ Report discusses in detail the process LDPSC's Preclass Department[10] uses to calculate an individual's release date, focusing on the unreasonable delays caused by LDPSC's antiquated procedures that also lack uniformity. (DOJ Report at 5) ("There is no uniform procedure governing the delivery of 'Preclass Packets' . . . . In some jurisdictions, the Sheriff's office physically drives the documents to the regional Preclass office; in others, the Sheriff sends documents by mail or fax.").

Following their review of the DOJ Report, Plaintiffs drafted 77 Requests for Admission— more than the 25 allowed by Local Rule 36(b)—each of which concerns the DOJ Report's factual and legal conclusions. *See* LR 36(b) (leave of court and good cause required to exceed 25 requests for admission).[11] On April 12, 2023, Plaintiffs filed contested Motions for Leave to Serve Additional Requests for Admission (No. 20-233, R. Docs. 179, 183); (No. 21-108, R. Docs. 93, 97).

Local Rule 36(b) limits the number of requests for admission to twenty-five. Any party wishing to exceed that limit must obtain leave of court, establishing good cause for the additional requests. *See* Fed. R. Civ. P. 26(b)(2) ("By order, the court may alter the limits in these rules on

---

[10] "Preclass" is LDOC's Preclassification Department. Preclass "is responsible for collecting, maintaining, and managing sentencing information and related records for individuals in state custody." (DOJ Report at 4). Preclass is also "responsible for calculating release dates" for those in state custody and for timely processing "their release from incarceration. . . ." (DOJ Report at 4-5).

[11] At the outset of this litigation, when Mr. Humphrey was the sole Plaintiff in the lead case, he served 25 "paired converse" RFAs — i.e., 50 RFAs in total — on Secretary LeBlanc. (R. Doc. 179-1 at 3). Since then, Mr. Humphrey has amended his Complaint (R. Doc. 43) to add 2 new Plaintiffs — Joel Giroir and Bryant White — and *Giroir* was later consolidated with *Humphrey* for discovery (No. 21-108, R. Doc. 23). To date, Plaintiffs have not served any additional RFAs on Secretary LeBlanc.

When the *Humphrey* and *Giroir* were consolidated for discovery, Judge deGravelles' Order indicated that the "maximum numbers of discovery items permitted by the Federal Rules of Civil Procedure and Local Rules . . . shall apply to each case separately . . . ." (No. 21-1-8, R. Doc. 23). The Court need not determine, however, how many RFAs may still be issued without exceeding the limit set by Local Rule 36, or whether that Order would even apply to this next phase of discovery on the merits, as it finds good cause to allow all of the RFAs at issue, even if all 77 were in excess of the limit.

the number of depositions and interrogatories" or requests for admission.); LR 36(b) ("file a written motion setting forth the proposed additional requests for admission and the reasons establishing good cause"). In considering good cause, courts look to the factors listed in Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure.[12] *See Hall v. Louisiana*, 2014 WL 12812112, at *2 (M.D. La. Mar. 18, 2014). But "[f]requently, the issue becomes whether the requesting party has adequately shown that the benefits of additional [requests for admission] outweigh the burden to the opposing party." *GMFS, LLC v. Cenlar FSB*, 2020 WL 9602027, at *2 (M.D. La. July 1, 2020).

According to Plaintiffs, the additional RFAs are "each . . . tied to, and refer[] to, specific factual findings in the DOJ Report" — the intention being to narrow the issues for trial and streamline discovery going forward. (R. Doc. 179-1 at 4, 7). Plaintiffs explain their intended goal can be accomplished through the RFAs because, "[i]n both scope and subject matter, the DOJ Report is notably congruent with *Humphrey* and *Gioir*." (R. Doc. 179-1 at 6). The Court agrees.

The DOJ Report concerns the same LDPSC policies, practices, and personnel, and it involves the same subject matter as both *Humphrey* and *Giroir*. It is most certainly relevant. Considering this relevance, and the incredible length of time case has been pending — 3 years —

---

[12] Rule 26(b)(2)(C) instructs that the scope and extent of discovery should be determined by considering whether:

    (i)      the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

    (ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

    (iii)   the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

and the purpose of the RFAs at issue — to narrow the issues and streamline discovery[13] — the Court finds good cause to allow the additional RFAs.

During the hearing, counsel for LDPSC argued that LDPSC would object to the additional RFAs, regardless of whether a class is certified. This is because LDPSC believes that DOJ's CRIPA investigation and subsequent Report are confidential, and therefore the DOJ Report would not even be admissible at trial. This argument, however, cannot hold water.

To the extent LDPSC claims the DOJ Report, or all information and documents LDPSC provided to DOJ during its investigation, are somehow confidential, this claim is wholly without merit. Nothing in the relevant statute cloaks the DOJ's Report or the documents it obtained from LDPSC during its CRIPA investigation in secrecy. *See* 42 U.S.C. § 1997a-1(c) (nothing limits "institution" from otherwise disseminating or using its own documents, simply because those same documents were subpoenaed by DOJ as part of a CRIPA investigation); 42 U.S.C. § 1997(1) (defining "institution"). And indeed, the DOJ Report concludes with the following language:

> Please also note that this Findings Report is a public document. It will be posted on the Civil Rights Division's website.

(DOJ Report at 27). Given this clear notation, along with the relevant statute, the Court does not see how this argument could reasonably be advanced by LDPSC in good faith. *See also Buchicchio v. LeBlanc*, -- F. Supp. 3d --, 2023 WL 2027809, at *1 n.1 (M.D. La. Feb. 15, 2023) (taking judicial notice of the same DOJ Report issued on January 25, 2023, and noting the DOJ Report "presents the DOJ's findings regarding the pervasive practice of overdetention at DPSC . . . is readily available on the DOJ's website, is generally known within the territorial jurisdiction of this Court,

---

[13] However, the Court's Order should not be read to preclude additional discovery on any issue or fact admitted to in one of the RFAs at issue. Whether additional discovery related to an admitted issue or fact is reasonable would depend on the circumstances. The Court is confident that the parties will work together to resolve any disputes, should they arise.

is not subject to reasonable dispute, and bears directly on the issues under review in this action."); *see also Gates v. Deukmejian*, 1988 WL 92568, at *2 (E.D. Cal. July 27, 1988) ("Defendants essentially argue that documents voluntarily given to the DOJ should be protected from disclosure." Defendant's position is "unpersuasive in view of the complete absence of any provisions regarding confidentiality within CRIPA.").

Finally, LDPSC does not seem to contest the relevancy of the DOJ Report. Instead, it argues that the RFAs at issue are "duplicative and cumulative" because Plaintiffs "are in possession of the DOJ Report" which they are "already citing to and relying on . . . ." (R. Doc. 183 at 3). Therefore, LDPSC suggests, Plaintiffs "have already obtained the information" sought in theses RFAs "from another source," seemingly referring to the DOJ Report.[14] (R. Doc. 183 at 3). To the Court, it seems LDPSC believes the additional RFAs are unnecessary because Plaintiffs can simply point to the factual findings and legal conclusions found in the DOJ Report. If the DOJ Report is itself sufficient, this would suggest LDPSC does not contest its contents or believe the Report is confidential or otherwise inadmissible.

If that is the case, and LDPSC believes the RFAs are unnecessary because it does not contest the DOJ's Report's findings, the Court **ORDERS** LDPSC to **inform** Plaintiffs **immediately** of that fact. The parties may then either stipulate to the accuracy of the DOJ Report, or Plaintiffs may narrow their 77 RFAs down to only what is reasonably necessary for LDPSC to admit to the contents of the DOJ Report. This would certainly avoid any burden alleged by LDPSC in having to answer 77 RFAs. But if LDPSC is not willing to do so,

---

[14] This position is inconsistent with LDPSC's argument advanced during the Status Conference, that the DOJ Report is somehow inadmissible and confidential.

**IT IS ORDERED** that Plaintiffs' Motions for Leave (No. 20-233, R. Doc. 179), (No. 21-108, R. Doc. 93) are **GRANTED,** and they may **immediately** serve the additional 77 Requests for Admission at issue, which must be answered by LDPSC.

### D.    Inspections of Preclass Facilities

Plaintiffs served LeBlanc with Rule 34 requests on May 18, 2023. (R. Doc. 188-2). In addition to 6 Requests for Production of Documents,[15] Plaintiffs seventh request asked LDPSC to:

> **Request for Production No. 7:**
> Permit entry by counsel for Plaintiff (and employees or contractors of Plaintiff's counsel) to inspect the following locations, including by measurement, photograph, and video recording: (1) DPS&C Headquarters; (2) Prison Enterprises' Headquarters; (3) Raymond Laborde Correctional Center; and (4) David Wade Correctional Center.

(R. Doc. 188-2 at 2). The same inspections were simultaneously requested through Rule 45 Subpoenas addressed to each of the four facilities and served on LDPSC. (R. Doc. 188-3). The Rule 45 Subpoenas indicated the inspections would take place between June 12-14, 2023. Otherwise, like Request for Production No. 7, the subpoenas simply asked to inspect the four facilities that make up LDPSC's Preclassification Department.

Within days of being served with Plaintiffs' requested inspections under Rule 34 and Rule 45, LDPSC objected. LDPSC procedurally challenged Plaintiffs' use of Rule 45 to obtain the inspections at issue. It insisted that the inspections had to be requested under Rule 34, which requires specificity and provides 30 days for response. (R. Doc. 188-4 at 1). Additionally, LDPSC complained that "the physical layout of the pre-class department is not relevant" because "[t]his is

---

[15] RFP Nos. 1-6 are not part of the Motion to Quash. (R. Doc. 188). LDPSC simply argues that all discovery should be stayed until resolution of class certification without specifically addressing these document requests. (R. Doc. 188-2). But the documents given to DOJ during its CRIPA investigation are not confidential and must be produced, as explained later.

not a conditions of confinement case." (R. Doc. 188-4 at 1). When the parties could not agree, LDPSC filed a Motion to Quash. (R. Doc. 188).

The DOJ Report explains that LDPSC's Preclassification Department (Preclass) has regional facilities throughout the State and "is responsible for collecting, maintaining, and managing sentencing information and related records" and "for calculating release dates . . . for individuals in state custody and for the timely processing of their release from incarceration." (DOJ Report at 4-5). But Preclass cannot "carry out its responsibilities" until it "collects a set of records from the [relevant] Clerk of Court and [] parish jail" for each individual in custody. (DOJ Report at 5).

In a scathing review, DOJ describes how these crucial documents, which make up the 'Preclass Packet,'[16] are still "not submitted [to] [Preclass] electronically" in the year 2023. Instead, they are physically exchanged between the Clerk of Court and the parish jail, compiled into the Preclass Packet, and eventually delivered to Preclass "by either physical mail, fax, or hand delivery depending on the parish." (DOJ Report at 5). There is no "uniform state-wide process for transmitting" the Preclass Packets. (DOJ Report at 5) ("In some jurisdictions, the Sheriff's office physically drives the documents to the regional Preclass office.").

"The DOJ Report's conclusions are damning and unequivocal." *Buchicchio v. LeBlanc*, -- F. Supp. 3d --, 2023 WL 2027809, at *5 (M.D. La. Feb. 15, 2023) (discussing the same DOJ Report, of which the Court took judicial notice). And critical here, the DOJ Report emphasizes that paperwork collection and management are a big part of the problem.

---

[16] To be sure, the Preclass Packet is "critical" as an individual's sentence and release date cannot be calculated without it. But because of the antiquated system currently in place, "it [takes] an average of 21 days" before LDPSC's Preclass even receives the Preclass Packet, which is often incomplete. (DOJ Report at 5).

The DOJ Report details the antiquated procedures and lack of uniformity in both physically compiling the documents that make up the Preclass Packet and manually processing the information it contains. Because there are not uniform policies or procedures among the various entities and regions — at least not ones that are consistently followed — for Plaintiffs to reference, the Court finds the requested inspections are not duplicative, as LDPSC suggests, and fall well within the scope of discovery.[17] *See United States v. Erie Cnty., NY*, 2010 WL 986505, at *2-3 (W.D.N.Y. Mar. 17, 2010) (permitting "consultants entry to the ECHC to examine the suicide and mental health protocols falls within an inspection of an 'operation' on property" under Rule 34(a) and will allow DOJ's consultants or experts to "gain an understanding of related practices and policies"; court would also permit "the Justice Department's consultants . . . to interview or question ECHC and other County employees as necessary . . . on the [relevant] processes and procedures," but DOJ would have to "notice the depositions of individuals or classifications of individuals that it wishes its lawyers to speak with during the inspection period" consistent with Rule 30.); *G.H. v. Tamayo*, 339 F.R.D. 206, 208 (N.D. Fla. 2021) (allowing plaintiffs to inspect up to 3 prison facilities; "The plaintiffs say that in the prior inspections, the Department did not allow the plaintiffs to observe the normal operation of the facilities, including the activities of juveniles. This order changes that. The plaintiffs must conduct the inspections in a manner that

---

[17] Plaintiffs elaborate, the inspections would provide information about the "problems with paperwork processing at [LDPSC] headquarters and facilities" and answer the following questions:

> Are the workstations organized? Is there a filing and storage system? Is the equipment and technology suitable and up-to-date? Are there tools and supplies . . . to assist with paperwork processing? Are there displays providing real-time updates on the status of paperwork? Are there boards informing employees about pending tasks, priorities, and deadlines? Are there clear signs . . . . to guide employees? Do the employees have sufficient space to work, meet and process paperwork?

(R. Doc. 191 at 2-3).

does not disrupt operations or pose a security risk, but the Department must allow the plaintiffs to observe the facilities' normal operation. This includes the activities of juveniles."); *Morales v. Turman*, 59 F.R.D. 157, 158-59 (E.D. Tex. 1972) (Granting motion to compel Rule 34 inspection that involved placing experts in prison facility for observational study; This request for discovery is perhaps extraordinary; yet this is an extraordinary case. . . . When important civil rights are in issue in complex litigation of widespread concern, a court must make every effort to enhance the fact-finding process available to counsel for both sides . . . guided by considerations of policy and of necessity, propriety and expediency in the particular case at hand.").

Second, the parties disagree over whether inspecting LDPSC's Preclass facilities should be requested under Rule 34 or subpoenaed Rule 45. Defendant LeBlanc is sued in his individual capacity in *Humphrey.* (No. 20-233, R. Doc. 43 at 3). But LeBlanc is named in his official capacity as Secretary of LDPSC in *Giroir*, and LDPSC is also a named Defendant in that litigation. (R. Doc. 46 at 3). And again, the two cases are consolidated for purposes of discovery. And so, as far as this discovery consolidation is concerned, LeBlanc is sued in both his individual and official capacities, and LDPSC is also a named Defendant.[18]

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, Plaintiffs' official capacity claims against LeBlanc are really claims against LDPSC. And since Rule 34(a)(2) permits the inspection of property "possessed or controlled" by a party, the Court agrees with LDPSC's position that inspections of its Preclass facilities should be requested under Rule 34. *See Frazier v. Graves*, 2021 WL 4502150, at *19, 22 (E.D. Ark. Sept.

---

[18] This is true regardless of whether discovery is technically issued in only one of the two litigations.

30, 2021) (discussing "inspection of DOC facilities" pursuant to Rule 34 request in an official capacity claim against secretary of DOC and other public officials).

Rule 34(b) requires particularity and a 30-day response time unless a shorter period is stipulated to by the parties or ordered by the Court. *See Luer v. Cnty. of St. Louis, MO*, 2018 WL 2734986, at *2 (E.D. Mo. June 7, 2018) ("Rule 34 explicitly states that the only exceptions to the thirty-day response time for an inspection request are by stipulation of the parties, or pursuant to an order of the court."); *XL Ins. Am., Inc. v. Associated Terminals, L.L.C.*, 2020 WL 12893773, at *2 (E.D. La. Sept. 25, 2020) ("Rule 34 provides that the request must describe with 'reasonable particularity' the property to be inspected as well as specify the time, place, and manner of the inspection.").

The inspection request sent by Plaintiffs does not meet the particularity requirement of Rule 34(b)(1)(A) and (B). (R. Doc. 188-2 at 2). Indeed, it simply asks to inspect entire facilities, two of which are prisons, even though Preclass may be just one department in a larger facility. And so, as explained below, Plaintiffs' Request for Production No. 7 must be revised to comply with Rule 34.

The Motion to Quash (R. Doc. 188)[19] is therefore **DENIED** to the extent LDPSC seeks an order limiting the scope of discovery to preclude the requested inspections of the Preclass Facilities named in Request for Production No. 7. To be clear, the inspections at issue are within the scope of discovery.

But because Request for Production No. 7 is procedurally defective, the Court **ORDERS** Plaintiffs to **revise** their request to comply with Rule 34(b)(1) (particularity requirement) and then

---

[19] The Court previously granted (R. Doc. 189) the Motion to Quash (R. Doc. 188) to the extent LDPSC sought an Order precluding Plaintiffs from conducting the inspections on the dates and times indicated in the Rule 45 subpoenas. This Order now resolves any remaining procedural issues and the substantive objections associated with the inspections at issue.

send a draft of their revised request to LDPSC. The parties must then **confer** on a **date** and **time** and any **other conditions** so that the inspections may proceed.

In their Opposition, Plaintiffs indicate that they offered to conduct the inspections during the weekend in an effort to comprise with LDPSC so that the inspections could go forward. While the Court appreciates Plaintiffs' willingness to compromise, the Court disagrees that the inspections can adequately accomplish their intended goals if conducted on a weekend, given the information available on Preclass and the lack of uniformity in its operations. The Court therefore **ORDERS** that the inspections be conducted on a **weekday**, during **business hours**, and when **Preclass employees** are **present**.

Finally, the inspections should take place as soon as possible. But in any event, the Court **ORDERS** that the inspections be conducted within **30 days** of the **draft** of the **revised** inspection request being **sent** to LDPSC, **unless** the parties **agree** otherwise.

### E.    Documents Provided to DOJ

Plaintiffs' May 18, 2023 discovery requests also included document requests that mostly relate to the DOJ Report. Specifically, Request for Production Nos. 1-4 ask LDPSC to produce all documents provided to DOJ and all communications with DOJ since January 1, 2020, that relate to overdetention or the timely release of prisoners, or any CRIPA investigation being conducted by DOJ. (R. Doc. 188-2). Request for Production No. 5 seemingly requests much of this same material, only it refers to the information used to create Pull Documents.[20]

---

[20] Finally, Request for Production No. 6 asks LDPSC to supplement any prior discovery responses. While it is unclear if LDPSC objects to this Request for Production, the Court advises Plaintiffs to review Rule 26(e)(1)(A) and now makes clear that discovery requests like this one are not favored. At the same time, all parties are reminded on their ongoing obligation to timely supplement any prior discovery responses if they learn "that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Moreover, Rule 37(c)(1) provides for the exclusion of information for any party who fails to comply with Rule 26(e)'s supplementation requirement.

LDPSC's Motion to Quash (R. Doc. 188) largely concerns the requested inspections of LDPSC's four Preclass facilities, without addressing Request for Production Nos. 1-4, or the discoverability of any documents provided to DOJ. However, during the Status Conference on June 27, 2023, the parties made clear that the discoverability of the documents that LDPSC provided to DOJ as part of its December 2020 – January 2023 CRIPA investigation were a major issue.

The Court had the opportunity to hear from both sides on this issue during the hearing. And so, to avoid additional discovery motions on this very issue—the discoverability of documents provided to DOJ as part of its CRIPA investigation into LDPSC's overdetention issues—the Court provides the following clarification.

Once again, the January 25, 2023 DOJ Report is in no way confidential. *See Gates v. Deukmejian*, 1988 WL 92568, at *2 (E.D. Cal. July 27, 1988) ("Defendants essentially argue that documents voluntarily given to the DOJ should be protected from disclosure." Defendant's position is "unpersuasive in view of the complete absence of any provisions regarding confidentiality within CRIPA.").

Likewise, any documents that LDPSC provided to DOJ as part of its CRIPA investigation[21] are relevant and within the scope of discovery. *See Flood v. Dominguez*, 2011 WL 578656, at *2 (N.D. Ind. Feb. 9, 2011) (granting plaintiff's motion to compel documents "relating to the Department of Justice's investigations into the Lake County Jail, including . . . documents relating

---

[21] To be clear, the investigation referred throughout this Order was announced by DOJ on December 3, 2020, in Press Release No. 20-1309. In that press release, DOJ announced that it had "opened a statewide [CRIPA] investigation into Louisiana's prisoner release practices" that would "examine the [LDPSC's] policies and practices for ensuring the timely release of state prisoners . . . ." DOJ Press Release No. 20-1309.
(Available at: https://www.justice.gov/opa/pr/justice-department-announces-civil-investigation-louisianas-prisoner-release-practices).

to the investigation documented in the DOJ's CRIPA letter of December 7, 2009," and "finding this discovery request is relevant in so far as it requests documents related to the conditions of the Holding Tanks of the Lake County Jail").

Beyond that, those documents did not magically become privileged or confidential simply because they were at one time provided to DOJ in connection with its CRIPA investigation. Nothing in the statute or the DOJ manual makes any of these documents confidential. And while Defendant has referenced 42 U.S.C. § 1997a-1 as support for its position that everything given to DOJ in connection with the investigation is confidential, the only thing the statute says about confidentiality is that DOJ should redact personally identifying information and only use the information it collects as authorized by statute. The statute in no way restricts the LDPSC's use or dissemination of its own documents. *See* 42 U.S.C. § 1997a-1(c).

To be clear, any documents that LDPSC provided to DOJ in connection with its CRIPA investigation are not confidential; instead, those documents are both relevant and discoverable. *Gates v. Deukmejian*, 1988 WL 92568, at *2 (E.D. Cal. July 27, 1988) ("Defendants essentially argue that documents voluntarily given to the DOJ should be protected from disclosure." Defendant's position is "unpersuasive in view of the complete absence of any provisions regarding confidentiality within CRIPA."); *Winton v. Bd. of Comm'rs of Tulsa Cnty., OK*, 188 F.R.D. 398, 402 (N.D. Okla. 1999) (aside from attorney work product—i.e., documents that "contain the mental impressions, conclusions, opinions, and legal theories of Defendants' attorneys"—the entirety of the documents provided to DOJ during its CRIPA Investigation were discoverable and produced); *In re Plastics Additives Antitrust Litigation*, 2004 WL 2743591, at *12 (E.D. Pa. Nov. 29, 2004) ("Plaintiffs also cite several cases in which defendants have been compelled to produce documents relating to government investigations. These cases . . . recognize that the production of

these documents will impose only a minimum burden on the defendants, since the documents in question have already been identified and sorted. In fact, ordering production of these documents seems to accord with prevailing practice."); *In re Wirebound Boxes Antitrust Litigation*, 126 F.R.D. 554, 556 (D. Minn. 1989) (requiring defendants to product "documents which they submitted to the government in response to an investigation of the wirebound box industry and which they created independently from any such investigation").

That being said, the Court's review of Request for Production Nos. 1-4 reveals that they are overbroad, as written. These requests do not clearly apply to the CRIPA investigation underlying the January 25, 2023 DOJ Report concerning LDPSC's longstanding practice of overdetention. The Court advises Plaintiffs to redraft their requests to correct these issues. The Court also must point out that Plaintiffs' discovery requests tend to be overbroad, inviting objection. Going forward, Plaintiffs' counsel must take care to draft discovery requests with sufficient particularity.

Signed in Baton Rouge, Louisiana, on August 22, 2023.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**