## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**BRIAN HUMPHREY, ET AL.**

                                                     **CIVIL ACTION**

**VERSUS**

                                                  **NO. 20-233-JWD-SDJ**

**JAMES LEBLANC**

### RULING ON MOTION TO STRIKE/EXCLUDE CERTAIN EVIDENCE OFFERED BY PLAINTIFFS IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Before the Court is a *Motion to Strike/Exclude Certain Evidence Offered by Plaintiffs in Support of Motion for Class Certification* (Doc. 114) ("*Motion*") brought by defendants James LeBlanc in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections ("LeBlanc" or "Defendant") and the Louisiana Department of Public Safety and Corrections ("DOC"). (Doc. 114 at 1.) The Court notes at the outset that while the DOC and LeBlanc in his official capacity as Secretary of DOC were originally made defendants, the only defendant as per the operative complaint, (the *Second Amended Class Action Complaint* ("*SAC*")), is James LeBlanc in his individual capacity. (Doc. 43 ¶ 10.) Neither the DOC nor LeBlanc in his official capacity are currently defendants. Only LeBlanc answered the *SAC*. (Doc. 44.)

The *Motion* is opposed by Plaintiffs Brian Humphrey ("Humphrey"), Joel Giroir ("Giroir") and Bryant White ("White") (collectively, "Plaintiffs"). (Doc. 124.) Defendant filed a reply brief. (Doc. 138.) The Court has carefully considered the law, facts in the record and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *Motion* is granted in part and denied in part.

1

# I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Humphrey filed this suit on April 15, 2020, asserting class action allegations and seeking monetary damages related to Defendant's alleged over-detention of him and others similarly situated. (Doc. 1 ¶ 4.) Plaintiffs Giroir and White were later added as named Plaintiffs. (*SAC*, Doc. 43 ¶¶ 4, 7–9.) Plaintiffs allege that they and others similarly situated "[were] remanded to the custody of the DOC since April 16, 2019 (pursuant to a criminal sentence or a parole or probation revocation), and [ ] were entitled to release at the time they were remanded to the DOC's custody, but [ ] were released by the DOC more than 48 hours past the time that they were remanded." (*Id.* at ¶ 4.)

In *Plaintiffs' Motion for Class Certification*, Plaintiffs define their proposed class as follows:

> [A]ll persons who have been remanded to the custody of the DOC since April 16. 2019, and who were entitled to release at the time of their remand (either pursuant to sentencing or parole revocation), but who were released by the DOC more than 48 hours past the time they were remanded to the DOC's custody.

(Doc. 104 at 1; *see also SAC*, Doc. 43 ¶ 65.)

Plaintiffs filed a *Motion for Class Certification* on July 21, 2022. (Doc. 104.) Defendant filed an opposition (Doc. 118), and Plaintiffs filed a reply (Doc. 123). Attached to Plaintiffs' motion were certain exhibits which by this *Motion*, Defendants seek to strike or exclude. These exhibits are listed in Defendant's *Motion*. (Doc. 114 at 2.)

The *SAC* alleges that "[f]or years now, the [DOC] has been unlawfully and knowingly overdetaining thousands of Louisiana residents in its custody every year. [LeBlanc] has known about this misconduct since at least 2012." (*SAC*, Doc. 43 ¶ 1, citation omitted.) Plaintiffs allege the particulars of their individual confinements and ultimate releases. (*Id.* ¶¶ 11–30.)

Plaintiffs allege that the DOC has a pattern and practice of over-detaining people in its custody, (*id.* at 8) which alleged pattern and practice is set out in more detail at *SAC*, Doc. 43 ¶¶ 31–33. The DOC is alleged to have committed this wrongful over-detention to thousands of prisoners every year (*id.* ¶¶ 34–47), and LeBlanc has known or should have known about the problem since a 2012 DOC investigation revealed the same (*id.*). Plaintiffs allege that notwithstanding the 2012 investigation and multiple additional studies and investigations since, nothing significant has been done to solve the problem and, indeed, LeBlanc has been deliberately indifferent to the problem. (*Id.* ¶¶ 48–62.)

Plaintiffs next allege why the proposed class as defined above meets the numerosity, commonality, typicality and adequacy requirements of Fed. R. Civ. P. 23(a). (*Id.* ¶¶ 65–81.)

Plaintiffs then claim entitlement to damages from LeBlanc under 42 U.S.C. § 1983 in that LeBlanc's deliberate indifference violated Plaintiffs' constitutional rights to liberty and due process under the United States Constitution, (*id.* ¶¶ 82–90); under Article I § 2 of the Louisiana Constitution for violating their rights of due process (*id.* ¶¶ 91–94); for false imprisonment under Louisiana state law (*id.* ¶¶ 95–97); for state law negligence (*id.* ¶¶ 98–103); and state law intentional infliction of emotional distress (*id.* ¶¶ 104–08). Plaintiffs seek compensatory and punitive damages and attorney fees. (*Id.* at 23.)

In his answer to the *SAC*, LeBlanc denies all allegations of wrongdoing. (Doc. 44.)

## II.    SUMMARY OF ARGUMENTS OF THE PARTIES

### A.  LeBlanc

LeBlanc argues that "all evidence set forth to justify the [class] certification . . . should be admissible evidence under the Federal Rules of Evidence[,] . . . [and] [m]uch of the evidence cited by Plaintiffs . . . in support of . . . Class Certification is not admissible." (Doc. 114-1 at 3,

citations omitted.) The exhibits which LeBlanc seeks to strike or exclude falls into two main categories: first, seven depositions taken in other cases (*id*. at 4–5; *see also* Doc. 114 at 2), and second, three specific documents (an email from LeBlanc, a report, and a memorandum) which LeBlanc argues are unauthenticated, contain hearsay and/or are irrelevant (*id*. at 8–11).

Regarding the depositions, LeBlanc maintains that, because they were taken in unrelated proceedings, Fed. R. Civ. P. 32(a)(8) requires that the depositions offered by Plaintiffs "must [ ] involve the same subject matter and the same parties" in order for the Court to consider them in connection with the class certification motion. (*Id*. at 4 (citing Fed. R. Civ. P. 32(a)(8)).) While LeBlanc concedes that the depositions in question "involve the over-arching topic of over-detention, none of them involve the same plaintiffs. . . . Because the Plaintiffs in this suit [are different] from the plaintiffs involved in the cases from which the attached deposition transcripts and excerpts are taken, Plaintiffs have [failed to satisfy] Rule 32(a)(8) . . ." and thus the depositions cannot be considered for purposes of class certification. (*Id*. at 5.)

Furthermore, the deposition excerpts "involve different motives and context and are irrelevant to the issues presented in this case" and the motion for class certification, and, thus, the exerpts may not be considered for present purposes. (*Id*. at 5.) According to LeBlanc, Plaintiffs fail the " 'similarity of motive' test which combines the 'predecessor in interest' and 'similar motive' elements of [Federal] Rule [of Evidence] 804 to determine the admissibility of prior deposition testimony." (*Id*. at 6–7, citation omitted.) LeBlanc argues that while he and/or the DOC were defendants in the other cases, "all plaintiffs and remaining defendants are not the same and the motive in which defendants are acting differ." (*Id*.)

LeBlanc argues specifically that the similarity of motive test "required [by] Rule 804" (*id.* at 7) fails here for two reasons: 1) Plaintiffs here add "allegations of state law intentional

infliction of emotional distress and allegations against the policies and procedures that [DOC] has in place" not found in the other cases; and 2) "this is a class action . . . presenting a much more expansive class of plaintiffs than in the prior cases . . . shift[ing] the interest of the [DOC] in the line of questioning they would pursue . . . beyond that of the case specific inquiries of the prior deposed parties." (*Id.*)

In the alternative, if the Court allows the use of the challenged deposition excerpts, the Court should require that the full depositions be admitted and considered. (*Id*. at 7–8.)

As to the individual documents LeBlanc challenges, the first is supposed to be an email string containing a statement by LeBlanc as to an "action plan." (*Id*. at 8, citing Doc. 104-3.) However, LeBlanc notes that "plaintiffs [ ] attached the wrong exhibit." (*Id*.) As to the exhibit Plaintiffs intended to introduce, LeBlanc objects based on hearsay (*id*. at 8) and lack of proper authentication (*id*. at 9).

The second of the individual exhibits challenged is a document entitled "Department of Corrections Lean Six Sigma 2012 PreClassification" which LeBlanc claims lacks authentication and is irrelevant because the "analysis ten years ago bears nothing on the issues before the Court . . . " since the class whose certification being sought dates back to only April 2019. (Doc. 114-1 at 10.)

The final challenged document is entitled "Criminal Justice Data Sharing and Notification Project" (Doc. 104-13) which LeBlanc argues is not authenticated and "is irrelevant to the issue of class certification" since it "describe[es] facts and conditions that pre-dated any of the facts relevant to the proposed class members in this case." (Doc. 114-1 at 10–11.)

### B.  Plaintiffs

Plaintiffs argue that LeBlanc "relies upon an erroneous interpretation of the legal standard regarding the admissibility of non-expert evidence in class certification proceedings" (Doc. 124 at 3) and that the cases relied upon by LeBlanc are limited to expert evidence (*id*. at 3–4). Plaintiffs maintain that at this stage and for this kind of evidence, there is a relaxed standard of admissibility. (*See id*. at 3–5, citations omitted.)

Regarding the challenged deposition excerpts, Plaintiffs insist that "[b]ecause this case involves the same defendants and subject matter as the prior over[-]detention actions in which the challenged depositions were taken, and because Defendants had the requisite similar motive to develop the deponents' testimony in the prior and instant actions, the depositions are admissible here." (*Id*. at 6.) Plaintiffs stress that "similar motive does not mean identical motive" and "[t]he fact that the plaintiffs in this case seek class certification does not change the admissibility of the challenged testimony" but in fact "highlights the similarity of motive and similarity of subject matter among these over[-]detention cases." (*Id*. at 7, citation omitted.) "Indeed[,] as [LeBlanc's] own brief indicates, the same deposition testimony he challenges has been admitted as evidence in multiple over[-]detention cases in which the DOC and Secretary LeBlanc were named defendants." (*Id.*, citing Doc. 114-1 at 4–5 (compiling cases in which the same deposition testimony was presented).)

As to LeBlanc's alternative suggestion of introducing the entire depositions, Plaintiffs offer no resistance and, indeed, submit the entire depositions of certain depositions as additional exhibits. (Doc. 124 at 8 n.3.)

As to the offered email by LeBlanc, Plaintiffs concede they inadvertently submitted the wrong exhibit for the intended one. (*Id*. at 8 n.4.) However, they argue that this document is well

known to LeBlanc as it was produced by LeBlanc in discovery and furthermore is the subject of

a motion similar to this one in a similar case involving the same defense counsel, *Giroir v.*

*LeBlanc*, No. 21-108, M.D. La. (Doc. 124 at 8; *see also id*. at n.4.) Plaintiffs contend that the

document, which was authored by LeBlanc, is self-authenticating. (*Id*. at 8–9, citations omitted.)

"Notably, Secretary LeBlanc does not contend that the email is *inauthentic*, or that he did not

send it." (*Id*. at 9.)

As to the Lean Six Sigma report, Plaintiffs argue that the report was produced by

LeBlanc and, contrary to Defendant's argument, "he testified about the report in his deposition in

this case." (*Id*. at 9–10, citing Doc. 104-18 at 23).) It is relevant, maintain Plaintiffs, because "it

is evidence about Secretary LeBlanc's notice of and indifference to the DOC's over[-]detention

problem, which is common evidence that the over[-]detention of the class members is the result

of a policy of indifference, rather than random deficiencies attributable to other reasons." (*Id*. at

10.)

As to the final challenged document, Criminal Justice Data Sharing and Notification

Project (Doc. 104-13), Plaintiffs argue that Defendant's effort to exclude "DOC's own 2019

grant application to the U.S. Department of Justice" is misplaced since it "describes the

magnitude of the DOC's over[-]detention problem" and Leblanc "testified about . . . applying for

the grant and his involvement in it during his deposition in this case." (Doc. 124 at 10, citing

Doc. 104-18 at 47–48, 70.) According to Plaintiffs, "it is relevant to show [LeBlanc's] continued

indifference and half-measures . . . ." (*Id*.)

### C. LeBlanc's Reply

LeBlanc insists that, contrary to the position taken by Plaintiffs, there is no "relaxed

evidentiary standard" applicable for non-expert evidence in support of class action certification

in the Fifth or other circuits. (Doc. 138 at 2–3, citations omitted.) LeBlanc reiterates his position

that, in order for the deposition excerpts offered by Plaintiffs to be admissible, they must

"involve the same subject matter and the same parties [and] the parties [must] have 'similar

motive' in taking the deposition testimony." (*Id*. at 4, citation omitted.) "Similar motive is

defined as the party having the same interest in developing the testimony and prevailing on the

issue as the party in the prior action did." (*Id*., citation omitted.)

    While Defendant agrees that "Plaintiffs' claims in the instant case are associated to the

claims in the prior cases as they both involve claims of alleged over-detention[,]" they argue that

Defendant's "motive in developing testimony in the matters vary as the allegations and relief

sought by the plaintiffs are not the same throughout all the cases." (*Id*. at 5.)

    LeBlanc argues that the "corrected exhibit" (Doc. 124-1), the LeBlanc email, was not

submitted timely, and therefore it is "unfair and prejudicial" to allow it. (*Id.* at 6.) In any event,

the substituted exhibit continues to lack proper authentication and is irrelevant because the

November 4, 2016 email in question "pre-dates the relevant dates in this litigation by years[,] . . .

[and] [i]ts contents bear nothing on how the [DOC] operated during the relevant class period."

(*Id*. at 6.)

    As to the Lean Six Sigma report, Defendant doesn't deny it was produced in discovery

but this "does not conclusively authenticate" the document and "should not preclude its

exclusion[.]" (*Id*.) Defendant repeats his argument that the document is not relevant to class

certification issues. (*Id*. at 7.)

    As to the DOC's 2019 "grant application" (Doc. 104-13), Defendant argues that, contrary

to Plaintiffs' position, the document was not attached to LeBlanc's deposition, "nor was it

otherwise discussed during his deposition." (*Id*. at 7.) Defendant repeats his position that the document "dated 2019, bears nothing on the relevant class period[.]" (*Id*.)

## III.    STANDARDS TO BE APPLIED

### A.   Standard Governing Admissibility of Evidence Offered at Class Certification Stage

The parties disagree about whether the Federal Rules of Evidence must be strictly enforced in deciding whether to consider evidence proffered on the class certification issue. LeBlanc suggests broadly, "all evidence set forth to justify the certification of a class should be admissible evidence under the Federal Rules of Evidence." (Doc. 114-1 at 3, citing, *inter alia*, *Unger v. Amedisys Inc*., 401 F.3d 316 (5th Cir. 2005)); *see also* Doc. 138 at 2.) Plaintiffs contend the evidence need not be admissible under the Federal Rules of Evidence or at least these rules need not be strictly applied at the class certification stage in cases not involving expert testimony and/or not raised in a securities class action setting. (Doc. 124 at 4, citing, *inter alia*, *Edwards v. City of Tupelo, Miss.*, No 17-131, 2020 WL 4927497 (N.D. Miss. Aug. 21, 2020).)

The question of what evidence the Court may consider must be examined in the light of the specific issue before the Court, *i.e.*, whether to grant Plaintiffs' motion for class certification. In that regard Federal Rule of Civil Procedure 23 provides, in pertinent part:

> (a) **Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> > (1) the class is so numerous that joinder of all members is impracticable;
> >
> > (2) there are questions of law or fact common to the class;
> >
> > (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23.

The Fifth Circuit has made clear that in order "[t]o obtain class certification, parties must satisfy Rule 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007) (citation omitted); *see also M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). Furthermore, "Rule 23 does not set forth a mere pleading standard. Instead, '[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' and so on." *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 545–46 (5th Cir. 2020) (citations omitted). To satisfy the rigorous standard, a court "will often have to probe behind the pleadings because the class determination generally involves considerations that are enmeshed in the factual and legal issues of the case." *Id*. at 546 (cleaned up). This duty includes conducting an "investigation" into disputed facts. *Id*. (citation omitted).

LeBlanc argues that in conducting its investigation into disputed facts at the class certification stage, the Fifth Circuit has held that "all evidence set forth to justify the certification . . . should be admissible [ ] under the Federal Rules of Evidence." (Doc. 114-1 at 3, citing *Unger*, 401 F.3d 316.)  In its reply brief, LeBlanc again states categorically and broadly that "the Fifth Circuit . . . in *Unger* . . . require[s] that the evidentiary proof offered must be admissible under the Federal Rules of Evidence." (Doc.  138 at 2, citing *Unger*, 401 F.3d at 319.) The only other authority offered by LeBlanc in support of its position are cases outside the Fifth Circuit. (Doc. 114-1 at 3 n.8; Doc. 138 at 3.)

The Court has carefully reviewed *Unger*, including the specific page to which LeBlanc points the Court and agrees with Plaintiffs that "*Unger* says no such thing." (Doc. 124 at 3.) Indeed, the very first sentence of the opinion states: "This case, on review pursuant to [Fed. R.

Civ. P.] 23(f), implicates the standards and procedures used by district courts *when considering certification of securities class actions dependent on the 'fraud on the market' theory.*" *Unger*, 401 F.3d at 319 (emphasis added) (citation omitted). It is in this specific context that the court ruled:

> [W]e hold that a careful certification inquiry is required and findings must be made based on adequate admissible evidence to justify class certification. Because the district court erroneously applied *too lax a standard of proof to the plaintiffs' fraud-on-the-market allegations*, we must vacate the class certification and remand.

*Id*. (emphasis added).

The Court concluded that *"[w]hen a court considers class certification based on the fraud on the market theory*, it must engage in thorough analysis, weigh the relevant factors, require both parties to justify their allegations, and base its ruling on admissible evidence." *Id*. at 325 (emphasis added).

Plaintiffs point the Court to *Edwards v. City of Tupelo*, No. 17-131, 2020 WL 4927497 (N.D. Miss. Aug. 21, 2020), in support of their position that rigorous adherence to the Federal Rules of Evidence for purposes of class action certification is limited to securities fraud cases and expert evidence. (Doc. 124 at 4.) *Edwards* involved a motion to strike two paragraphs of a declaration given in support motion to certify a class. *Edwards*, 2020 WL 4927497, at *1, 6. Defendant challenged these two paragraphs because they did not identify specifically who made the statements. *Id*. at *6.

Quoting its earlier opinion, the Court rejected the defendant's condition that *Unger* required strict adherence to the Federal Rules of Evidence at the class certification stage for non-expert evidence.

> While the Fifth Circuit does not appear to have addressed the propriety of considering hearsay in an ordinary motion for class

12

certification, it has held that certification of a securities class action dependent on a fraud-on-the-market theory "must be made based on adequate admissible evidence to justify class certification." *Unger v. Amedisys Inc.* 401 F.3d 316, 319 (5th Cir. 2005). Notwithstanding *Unger*'s holding, courts in this circuit, in non-securities class actions, have held that "the rules of evidence do not apply in full force" to a motion to certify class when the evidence is "not offered as evidence of the merits of Plaintiffs' claims, but to support their class certification motion*." Steward v. Janek*, 315 F.R.D. 472, 478 (W.D. Tex. 2016). This approach is consistent with the holdings of "most district courts . . . that evidence need not be admissible under the Federal Rules of Evidence—or that the rules should not be applied strictly—on a motion for class certification." *Flores v. Anjost Corp*., 284 F.R.D. 112, 124 n.3 (S.D.N.Y. 2012) (collecting cases); *see Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562 n.14 (8th Cir. 1982) ("Hearsay testimony may be admitted to demonstrate typicality.").

> *Edwards v. City of Tupelo*, No. [17-131], 2019 WL 4643989, at *4 n.9 (N.D. Miss. Sept. 24, 2019).

*Edwards,* 2020 WL 4927497, at *3.

Consistent with this Court's analysis above, the *Edwards* court carefully examined *Unger* and concluded that *Unger* did not intend to require strict adherence to the Federal Rules of Evidence at the class certification stage for non-expert testimony and in cases not involving unique issues like the fraud on the market theory involved in *Unger*.

> Consistent with the broad meaning of "admissible," nothing in *Unger* suggests that the panel intended to require complete compliance with the Federal Rules of Evidence for evidence to be admissible in a class certification proceeding. Indeed, in evaluating the evidence supporting the plaintiffs' fraud-on-the-market theory, the *Unger* panel did not rely on the Federal Rules of Evidence in any respect. Rather, when finding error in the district court's reliance on certain internet printouts, the *Unger* panel held that "[a]t the certification stage, reliance on unverifiable evidence is hardly better than relying on bare allegations." *Unger*, 401 F.3d at 324. Thus, *Unger* held that "unverifiable" evidence is inadmissible in class certification proceedings.

*Edwards*, 2020 WL 4927497, at *4 (citation omitted).

The Court noted and discussed the divergent approaches taken by other circuits, *id.* at *4–5, and concluded:

> This Court finds the Ninth Circuit approach, which focused on the "ultimate admissibility" of a piece of evidence to be not only persuasive but more consistent with *Unger*'s focus on whether the proffered evidence is verifiable or reliable, as opposed to "admissible" under a specific rule. This flexible approach is also consistent with the Fifth Circuit's recent clarification that, even at the summary judgment stage, the "substance or content" of evidence need not be admissible under the Federal Rules of Evidence so long as the material may be presented at trial in an admissible form. *Patel v. Tex. Tech. Univ.*, 941 F.3d 743, 746 (5th Cir. 2019).

*Edwards*, 2020 WL 4927497, at *5.

The Court found that rigid adherence to the admissibility requirements of the Federal Rules of Evidence was not required in other pre-trial contexts.

> [C]ase law has long recognized evidence may be "admissible" for introduction in a proceeding without being admissible under the Federal Rules of Evidence. For example, hearsay testimony which is inadmissible under the Federal Rules of Evidence may be "admissible at a suppression hearing," *United States v. Sundsboe*, 65 F. App'x 509, 509 n.1 (5th Cir. 2003), and may also be "admissible in preliminary injunction hearings," *Nelson ex rel. N.L.R.B. v. Advoc. Health & Hosps. Corp.*, 273 F. Supp. 3d 919, 929 n. 5 (N.D. Ill. 2017) (collecting cases).

*Edwards*, 2020 WL 4927497, at *4.

When dealing with non-expert testimony at the class certification stage and absent unique factual and legal issues like those presented in *Unger*, this Court agrees that the Ninth Circuit's "ultimate admissibility" test is most consistent with the Fifth Circuit's approach. *Id.* at *5 (citing and quoting *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018). ("When conducting its 'rigorous analysis' into whether the Rule 23(a) requirements are met, the district

14

court need not dispense with the standards of admissibility entirely. The court may consider whether the plaintiff's proof is, or will likely lead to, admissible evidence.") As noted in *Edwards*, this is consistent with the Fifth Circuit approach to considering evidence offered at the summary judgment stage. *Patel*, 941 F.3d at 746; *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016); *In re TK Boat Rentals, LLC*, 411 F. Supp. 3d 351, 374 (E.D. La. 2019).

**B.   Standard Regarding Admissibility of Deposition Testimony Taken in Other Cases**

The parties agree that Federal Rule of Civil Procedure 32(a)(8),  Federal Rule of Evidence 804(b)(1), and the jurisprudence interpreting the same govern the issue of when a deposition taken in a prior case may be admitted in one that is pending. Not surprisingly, they agree on little else.

Federal Rule of Civil Procedure 32(a)(8) states:

> **Deposition Taken in an Earlier Action**. A deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action. A deposition previously taken may also be used as allowed by the Federal Rules of Evidence.

Fed. R. Civ. P. 32(a)(8).

Federal Rule of Evidence 804(b)(1) states:

> The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
> > (1) **Former Testimony**. Testimony that:
> >
> > > **(A)** was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

15

> **(B)** is now offered against a party who had--
> or, in a civil case, whose predecessor in
> interest had--an opportunity and similar
> motive to develop it by direct, cross-, or
> redirect examination.

Fed. R. Evid. 804(b)(1).

Determining when a deposition taken in another case can now be used requires a court to consider both provisions. So, for instance, the fact that not all of the parties in the present litigation participated in the earlier deposition is not fatal to its use in the latter under Fed. R. Civ. P. 32(a)(8).

> While Rule 32(a)(8) does impose a requirement that the deposition
> involve the same subject matter and same parties as the current trial,
> it also allows for the use of deposition testimony at trial when such
> is "allowed by the Federal Rules of Evidence." [Fed. R. Civ. P.]
> 32(a)(8). Accordingly, because the Court has determined that
> Vedros's deposition is admissible pursuant to the Federal Rules of
> Evidence, it is not necessary that the deposition involve all
> defendants made party to the lawsuit.

*Vedros v. Grumman*, No. 11-1198, 2015 WL 3796379, at *4 (E.D. La. June 18, 2015) (Barbier, J.).

Even when the party against whom the deposition is being offered was not a party to the suit in which it was taken, it may be used as long as there was at the taking of the testimony a "predecessor in interest [who had [ ] an opportunity and similar motive to develop" the issue in question "by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1). "In determining what constitutes a 'predecessor in interest,' the U.S. Fifth Circuit Court of Appeals employs a 'similarity of motive' test, thereby combining the element of 'predecessor in interest' with that of 'similar motive.' " *Vedros*, 2015 WL 3796379, at *3 (citing *United States v. McDonald*, 837 F.2d 1287, 1292 (5th Cir. 1988)).

16

A recent Eastern District of Louisiana case summarized the current state of law on this issue in the Fifth Circuit.

> To establish "opportunity and similar motive" in cases in which the parties in the current and former proceedings are different, the Fifth Circuit has endorsed a "fact-specific" inquiry that considers whether the questioner "is on the same side of the same issue at both proceedings" and "whether the questioner had a substantially similar interest in asserting and prevailing on the issue." *Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 552 (5th Cir. 2000) (citing *United States v. DiNapoli*, 8 F.3d 909, 912 (2nd Cir. 1993)) (considering the almost identical federal rule). As another court put it, "there must be 'sufficient identity of issues to ensure that cross examination in the former case was directed to the issues presently relevant, and that the former parties were the same in motive and interest.' " *Holmquist* [*v. Farm Fam. Cas. Ins. Co.*, 800 F. Supp. 2d 305, 310 (D. Me. 2011)] (quoting *Hicks Co. v. [Comm'r]*, 470 F.2d 87, 90 (1st Cir. 1972)). "Because similar motive does not mean identical motive, the similar-motive inquiry is inherently a factual inquiry, depending in part on the similarity of the underlying issues and on the context of the questioning." *Battle*, 228 F.3d at 552.

*Lopez v. McDermott, Inc.*, No. 17-8977, 2020 WL 3964989, at *4 (E.D. La. July 13, 2020) (Fallon, J.).[1]

## C. Standard Regarding Proper Authentication

Federal Rule of Evidence 901 states in relevant part, "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

"The Fifth Circuit has held, however, that Rule 901 'does not require conclusive proof of authenticity before allowing the admission of disputed evidence;' rather, the proponent need only

---

[1] While this diversity of citizenship case involved La. Code Evid. art. 804(B)(1), the Court noted: "The Louisiana rule is remarkably similar to Federal Rule of Evidence 804(b)(1)," and the Court utilized federal Fifth Circuit case law to interpret its meaning and apply it to the facts of the case.

present 'some evidence' sufficient to support the requisite finding." *Kikuchi v. Silver Bourbon, Inc.*, No. 20-2764, 2021 WL 2210915, at *3 (E.D. La. June 1, 2021) (quoting *In re McLain*, 516 F.3d 301, 308 (5th Cir. 2008)). As stressed in a recent Fifth Circuit case, "Authentication is a low burden, requiring only a showing 'sufficient to support a finding that the item is what the proponent claims it is.' " *Allen v. Hays*, 812 F. App'x 185, 193 (5th Cir. 2020) (quoting Fed. R. Evid. 901(a)). Indeed, "[a] proponent 'may authenticate a document with circumstantial evidence, "including the document's own distinctive characteristics and the circumstances surrounding its discovery." ' " *In re Mclain*, 516 F.3d at 308 (quoting *United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993) (in turn quoting *United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990))).

## IV.   APPLICATION

While the Court has concluded above that, under the circumstances before the Court, the Court may consider evidence submitted in connection with a motion to certify a class action that does not meet the strict requirements of admissibility under the Federal Rules of Evidence, with one exception, this finding is unnecessary to the Court's ruling since the Court finds that Plaintiffs' proffered exhibits are admissible under the Federal Rules of Evidence.

### A.  Deposition Excerpts

At issue are excerpts[2] from seven depositions taken in cases other than the one before the Court: Docs. 104-2, 104-4, 104-6, 104-9, 104-10, 104-12, and 104-16. (Doc. 114 at 2.) Of these seven depositions, LeBlanc concedes that they all involve the same subject matter: "the over-

---

[2] LeBlanc argues that, in the event the Court allows the challenged deposition excerpts, "the entirety of the deposition testimony [should] be admitted. (Doc. 114-1 at 7.) In response, Plaintiff submitted the full transcripts of the 30(b)(6) depositions of the DOC where the representatives were Griffin (Doc. 124-2), Ellis (Doc. 124-3) and Whittaker (Doc. 124-5) along with the complete deposition of LeBlanc (Doc. 124-4). To the extent that any of the remaining depositions cited are not complete, Plaintiffs must submit the complete depositions within seven days of this order.

arching topic of over[-]detention." (Doc. 114-1 at 5.) This requirement of Fed. R. Civ. P.

32(a)(8) is therefore satisfied.

However, LeBlanc argues that "because the Plaintiffs in this suit" are different "from the

plaintiffs involved in the cases from which the attached deposition transcripts and excerpts are

taken, Plaintiffs have" failed to satisfy Rule 32(a)(8) and thus the depositions cannot be

considered for purposes of class certification. (Doc. 114-1 at 5.) This objection is easily

overcome since Rule 32(a)(8) specifically allows the deposition to be used "as allowed by the

Federal Rules of Evidence," and Federal Rule of Evidence 804(b)(1) allows for its introduction if

"offered against a party who had—or, in a civil case, whose predecessor in interest had—an

opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R.

Civ. P. 32(a)(8).

In this case, the deposition excerpts are being offered against LeBlanc who is the

Secretary of the DOC and the defendant in this case. To determine whether these excerpts can be

admitted, the Court must look to the prior depositions and inquire as to 1) whether there was

"opportunity and similar motive . . . [;]" 2) "whether the questioner [was] on the same side of the

same issue at both proceedings;" and 3) "whether the questioner had a substantially similar

interest in asserting and prevailing on the issue." *See Battle*, 228 F.3d at 552 (quoting *DiNapoli*,

8 F.3d at 912); *see also McDermott*, 2020 WL 3964989, at *4.

LeBlanc argues that the similarity of motive test "required [by] Rule 804" fails here for

two reasons: 1) Plaintiffs here add "allegations of state law intentional infliction of emotional

distress and allegations against the policies and procedures that [DOC] has in place" which are

not found in the other cases; and 2) "this is a class action . . . presenting a much more expansive

class of plaintiffs than in the prior cases . . . shift[ing] the interest of the [DOC] in the line of

questioning they would pursue . . . beyond that of the case specific inquiries of the prior deposed

parties." (Doc. 114-1 at 7.)

Plaintiffs respond that "[b]ecause this case involves the same defendants and subject

matter as the prior over[-]detention actions in which the challenged depositions were taken, and

because Defendants had the requisite similar motive to develop the deponent's testimony in the

prior and instant actions, the depositions are admissible here." (Doc. 124 at 6.) "Indeed[,] as

[LeBlanc's] own brief indicates, the same deposition testimony he challenges here has been

admitted as evidence in multiple over[-]detention cases in which the DOC and Secretary

LeBlanc were named defendants." (*Id.* at 7, citing Doc. 114-1 at 4–5 (compiling cases in which

the same deposition testimony was presented).)

After considering the arguments of both sides and reviewing the deposition testimony,

the Court finds that Defendant or his predecessor in interest had sufficiently similar motives to

meet the requirements of Fed. R. Evid. 804(b)(1) and that the questioner for the defendants in

those other over-detention cases had an opportunity and similar motive as LeBlanc does here and

that the questioner had a substantially similar interest in asserting and prevailing on the central

issue.

It must be stressed that the Fifth Circuit has made clear that "similar motive does not

mean identical motive[.]" *Battle*, 228 F.3d at 552. As mentioned earlier, both sides agree that the

subject matter in the earlier cases involved the same subject matter, namely the central issue of

over-detention in Louisiana's prisons. The fact that in this case an additional state law cause of

action was added for intentional infliction of emotional distress, that additional specific policies

were implicated, and that there are more plaintiffs who are alleged to have suffered over-

detention, did not change the similarity of the depositions as to the central issue of over-detention

and Defendant's response to it. In the earlier cases, the questioner had an "opportunity and similar motive[,]" as LeBlanc does here, was "on the same side of the same issue" and had "a substantially similar interest in asserting and prevailing on the issue." *Id.*

Indeed, five of the seven depositions were Rule 30(b)(6) depositions of the DOC. (Docs. 104-4, 104-6, 104-9, 104-12 and 104-16.) The sixth deposition was of LeBlanc himself (Doc. 104-10), and the seventh was of the Executive Director of the Louisiana Clerks of Court Association (Doc. 104-2) at which deposition an attorney for the State Defendants was present and participating. (Doc. 104-2 at 4, 6.) All the depositions involved, as Defendant concedes, the over-detention issue.

The Court therefore denies LeBlanc's *Motion* as it pertains to the challenged deposition testimony.

### B. E-Mail from LeBlanc (Doc. 124-1)

As to the individual documents LeBlanc challenges, the first is a two-page email from LeBlanc to directorlaclerks@yahoo.com dated November 4, 2016, which outlines certain actions he intends to take regarding the over-detention issue. (Doc. 124-1 at 12; Doc. 138 at 5–6, citing Doc. 104-3.) However, LeBlanc notes that "plaintiffs [initially] attached the wrong exhibit." (Doc. 114-1 at 8.) As to the exhibit Plaintiffs intended to introduce, LeBlanc objects based on hearsay (*id*. at 8) and lack of proper authentication (*id*. at 9). In their opposition, Plaintiffs admitted "inadvertently attach[ing] the wrong document[ ]" (Doc. 124 at 8 n.4) and attached the correct one to their opposition brief as Doc. 124-1.

In his reply, LeBlanc objects to the corrected document as untimely and claims that its late production is "unfair and prejudicial[.]" (Doc. 138 at 6.) This complaint rings exceedingly hollow since first, LeBlanc was aware of the document in question and its contents at the time of

their original brief. (Doc. 114-1 at 8.)  Second, Defendant (through same counsel) filed a motion to exclude this same email in a similar case pending in this division (*Giroir v. LeBlanc*, No. 21-108, M.D. La., Doc. 28-1 at 9–10) and therefore LeBlanc was obviously very familiar with the document, its implications for the case and potential reasons for excluding it. Finally, LeBlanc had an opportunity to address the right exhibit in his reply and did so. (Doc. 138 at 5–6.)

On the merits of the motion, LeBlanc argues that the authenticity of the exhibit has not been established, and, in any event, it is irrelevant because of its age (November 4, 2016, predating the Class definition period). (Doc. 138 at 6.) Plaintiffs counter that the document, which was authored by LeBlanc himself, is self-authenticating. (Doc. 124 at 8–9, citations omitted.) As Plaintiffs state, "Notably, Secretary LeBlanc does not contend that the email is *inauthentic*, or that he did not send it." (*Id*. at 9 (emphasis added).)

Here, the email is from LeBlanc himself which, according to Plaintiffs (and which LeBlanc does not deny) was produced in discovery. "Authentication also can be accomplished through judicial admissions such as stipulations, pleadings, and production of items in response to subpoena or *other discovery request*." 31 Charles Alan Wright & Victor J. Gold, *Federal Practice and Procedure* § 7105 (2d ed. 2021) (emphasis added).

> Federal Rule of Evidence Rule 901(a) provides that the requirement of authenticating or identifying an item of evidence is satisfied by "evidence sufficient to support a finding that the matter in question is what the proponent claims it is." The Fifth Circuit has held, however, that Rule 901 "does not require conclusive proof of authenticity before allowing the admission of disputed evidence;" rather, the proponent need only present "some evidence" sufficient to support the requisite finding.

*Kikuchi*, 2021 WL 2210915, at *3 (quoting *In re McLain*, 516 F.3d at 308).  "A proponent may authenticate a document with circumstantial evidence, including the document's own distinctive

22

characteristics and the circumstances surrounding its discovery." *In re McLain*, 516 F.3d at 308 (cleaned up).

Here, the Court finds that the circumstantial evidence strongly favors authentication. Not only was it produced by LeBlanc in discovery and was authored by LeBlanc, but LeBlanc makes no claim that the document is inauthentic. In addition, the Court finds that it is relevant in that it tends to show that there was an over-detention problem which LeBlanc and DOC recognized prior to the time of the events in question.

### C.  Lean Six Sigma Document (Doc. 104-11)

The second of the individual exhibits challenged is a document entitled "Department of Corrections Lean Six Sigma 2012 PreClassification" which LeBlanc claims lacks authentication and is irrelevant because the "analysis ten years ago bears nothing on the issues before the Court . . ." since the class whose certification is being sought dates back to only April 2019. (Doc. 114-1 at 9–10.)

Plaintiffs argue that the Lean Six report was produced by LeBlanc and, contrary to Defendant's argument, "he testified about the report in his deposition in this case." (Doc. 124 at 9-10, citing Doc. 104-18 at 23.) It is relevant, maintain Plaintiffs, because "it is evidence about Secretary LeBlanc's notice of and indifference to the DOC's over[-]detention problem, which is common evidence that the over[-]detention of the class members is the result of [the] policy of indifference, rather than random deficiencies attributable to other reasons." (*Id*. at 10.)

As to the Lean Six Sigma report, Defendant doesn't deny it was produced in discovery but this "does not conclusively authenticate" the document and "should not preclude its exclusion." (Doc. 138 at 6–7.) Defendant repeats his argument that the document is not relevant to class certification issues. (*Id*. at 7.)

The challenged exhibit is a 36-page power point presentation outlining the DOC Lean Six Sigma Improvement Program intended apparently to improve the over-detention problem and providing a February 13, 2012, to September 25, 2012, timeline. The Court finds that this document is relevant and is adequately authenticated. The Court agrees with Plaintiffs that it is relevant because "it is evidence about Secretary LeBlanc's notice of and [alleged] indifference to the DOC's over[-]detention problem, which is common evidence that the over[-]detention of the class members is the result of [an] [alleged] policy of indifference, rather than random deficiencies attributable to other reasons." (Doc. 124 at 10.)

The Court finds it has been adequately authenticated in that it was produced by LeBlanc in discovery and, indeed, LeBlanc was questioned about the Lean Six report in his deposition. (Doc. 104-18 at 22–23.) LeBlanc did not in his deposition and does not here contend it is inauthentic.

### D.  Criminal Justice Data Sharing and Notification Project (104-13)

The final challenged document is entitled "Criminal Justice Data Sharing and Notification Project (DSN) 2019 Program Narrative" (Doc. 104-13 at 2–20), which LeBlanc argues is not authenticated and "is irrelevant to the issue of class certification" since it "describe[es] facts and conditions [which predate] any of the facts relevant to the proposed class members in this case." (Doc. 114-1 at 10–11.)

As to this exhibit, Plaintiffs argue that Defendant's effort to exclude "DOC's own 2019 grant application to the U.S. Department of Justice" is misplaced since it "describes the magnitude of the DOC's over[-]detention policy" and Leblanc "testified about [ ] applying for the grant and his involvement in it during his deposition in this case." (Doc. 124 at 10, citing

Doc. 104-18 at 47–48, 70.) According to Plaintiffs, "it is relevant to show [LeBlanc's] continued indifference and half-measures . . . ." (*Id.*)

In his reply, LeBlanc argues that DOC's 2019 grant application, contrary to Plaintiffs' position, was not attached to LeBlanc's deposition, "nor was it otherwise discussed during his deposition . . . ." (Doc. 138 at 7.) Defendant repeats his position that the document "dated 2019, bears nothing on the relevant class period . . . ." (*Id.*)

The document is 19 pages (Doc. 104-13 at 2–20) and, as stated above, is titled "Criminal Justice Data Sharing and Notification Project (DSN) 2019 Program Narrative." It is not signed nor is there any indication of who authored the document. It appears to be a statement of certain steps which the DOC wishes to take to possibly address the over-detention problem but there is no indication of who it is addressed to, what its purpose is, or what action is being requested.

The Court finds that this document is not properly authenticated. While Plaintiffs argue that this is "DOC's own 2019 grant application to the U.S. Department of Justice," (Doc. 124 at 10), this is not apparent anywhere on the document. While LeBlanc was questioned briefly about a grant application in his deposition (Doc. 104-18 at 47–48, 70), there is nothing to tie this document to those questions and the document itself is neither mentioned not attached. Even given the "low burden" required by the Fifth Circuit for authentication and applying the relaxed standard of admissibility the Court believes is appropriate, the Court finds that Plaintiffs have failed to meet it. LeBlanc's Motion is granted as to Doc. 104-13.

V.    **CONCLUSION**

In conclusion, Defendant's *Motion to Strike/Exclude Certain Evidence Offered by Plaintiffs in Support Motion for Class Certification* (Doc. 114) is **GRANTED** in that Doc. 114-

13, "Criminal Justice Data Sharing and Notification Project (DSN) 2019 Program Narrative," is excluded from consideration in connection with Plaintiffs' Motion to Certify Class (Doc. 104).

To the extent that Plaintiffs have not yet submitted the entire deposition transcripts of the proffered depositions, they are ordered to do so within seven days.

In all other respects, Defendant's Motion is **DENIED**.

Signed in Baton Rouge, Louisiana, on October 4, 2023.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**