UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| HUMPHREY *et al.*,<br><br>     Plaintiffs,<br><br>v.<br><br>LEBLANC,<br><br>     Defendant. | Civil Action No. 3:20-cv-0233-JWD-SDJ |
| GIROIR, *et al.*,<br><br>     Plaintiffs,<br><br>v.<br><br>LEBLANC, *et al.*,<br><br>     Defendants. | Civil Action No. 3:21-cv-108-JWD-SDJ |

**PLAINTIFFS' POST-HEARING REPLY IN SUPPORT OF CLASS CERTIFICATION**

In their post-hearing brief (ECF 214) Defendants argue certification is improper, but they misunderstand the law and fail to grapple with the facts. Certification is called for in this case.

**A.     The "pull documents" do not create individualized issues.**

At the October 19, 2023 hearing, Defendants made the DOC's "pull documents" and their interpretation the centerpiece of their opposition to class certification. *See* Oct. 19 Tr. 92:13-97:1; 106:6-117:8. That tack failed, spectacularly. Instead of showing that class members were unascertainable, Defendants showed that they can be determined in only a few minutes work per member. Defendants demonstrated this by highlighting the pull documents to show which rows represented class members, and which did not. Tr. 107:23-108:1. Then they introduced evidence that the class status of these putative class members had to be confirmed

with a check of the person's underlying sentencing records—but their own witnesses confirmed that this check was a clerical task that could be accomplished with a straightforward review of the person's court records. *See* Tr. 97:12-18; 109:21-115:17; 123:18-22. And, the witnesses confirmed, the record review could be accomplished quickly, taking on average 5.2 minutes per member. *See* Tr. 124:8-18; 219:12-23. As Plaintiffs' counsel pointed out during the hearing, these facts *favor* class certification, as they confirmed that class members could easily be identified by a clerical review of court records. Tr. 198:2-200:10; 219:12-23.

Despite their showing at the hearing, Defendants' post-hearing brief presses the "pull documents" argument anew, advancing two claims. Neither withstands scrutiny.

***First***, Defendants argue that because a record review of the 231 class members from the January 2020 pull document identified a handful who were not entitled to immediate release (and thus would not be members of the class), Plaintiffs have failed to demonstrate that the class satisfies Rule 23(a)(1)'s numerosity requirement. *See Humphrey* ECF 214 at 1-3. This misunderstands the showing required for numerosity. While a party cannot satisfy the numerosity requirement merely by relying on "speculation" or "conclusory allegations," *Harrell v. CheckAGAIN, LLC*, 248 F.R.D. 199, 206 (S.D. Miss. 2006), nothing resembling a precise count of class members is required. Rather, a plaintiff need only offer "some evidence or reasonable estimate of the number of members of the proposed class," *id.* at 205–06, and in assessing this evidence, "'courts are quite willing to accept common sense assumptions in order to support a finding of numerosity.'" *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. July 27, 1981) (quoting 5 J. Newberg, Class Actions § 8812 at 836 (1977)).

Here, evidence of numerosity abounds: first and foremost, *the defendants themselves* used the numbers generated by the February 2019 pull document to make representations to the

2

federal government estimating the number of people they over-detain. *See* PX3.¹ But that is not all. As part of its 2019 DOJ grant application, the DOC stated that its "cumbersome" paperwork process—the same process Plaintiffs challenge here—resulted in "*an average of 200 cases per month* considered an 'immediate release' . . . ." PX3 at 4 (emphasis added). This estimate was based on data analysis conducted by DOC employees, and at the October 19 hearing Secretary LeBlanc acknowledged those statistics were likely accurate through the present day. Tr. 50:2-51:16. There is ample evidence from which the "common sense assumption[]" can be made that the members of the proposed class go well into the hundreds, making joinder of all of them impractical. *Zeidman*, 651 F.2d at 1039. The proposed class satisfies Rule 23(a)(1).

**Second**, Defendants argue that the clerical records check defeats predominance under Rule 23(b)(3). In doing so, they argue that this case is different than *Soutter v. Equifax Info. Servs.*, LLC, 307 F.R.D. 183 (E.D. Va. 2015), which Plaintiffs' counsel cited at the October 19 hearing, *see* Tr. 119:1-16, and which held that individualized review of class records did not defeat the Rule 23(b)(3) predominance requirement. *Id. Soutter* is inapplicable, Defendants say, because in this case "review of each inmate's file and associated paperwork . . . is not a clerical function and would require specific knowledge of pre-class employees." ECF 214 at 5-6.

*Soutter*, if anything, is notable for its close similarity to this case. The review at issue in *Soutter* involved comparing a company's records against court judgment information in a database managed by a state supreme court. 307 F.R.D. at 193, 196. But the review could also involve going beyond the database to examine individual court records. *Id.* This required the

---

¹ In their briefing now, Defendants disavow their use of this same information, saying that the pull document used for the DOJ grant application was "simply created to reference data points" and "was an internal document meant to assist in preparing a proposal." ECF 214 at 2. This is gibberish. The DOC was indeed attempting to "reference data points"—to estimate the number of immediate releases per month. That estimate was used in a "proposal"—which made representations to the federal government estimating the number of people whom the DOC over-detains.

3

reviewer to know how to compare the sets of documents, a point the defendant pressed by noting the number of "steps" required to complete the review of each record. *Id.* at 197. That did not matter, *Soutter* held, because "none of [the defendant's] . . . concerns reflect an inability to determine the members of the class by reference to objective criteria." *Id*. Because the individualized criteria were objective, "this Court would hold that common issues prevail over individualized ones in this action," even if "the comparison between [the state court] data[base] and consumer reports could be deemed individualized or whether additional individualized proof—such as original court documents—could be deemed necessary . . . ." *Id.* at 215.

*Soutter* might as well have been responding to Defendants' objections in this case. The dispositive fact, there and here, is that the individualized review can be done using *objective criteria*. Defendants do not suggest that determining an individual's release date would turn on the subjective judgement of a DOC Preclass clerk. And of course it would not. Sentences are orders issued by courts. Identifying the length of a sentence might require several steps and reference to a handful of documents, but a court's sentencing orders are ultimately objective. Individualized review of files and court documents does not defeat predominance.

**B.     Common issues predominate.**

After passing on from their "pull documents" argument, Defendants make several related arguments about predominance. Each is incorrect.

Defendants try to distinguish this case from *Healey v. Louisville Metro Gov't*, No. 3:17-cv-00071, 2021 WL 149859 (W.D. Ky. Jan. 15, 2021). *See* ECF 214 at 3-5. Their various arguments fail. *Healey* stands for the proposition that "an over-detention class may be certified if it alleges a systemic issue—which impacts all inmates—with the municipality's release process." 2021 WL 149859, at *17 (citations omitted). As contemplated at the October 19 hearing, *see* Tr. 197:3-198:1; 212:12-16, Plaintiffs have applied *Healy*'s reasoning, modifying the class definition

4

to allege a systemic cause for their over-detention that was the driving force behind the over-detention of every member in the putative classes. *See* ECF 213 at 7-8.

With that modification in place, Defendants' arguments are unavailing. Defendants argue that this case resembles *Portis v. City of Chicago*, 613 F.3d 702 (7th Cir. 2010), but as *Healey* explained in synthesizing over-detention precedent, class certification was denied in *Portis* because the class definition did *not* include a cause of over-detention, *Healey*, 2021 WL 149859, at *15. It was for this reason that *Healey* modified its proposed definition to include a *cause* of delay, *see Healey*, 2021 WL 149859, at *16-17 (citing *Portis inter alia*), and it is the reason Plaintiffs have modified the proposed class to include a cause of over-detention here.

Defendants also try to distinguish *Healey* because the municipality there admitted it was reasonable for detainees to be released within 4 hours, whereas here, the DOC has made no such concession, and has not conceded that 48 hours is reasonable either.[2] ECF 214 at 3. A jailor, however, does not get to define what is a reasonable time for release. As the Court noted on October 19, "that's what juries do." Tr. 212:16. At the certification stage, the question is whether a jury's determination of that question can be applied to the entire class. In this regard, the evidence presented at the October 19 hearing is notable for its universality:  the DOC's sentencing calculation practices, including its "cumbersome" paperwork process, impact the time it takes to calculate the sentence of every person remanded to DOC custody. That is the focus of Plaintiffs' modified proposed classes, and it is the definition of a predominant, common issue.

Defendants also distinguish *Healey* because it involved delay in release after receipt of a court order, whereas this case involves delay from the time of sentencing. ECF 214 at 4. This is a

---

[2] Relatedly, Defendants say the 48-hour rule set out in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) is irrelevant because *McLaughlin* involved release after arrest, not release after sentencing, *see* ECF 214 at 3, and that under *McLaughlin*, "any delay within 48 hours is per se reasonable." *Id.* at 4. As Plaintiffs have explained, courts reject both these arguments. *See* ECF 104-1 (collecting cases).

5

rehash of Defendants' oft-repeated, and rejected, argument that DOC has no responsibility for timely release until it receives a complete pre-class packet. *Cf. Crittindon v. LeBlanc*, 37 F.4th 177, 188 (5th Cir. 2022) (noting that LeBlanc can be held liable for awareness of delay in "receiving [sentencing] paperwork from the local jails"). The argument also has no bearing on certification, since it invokes a legal question common to the claims of every class member.[3]

Defendants finally argue that an individualized review would have to be conducted to determine the reasons a person was over-detained. *See* ECF 214 at 6-7. Notably, however, these examples assume a bright-line class definition like the one rejected in *Portis*, where the class turned on a claim that "taking more than two hours to process and release [certain arrestees] made detention unreasonable in violation of the Fourth Amendment." *Healey*, 2021 WL 149859, at *15 (summarizing *Portis*). *Portis* held that given such a class claim, individual issues—similar to those Defendants raise here—would predominate. *See Portis*, 613 F.3d at 704 (collecting examples such as delays caused by medical emergency, intoxication of a class member, a surge of arrests creating a queue, etc.). If class claims turn on whether a particular *length* of over-detention is reasonable, *Portis* held, such individual questions would predominate: "[b]ecause reasonableness is a standard rather than a rule, and because one detainee's circumstances differ from another's, common questions do not predominate and class certification [was] inappropriate." *Portis*, 613 F.3d at 705 (quoted in *Healey*, 2021 WL 149859, at *15).

As *Healey* incisively observed, however, the individualized issues identified in *Portis*, like those Defendants identify here, do not bar certification where the class is defined in reference to a municipal *policy* that caused delay. It was for this reason that *Portis* itself noted

---

[3] Defendants also claim *Healey* held that where a court order has an error, "the length of the inmate's sentence to resolve" it. ECF 214 at 4. Not surprisingly, *Healey* said no such thing—rather, it merely held prisons had no excuse for failing to resolve such court orders. *Healey*, 2021 WL 149859, at *18.

6

that, notwithstanding the individualized issues it had identified *supra*, "class treatment might be appropriate if the class sought to establish that a jurisdiction had *adopted a policy of deliberate delay*." *Portis*, 613 F.3d at 705 (emphasis added) (quoted in *Healey*, 2021 WL 149859, at *15).

That is precisely what Plaintiffs have done here. And for class certification purposes, the difference is dispositive: Plaintiffs seek to certify a class of people who were over-detained by more than 48 hours because of the cumbersome paperwork policy maintained by the DOC (to which, Plaintiffs charge, the Defendants have been deliberately indifferent). That policy, as the evidence introduced at the October 19 hearing showed, caused over-detention measured not in hours, but weeks. Every single class member identified by Defendants at ECF 214 at 6-7, regardless of the individual circumstances they may encounter, will have been impacted as a result of that policy.[4] The predominant question in all of their cases, and those of all other proposed class members, is whether the DOC's cumbersome paperwork process caused a delay in their release, and whether that delay was reasonable. Those questions are common.

Besides claiming to identify individualized issues, Defendants point to several different decisions regarding over-detention to argue that individual legal matters will predominate. *See* ECF 214 at 7-8 (citing *Hicks v. LeBlanc*, No. 22-30184, 2023 WL 5694871, at *2 (5th Cir. Sept. 5, 2023); *Parker v. LeBlanc*, No. 21-30446, --- F.4th ---, 2023 WL 4558517 (5th Cir. Jul. 17, 2023); *Grant v. LeBlanc*, No. 21-30230, 2022 WL 301546 (5th Cir. Feb. 1, 2022)). But as

---

[4] Defendants point to persons with detainers, and certain sex offenders who might not be entitled to release. ECF 214 at 6-7. Plaintiffs have already explained, however, that the detainer category is legally irrelevant, *see* ECF 123 at 6, while the sex offenders at issue are not class members in the first place, and can be excluded through easily ascertainable data, *id.* at 6 n.1. Defendants also point to the occasional need to correct court errors, *see* ECF 214 at 6-7, but considerations like that are the reason *McLaughlin* allowed for a 48-hour buffer period in the first place. *See McLaughlin*, 500 U.S. at 55 (creating 48-hour rule to allow for "delays caused by paperwork and logistical problems"). The "individual" problems Defendants identify, moreover, all arose and were resolved on a delayed timetable, because of their "cumbersome" process for processing sentencing paperwork.

7

Defendants themselves note, the over-detention in these cases involved causes that were different than those in this case, and indeed causes that differed from each other. *Id.* Plaintiffs in this case do not purport to remedy all forms of the DOC's over-detention, only a specific subset that is driven by a common cause. Plaintiffs have identified that specific, common cause of over-detention, and the relevant matter at class certification is whether legal questions impacting the claims of the class will be decided the same for all members. Plaintiffs have explained that they will, *see* ECF 213 at 8, and none of the cases cited by Defendants suggest otherwise.

### C. Damages are not a barrier to certification.

In their briefing, Plaintiffs noted uniform authority that the need for individual damage calculations does not defeat predominance where the other issues in a case can be established with common evidence. ECF 104-1 at 29; ECF 213 at 9. Defendants nevertheless argue that individualized damage calculations will pose a barrier to certification. They are wrong.

First, Defendants suggest that Plaintiffs' counsel conceded at the October 19 hearing that individualized damages posed a "significant challenge . . . to certification." ECF 214 at 8 (quoting Tr. 205:18). As the Court will recall, however, and as the transcript shows, counsel was responding to the Court's question about challenges certifying claims for Intentional Infliction of Emotional Distress ("IIED"). *See* Tr. 204:14-21. Plaintiff counsel readily agreed that IIED claims would be difficult to certify because of the intertwined nature of damages and liability for that claim. *See* Tr. 204:22-24. But as counsel explained, that does problem does not apply to Plaintiffs' *other* claims, because with the "exception of [] IIED, . . . liability [and] impact [are] all common." Tr. 205:10-11. It is for this reason that Plaintiffs no longer seek class treatment for their IIED claims, *see* ECF 213 at 8 n.13, but are otherwise pressing certification of their claims.

As they did in their main class certification briefing, Defendants cite to *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998) for the proposition that certification is improper.

8

*See* ECF 118 at 29; ECF 214 at 8-9. As Plaintiffs have already explained, however, *see* ECF 123 at 9, *Allison* simply is inapplicable. *Allison* involved Title VII claims that a business engaged in disparate racial treatment of its employees with respect to promotions and other personnel matters. Certification was improper, the court held, because "recovery of compensatory and punitive damages required particularly individualized proof of injury, including how each class member was personally affected by the discriminatory conduct." 151 F.3d at 416. Entitlement to damages, in other words, turned on individual questions of whether the company's overall discriminatory practices had actually impacted an individual class member, and how. *Id.*

This case is entirely different. Defendants declare that "the issues of damages and liability are intertwined," ECF 214 at 9, but Defendants never explain what they mean. And indeed the opposite is true. This is not a case of discriminatory employment policies that might, or might not, have impacted a particular employee. Every class member was unlawfully deprived of liberty: they spent days or weeks behind bars when they should have been free to live their lives in the open world. That injury—loss of liberty—is the relevant injury in this case, and Plaintiffs charge that it was caused by Defendants' unlawful over-detention practices. Whether each class member was injured, whether Defendants caused that injury, and whether Defendants are liable for that injury are all common questions that will be decided with common evidence.

That leaves *only* calculation of damages resulting from the loss of liberty and prolonged incarceration. As Plaintiffs' counsel noted during the hearing, damages in this case are susceptible to a simple and obvious measure: time wrongfully incarcerated. Tr. 205:5-6. And to the extent that "class members' damage calculations give rise primarily to individual questions that are not capable of classwide resolution," *In re Deepwater Horizon*, 739 F.3d 790, 815 (5th Cir. 2014) predominance is still "satisf[ied]" where "virtually every issue prior to damages is a

9

common issue." *Id.* at 816 (quotations omitted). Liability and injury turn on common evidence in this case. Damages are discrete. Individual damage calculations do not defeat predominance.

    **D.**    **The Rule 23(b)(2) class should be certified.**

Defendants claim that, given the evidence about modernization presented at the hearing, the Rule 23(b)(2) class has essentially been mooted. ECF 214 at 9-10. Plaintiffs are heartened by the development of an electronic submission portal. But when they asked Undersecretary Bickham whether that tool had solved over-detention in the parishes where it had been implemented, he responded, "I do not know." *See* Tr. 187:21-24. If the DOC's actions in recent months completely solve a problem that has been "endemic in Louisiana," *Hicks v. LeBlanc ("Hicks II")*, 81 F.4th 497, 510 (5th Cir. 2023), that will show up in the data. Such evidence is not before the Court. The Rule 23(b)(2) class should be certified.

Dated: December 11, 2023                                                   Respectfully submitted,

  */s/ Lydia Wright*                                                     */s/ Stephen Weil*

| | |
|---|---|
| Lydia Wright, La. Bar No. 37926 | Mike Kanovitz |
| Samantha Bosalavage, La. Bar No. 39808 | Stephen Weil |
| The Promise of Justice Initiative | Maria Makar |
| 1024 Elysian Fields Avenue | Loevy & Loevy |
| New Orleans, LA 70117 | 311 N. Aberdeen, 3rd Floor |
| Tel: (504) 529-5955 | Chicago, IL 60607 |
| Fax: (504) 595-8006 | Tel: (312) 243-5900 |
| lwright@defendla.org | Fax: (312) 243-5902 |
| | weil@loevy.com |

*/s/ William Most*
William Most, La. Bar No. 36914
Caroline Gabriel, La. Bar No. 38224
Most & Associates
201 St. Charles Ave., Ste. 114 #101
New Orleans, LA 70170
Tel: (504) 509-5023
williammost@gmail.com