# Exhibit A

*Buchicchio v. LeBlanc*, 23-30116, 2024 U.S. App. LEXIS 27429 (5th Cir. Oct. 29, 2024)

# United States Court of Appeals
# for the Fifth Circuit

_____

No. 23-30116
_____

United States Court of Appeals
Fifth Circuit
**FILED**
October 29, 2024
Lyle W. Cayce
Clerk

Nicholas Buchicchio,

*Plaintiff—Appellee*,

*versus*

James M. LeBlanc,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:22-CV-147
_____

Before Davis, Southwick, and Ho, *Circuit Judges*.

Per Curiam:*†

Plaintiff-Appellee, Nicholas Buchicchio, filed a complaint against Defendant-Appellant, James M. LeBlanc, Secretary of the Louisiana Department of Public Safety and Corrections ("DPSC"), under 42 U.S.C.

_____

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

† Judge Ho concurs in the judgment only.

§ 1983 for overdetaining[1] him for eighty-four days. The district court denied LeBlanc's motion to dismiss premised on qualified and sovereign immunity. Following our precedent, we AFFIRM.

## I. BACKGROUND

In 2017, Buchicchio was living in Rapides Parish, Louisiana, while serving a term of probation for a Florida conviction. On March 13, 2017, he was arrested for theft, initially booked at the Rapides Parish jail, and then remanded to Florida, where he pleaded guilty to violating the terms of his probation. Upon completing his sentence for the probation violation, and because Louisiana authorities had placed a detainer on him for the theft charges, Buchicchio was returned to the Rapides Parish jail on May 6, 2019.

On January 16, 2020, Buchicchio appeared before a Louisiana district court and pleaded guilty to ten counts of theft between $5,000 and $25,000. The court sentenced him to seven years in prison on each count, to run concurrently, with credit for the time he had served in both Louisiana and Florida prisons. As a result, Buchicchio was entitled to immediate release. He was released about three weeks later, on February 11, 2020.

After his release from the Rapides Parish jail, Buchicchio returned to Florida. In June 2020, he flew out of the country for a job interview, but upon his return, airport authorities in Miami arrested him based on an outstanding warrant issued by the Louisiana DPSC. Buchicchio alleges that the warrant was mistakenly issued by DPSC as a result of its failure to properly calculate his release date under the state district court's order, even though DPSC had already released him pursuant to that order.

---

[1] A claim of overdetention is "now a euphemism for prisoners illegally incarcerated beyond the terms of their sentence." *McNeal v. LeBlanc*, 90 F.4th 425, 428 (5th Cir. 2024) (quoting *Hicks v. LeBlanc*, 81 F.4th 497, 500 (5th Cir. 2023)).

No. 23-30116

After his arrest at the Miami airport, Buchicchio was taken to Elayn Hunt Correctional Center in St. Gabriel, Louisiana. When he arrived, he immediately informed prison officials of the mistake and filed an administrative grievance explaining that he was entitled to immediate release under the state district court's order and had already been released under that order, but his grievance was denied. He then filed a pro se motion in state district court, seeking a hearing to correct the error.

After missing the hearing dates three times because the prison failed to provide transportation or access to Zoom conferencing, Buchicchio finally appeared before the state district court via Zoom on March 3, 2021, approximately eight months after he was arrested at the Miami airport. The court agreed to amend the minutes from its last order to delineate that Buchicchio was to "receive credit for time served specifically while on detainer since the time of 10.6.2017 until 5.7.2019." Even though Buchicchio again was entitled to immediate release, he was not released by DPSC until approximately eighty-four days later on May 25, 2021, after his family contacted an attorney for help.

Buchicchio subsequently filed this action against DPSC Secretary LeBlanc (in his individual and official capacities), as well as other state officials, under 42 U.S.C. § 1983 and state law, for violating his due process rights by overdetaining him. He seeks damages as well as equitable relief. Although Buchicchio's complaint alleged more than one period of overdetention, the only time period for which he seeks damages is for the eighty-four days between the state district court's last order (March 3, 2021) and the date he was finally released (May 25, 2021). He contends that the

prior periods of overdetention, however, support his right to seek equitable relief.[2]

In response, LeBlanc filed a motion to dismiss under Rule 12(b)(1) and 12(b)(6), arguing that he was entitled to qualified immunity from Buchicchio's § 1983 claim against him in his individual capacity for monetary damages; that sovereign immunity barred the official capacity claims against him for equitable relief; and that Buchicchio also lacked standing to seek equitable relief. The district court denied the motion, and LeBlanc timely filed a notice of appeal.

## II. DISCUSSION

On appeal, LeBlanc argues that the district court erred in denying his motion to dismiss because (1) he is entitled to qualified immunity from Buchicchio's § 1983 claim against him in his individual capacity; (2) Buchicchio cannot seek equitable relief because he lacks standing, and such claims are barred by sovereign immunity; (3) LeBlanc additionally argues that Buchicchio's overdetention claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).[3]

---

[2] In a subsequent pleading in the district court, Buchicchio alleged that he was detained *again* after his May 25, 2021, release for one week in Florida because DPSC has failed to update a national database to show that he served his sentence and was lawfully released.

[3] LeBlanc's only mention of *Heck* was in a footnote in his memorandum in support of his motion to dismiss where he states: "That the Plaintiff is not specifically challenging the fact of his conviction, or the general terms of his sentence does not end the *Heck* inquiry." As we said in *Crittindon v. LeBlanc*, "our task is not to come up with arguments the parties should have made, but to decide the ones they make. When it comes to *Heck* in particular, our court and others have recognized that it is a defense a party must assert[,]" rather than "some sort of jurisdictional bar." 37 F.4th 177, 190 (5th Cir. 2022) (citing *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020)), *cert. denied*, 144 S. Ct. 90 (2023) (mem.). This mention of *Heck* without making any argument for its application is not sufficient to preserve the argument on appeal. *Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th

**A.**

This Court reviews actions on Rule 12(b)(6) motions de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."[4] Under the collateral-order doctrine, we have appellate jurisdiction to review the denial of a motion to dismiss on the basis of qualified immunity when the resolution turns on an issue of law.[5]

Although § 1983 does not create supervisory liability, "[s]upervisory officials may be liable under § 1983 for their failure to adopt policies if that failure causally results in a constitutional injury."[6] "Liability only arises when the officials act, or fail to act, with 'deliberate indifference,' a 'disregard [for] a known or obvious consequence of [their] action[s].'"[7] "[A] plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation."[8] To show a causal connection between the wrongful conduct of a supervisor and a constitutional violation, the plaintiff "must introduce evidence that each

---

Cir. 2022) ("[I]n order to preserve an argument for appeal, the argument (or issue) not only must have been presented in the district court, a litigant also 'must press and not merely intimate the argument during proceedings before the district court.'" (quoting *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994))).

[4] *Morris v. Livingston*, 739 F.3d 740, 745 (5th Cir. 2014) (internal quotation marks and citation omitted).

[5] *Behrens v. Pelletier*, 516 U.S. 299, 307-08 (1996).

[6] *Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022).

[7] *Id.* (quoting *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (alterations in original)).

[8] *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003) (internal quotation marks and citation omitted).

Defendant had 'actual or constructive notice' that their failure to adopt policies would result in constitutional violations."[9]

In this case, Buchicchio has alleged the violation of his Fourteenth Amendment due process right to timely release from prison and that this right was violated by Louisiana DPSC Secretary LeBlanc, a supervisor acting under color of state law. Buchicchio alleged that he endured approximately eighty-four days of incarceration beyond his lawful release date as a direct result of DPSC officials' actions and inactions under LeBlanc's leadership. He alleged that LeBlanc "has presided over and been aware of a pattern of overdetention." Buchicchio further asserted that despite knowing about the problem, LeBlanc failed to take any steps to fix it. He also contended that DPSC staff were not trained regarding the proper guidelines for sentence computations such that they calculated release dates inconsistently.

In support of his allegations, Buchicchio cited to (1) an October 2017 legislative audit report on the DPSC that found that the DPSC "process for calculating offender release dates is inconsistent, which can result in errors"; (2) the DPSC's own investigation showing that in 2017, there was "an average of 200 cases per month considered an 'immediate release' due to the[] deficiencies" in the process for calculating release dates; (3) an August 2018 Excel spreadsheet created by DPSC staffers indicating that on average, prisoners were overdetained 38.6 days; (4) LeBlanc's 2019 deposition testimony admitting that the fact that it could take up to twelve weeks to calculate an offender's release date was "ridiculous" and "something we need to address"; (5) testimony by numerous DPSC employees in a similar suit in state court (*Chowns v. LeBlanc*, 37th Judicial District Court ("JDC") of Louisiana, No. 26-932) describing consistent overdetention; (6) a 2018

---

[9] *Crittindon*, 37 F.4th at 186 (quoting *Porter*, 659 F.3d at 447).

editorial opinion written by United States Senator John Kennedy and Attorney General Jeff Landry, describing the "incompetence" of DPSC; (7) a February 2019 letter to LeBlanc from Judge Edwards of Louisiana's 15th JDC informing him about a specific case of overdetention and adding that "defense attorneys in Lafayette are also complaining about the failure to timely release inmates"; and (8) 2022 deposition testimony by LeBlanc admitting that "there's not a system in place to get [prisoners eligible for immediate release upon sentencing] quickly released."

In this Court's recent decision in *Parker v. LeBlanc*, the plaintiff cited to three of the above documents,[10] specifically the 2017 legislative audit report, the 2018 editorial, and the testimony by DPSC employees in *Chowns v. LeBlanc*. This Court held that those three documents "supported [Plaintiff's] allegations that LeBlanc was aware of the deficiencies of implemented policies that routinely led to error like the one that violated his constitutional rights."[11] In this case, Buchicchio has cited to even more evidence supporting the requisite "pattern" of constitutional violations by untrained employees to establish deliberate indifference for purposes of supervisory liability. Accepting all of his "well-pleaded facts as true" and viewing them "in the light most favorable to [him]," Buchicchio's complaint meets the facial plausibility standard under Rule 12(b)(6) for stating a clam of supervisory liability against LeBlanc.[12]

**B.**

Although Buchicchio has stated a claim for supervisory liability under § 1983, LeBlanc asserts that nonetheless he is entitled to qualified immunity.

---

[10] 73 F.4th 400, 405 (5th Cir. 2023).

[11] *Id.* at 406.

[12] *Id.* (citation omitted).

Qualified immunity involves answering two questions: (1) "whether the officer violated a constitutional right," and (2) "whether the 'right at issue was "clearly established" at the time of [the] alleged misconduct.'"[13] These questions are easily answered in this case. First, detention of a prisoner thirty days beyond the expiration of his sentence constitutes a deprivation of due process.[14] Here, Buchicchio seeks damages for the last period of overdetention, from March 3 until May 25, 2021, which lasted approximately eighty-four days. Second, as this Court determined in *Parker*, this right was clearly established at the time of LeBlanc's alleged misconduct. Specifically, in the 2011 case of *Porter v. Epps,* this Court acknowledged: "Our precedent establishes that a jailer has a duty to ensure that inmates are timely released from prison."[15]

As he has done in prior overdetention cases, LeBlanc argues that Buchicchio has not pleaded facts establishing a pattern of "very similar" constitutional violations and that his allegations are "too general" to support deliberate indifference in this case. We have rejected these arguments, holding that "[t]he standard for deliberate indifference requires only a 'pattern of *similar* constitutional violations by untrained employees' rather than an exact duplication."[16]

LeBlanc additionally faults the district court for taking judicial notice under Federal Rule of Evidence 201 of a report issued by the United States Department of Justice (DOJ) in January 2023, as support for Buchicchio's

---

[13] *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (citation omitted).

[14] *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980).

[15] 659 F.3d 440, 445 (5th Cir. 2011).

[16] *Parker*, 73 F.4th at 406 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)); *see McNeal*, 90 F.4th at 432.

failure-to-train claim. The report followed a two-year investigation into DPSC's time-computation and release practices and detailed "multiple policy failures resulting in overdetention at DPSC," including failure to adopt appropriate polices and time-computation processes, as well as failure to train. The report described the unconstitutional overdetentions as "severe, systemic, and are both caused and perpetuated by serious ongoing deficiencies in [DPSC]'s policies and practices."

Under Rule 201(b), the district court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[17] This Court reviews the district court's decision to take judicial notice of a matter for abuse of discretion.[18] As Buchicchio points out, the DOJ report was released after he submitted his opposition to LeBlanc's motion to dismiss and, thus, was not available for inclusion in his amended complaint or his opposition to the motion (although he did state that a DOJ investigation was pending in his opposition). Rather than require Buchicchio to amend his complaint formally, the district court considered Buchicchio's invitation to take judicial notice of the DOJ report in deciding LeBlanc's motion. LeBlanc could have objected to this invitation under Rule 201(e),[19] but he did not do so. Furthermore, although LeBlanc disputes the findings of the report, he cannot reasonably dispute that the DOJ made the findings,

---

[17] FED. R. EVID. 201(b).

[18] *Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F4th 247, 255 (5th Cir. 2021).

[19] "On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard." FED. R. EVID. 201(e).

No. 23-30116

which is the purpose for which the district court considered the report. Under these circumstances, there was no abuse of discretion.[20]

Consistent with *Parker* and *McNeal*, we hold that Buchicchio's allegations are sufficient to survive LeBlanc's assertion of qualified immunity at the motion to dismiss stage. Based on the foregoing, the district court did not err in denying LeBlanc's Rule 12(b)(6) motion seeking qualified immunity.

## C.

We review the district court's Rule 12(b)(1) "standing and sovereign-immunity determinations de novo."[21] A plaintiff has standing for injunctive relief if he has a reasonable fear that it is likely that a recurrence of the unlawful conduct will occur.[22] While it would seem far-fetched that Buchicchio would be rearrested *again* after being released for the second time, in his opposition to LeBlanc's motion to dismiss, Buchicchio alleged that he was actually detained *again* in Florida for one week after his second release from a Louisiana prison. Buchicchio asserted that this was due to the failure of DPSC to update a national database reflecting that he had in fact satisfied his sentence for his prior convictions.

Buchicchio's allegations reflect, as the district court noted, that the "DPSC's system for calculating release dates and processing release paperwork is in utter disarray," so much so it is plausible that Buchicchio may still be subject to unlawful detention based on DPSC's failure to properly compute and process his release. Because Buchicchio has alleged that he has

---

[20] *See Whitaker v. Collier*, 862 F.3d 490, 496 n.10 (5th Cir. 2017) (taking judicial notice of Texas's execution protocol).

[21] *Book People, Inc. v. Wong*, 91 F.4th 318, 327 (5th Cir. 2024) (citation omitted).

[22] *City of Los Angeles v. Lyons*, 461 U.S. 95, 106-08 & nn.7-8 (1983).

10

been detained after being released from prison *twice*, he has alleged a "real and immediate threat of repeated injury" sufficient to establish standing for prospective equitable relief.[23]

Finally, Buchicchio's equitable relief claims are not barred by sovereign immunity, as they fall squarely within the exception to Eleventh Amendment immunity established in *Ex parte Young*.[24] Under *Ex parte Young*, a plaintiff may sue a state officer in his official capacity for an injunction to stop ongoing violations of federal law.[25] Here, Buchicchio seeks declaratory and injunctive relief to enjoin LeBlanc from violating his right to be free from unlawful detention based on DPSC's ongoing failure to properly compute and process his release. Therefore, the district court did not err in denying LeBlanc's Rule 12(b)(1) motion to dismiss asserting lack of standing and sovereign immunity.

### III. CONCLUSION

Based on the foregoing, the district court's order denying LeBlanc's 12(b)(1) and 12(b)(6) motion to dismiss is AFFIRMED.

---

[23] *Ghedi v. Mayorkas*, 16 F.4th 456, 464 (5th Cir. 2021) (citation omitted).

[24] 209 U.S. 103 (1908).

[25] *Texas All. for Retired Ams. v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022).