**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| BRIAN HUMPHREY, *et al.*, | Civil Action No. 3:20-cv-00233 |
| Plaintiffs, | Judge John W. deGravelles |
| v. | Magistrate Judge Scott D. Johnson |
| JAMES LEBLANC, | |
| Defendant. | |
| JOEL GIROIR, *et al.*, | Civil Action No. 3:21-cv-00108 |
| Plaintiffs, | Judge John W. deGravelles |
| v. | Magistrate Judge Scott D. Johnson |
| JAMES LEBLANC, *et al.*, | |
| Defendants. | |

**JOINT MOTION FOR STATUS CONFERENCE**

Plaintiffs and Defendant move the court to schedule a status conference with Magistrate Judge Johnson at the Court's convenience to discuss the parties' discovery dispute, as discussed in detail below.

**I.        Plaintiffs' Position**

The history of this dispute is set forth in detail below. In sum, Plaintiffs request that Defendants either conduct the manual review contemplated by Defendant Louisiana Department of Corrections ("DOC") testimony at the Class Certification hearing to ensure accurate overdetention data, or provide the underlying records necessary to allow Plaintiffs to perform that review themselves. Additionally, Plaintiffs seek to expand the pull document criteria to include

1

individuals overdetained by more than seven days from the date of time computation. The dispute centers on Plaintiffs' need for accurate and complete data to identify class members, while Defendants object that expanded requests and individualized review would be overly burdensome. While Defendants do not deny that the requested documents are highly relevant to the claims in this litigation, including the identification of class members, they nevertheless refuse production, asserting in general terms without specificity that those documents would be too burdensome to collect.

### A. Background

Plaintiffs have relied on DOC pull documents[1] to establish that overdetention is a systemic crisis in Louisiana from the initiation of these lawsuits. *See Humphrey* Rec. Doc. 1-17; *Giroir* Rec. Doc. 1-10.[2] Specifically, Plaintiffs pointed to the February 2019 pull document, which reflected 231 individuals held past their legal release dates that month, for an average of about 44 days each. *See* Rec. Doc. 115 at 74-75.  At the hearing on Plaintiffs' Motion for Class Certification, DOC Director of Data Research Melanie Gueho testified that sentencing data was manually entered into CAJUN in order to compute the time an individual must serve. *Id.* at 24.

DOC Program Manager Angela Griffin, however, testified that the pull documents—based on the data manually entered by the preclass department—were potentially inaccurate. *See* Rec. Doc. 115, at 155-56. She testified that she found errors in the February 2019 pull document. *Id*. at 106-07. Judge DeGravelles noted at the hearing that:

> It seems to me it would be useful to have a document that was accurate and it would show all of the people who should have been released on a certain day and weren't.

---

[1] The DOC generated the original pull document in conjunction with an application for a grant from the Department of Justice to address the overdetention crisis. *See Giroir* Rec. Doc. 115, at 49.

[2] All record citations hereafter are to *Giroir* unless otherwise noted.

*Id.* at 108. Counsel for the Defendants responded that it was "not possible" to have an accurate document showing individuals who were overdetained without reviewing each preclass packet of everyone showing up on the spreadsheet. *Id.* at 108-09. Ms. Griffin later testified that she had spent approximately 20 hours to conduct this individualized review of each person reflected in the 234-person February 2019 document, *id.* at 74, 124, amounting to about five minutes per person.

Following this Court's grant of class certification on September 22, 2025, the parties have had numerous informal meetings regarding production of "pull documents." This production was made difficult by the DOC's use of the outdated CAJUN system, which ran on a single server and required incremental backups lest the data be lost. Plaintiffs moved for a status conference, which was held before Judge DeGravelles and Magistrate Judge Johnson on February 26, 2026. *Humphrey* Rec. Doc. 276. At that status, counsel for Defendants updated that a new system called CIPRS had just become available in the last week. *Id.* The parties agreed upon three-month increments of pull document data to strike a balance between the risk of overwriting data and the need to expedite data production. Judge DeGravelles ordered that a follow-up status conference would be held in a few weeks to gauge how long it would take to generate a pull document under the new system. *Id.* A telephone status conference was then held on March 18, 2026, before Magistrate Judge Johnson, at which the Defendants updated that they would be able to generate a three-month pull document weekly. *Humphrey* Rec. Doc. 277.

### B. The Discovery Dispute

Defendants have generally been producing three-month increments of historical pull documents on a weekly basis. Additionally, Defendants had previously been producing the then-current 2025 pull documents, such as most recently on January 16, 2026, when Defendants produced a pull document for December 2025. On April 10, 2026, Defendants produced four

months of pull documents from 2021 and 2022. Counsel for Plaintiffs emailed Defendants to inquire about (1) continued disclosure of current data, (2) maintaining a three-month increment schedule as opposed to four months, and (3) ensuring that the data was accurate by manual review, and requested a meeting. Defendants responded on April 15, 2026, that:

> There has been no manual review of the pull documents by DPSC, in accordance with R.Doc. 56.

> DPSC is on a very tight schedule to produce the back up pull documents as communicated to the magistrate judge in our last conference. We can discuss production of current pull documents after DPSC completes production of the pull documents from the backups.

Plaintiffs requested to meet and confer regarding the above responses, and a meet-and-confer was held on April 23, 2026.

At the April 23 meeting, counsel for Plaintiffs explained that, in light of this Court's certification of the class, it was necessary to ascertain individual members in order to provide class notice. Counsel further explained that the pull documents generated by Defendants are both potentially over-inclusive and under-inclusive of the individuals who have been overdetained. The pull documents may be over-inclusive because, as Angela Griffin testified at the class certification hearing, there needs to be a review of each pull document entry to verify whether the individual meets the class definition. Rec. Doc. 115, at 109:21-110:4.

Additionally, Plaintiffs alerted Defendants that the pull documents may be under-inclusive because Defendants are pulling only individuals who were released within seven days of time calculation, potentially excluding individuals who were overdetained for a longer period of time (i.e. if they had been entitled to immediate release at the time of time calculation, but were not released until eight or more days later). *See* Rec. Doc. 115, at 93.

As to the individual review to ensure accurate identification of class members, Defendants responded that they would not conduct such a review, nor would they produce documentation

sufficient to allow Plaintiffs to conduct that review themselves, taking the position that this would be unmanageable. Defendants indicated this issue would have to be resolved by this Court.

As to the potential under-inclusiveness due to the filter used to pull the data, Defendants confirmed that the "released within seven days" criterion is the filter used for the current pull documents but declined to generate revised pull documents or change the criterion for pull documents going forward without a court order. Defendants again directed Plaintiffs to this Court for resolution.

As to the current data, counsel for Defendants represented that unlike CAJUN, the CIPRS system does not overwrite data, and so there is no need to prioritize pulling current data. Defendants will produce current data after earlier data is disclosed to Plaintiffs, within the deadlines set by this Court.

Following the meet and confer, Plaintiffs propounded formal written discovery requests ("Plaintiffs' Sixth RFPs") requesting the following:

- Pull Documents related to the release of all individuals from DOC custody from April 16, 2019 to present where the (1) "RAW GPTS DATE" is less than or equal to "SENTENCE DATE" AND (2) "RELEASE DATE" is eight days or more than "TMCOMP LAST D"

- The underlying documents needed to verify the data for the individuals identified in the Pull Documents already disclosed through the instant litigation as described by DOC's witness Angela Griffin at the Evidentiary Hearing on Plaintiffs' Motion for Class Certification. See Tr. 97:12-18, 106:8-107:2, 114:14-24, 124:8-15.

Ex. A. Plaintiffs served these requests on April 28, 2026. On May 28, 2026, Defendants responded with objections as follows:

**RESPONSE TO REQUEST NO. 1:**

Objection. The term "Pull Document" has always been defined by DPSC as data pulled from CAJUN for inmates released within seven days of time comp ready. Defendants objects to Plaintiff's defined term of "Pull Document" in the request. In order to prepare Pull Documents, DPSC must connect an event in the CAJUN

rids, which is release within seven days of time computation. Plaintiffs have been fully aware of the Pull Document parameters since at least February 2020. See Deposition of Melanie Gueho in the *Grant* case. Plaintiffs represented to the Court that class members could be ascertained through the Pull Documents, despite Defendant's argument that the Pull Documents do not identify alleged class members. The Court relied on Plaintiff's arguments in ruling on class certification. Now, after Defendants have gone through the arduous process of obtaining back-ups of CAJUN data, loading them onto a server, create pull documents for 60 months, Plaintiff now claim the Pull Documents are "underinclusive" and seek additional documents, which would require DPSC to redo the entire process it has been working on for the last 6 months. Defendants object to this request as unduly burdensome, overbroad, and duplicative. Further, the information sought is not reasonably accessible because of undue burden and cost. Defendant further objects to this request because the burden and expense of the proposed discovery outweighs its likely benefit.

**RESPONSE TO REQUEST NO. 2:**

Objection. This request is overbroad and unduly burdensome. Further, the information sought is not reasonably accessible because of undue burden and cost. Defendant further objects to this request because the burden and expense of the proposed discovery outweighs its likely benefit. Further, as DPSC witnesses testified, it is apparent from the face of the pull documents that many individuals would not meet the class definition such that production of all inmate files for every individual on the pull document is unduly burdensome and overbroad.

Ex. B.

Plaintiffs requested to meet and confer with Defendants, and Defendants indicated that the issues would be better addressed by the magistrate judge. Plaintiffs further requested that Defendants identify the specific nature or extent of that burden asserted for both requests, and identify the specific steps Defendants contend would be required to generate the requested information in the first request.

### C.  Plaintiffs' Argument

Objections to discovery requests on the grounds that the requests are burdensome or disproportionate must be specific and substantiated. Fed. R. Civ. P. 34(b)(2)(B). In the Fifth Circuit, the "party resisting discovery must show specifically how . . . each [request] is not relevant or how each question is overly broad, burdensome or oppressive." *Tim Long Plumbing, Inc.* v.

*Kinsale Ins. Co.*, 2020 WL 6559869, *3 (E.D. Tex. Nov. 9, 2020) (citing *McLeod, Alexander, Powel & Apffel, P.C.* v. *Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). Conclusory objections that the requested discovery is "overly broad" or "burdensome" are insufficient. *Id.* (citing Fed. R. Civ. P. 26(b)(1)); *Tadlock* v. *Arctic Cat Sales, Inc.*, 2017 WL 1032516 at *8 (M.D. La. 2017). To that end, courts in this circuit have required that the resisting party submit affidavits or other evidence "revealing the nature of the burden." *Hough* v. *Orbital Eng'g, Inc.*, 2025 WL 4102438, *6 (M.D. La. Mar. 25, 2025) (citations omitted); *Lopez* v. *Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. Aug. 1, 2018). Failing to substantiate the objection with evidence "makes such an unsupported objection nothing more than unsustainable boilerplate." *Hough*, 2025 WL 4102438 at *6–7 (rejecting proportionality defense where defendant failed to provide evidence "revealing the nature of the purported burden").

Defendants' conclusory responses here are impermissibly broad and unsubstantiated. Defendants fail to attach to their responses any evidence demonstrating the nature of the purported burden, which this Court has also previously found to be unsubstantiated. *See Humphrey* v. *LeBlanc*, 2021 WL 3560842, at *5–6 (M.D. La. Aug. 11, 2021) (finding that gathering data for months other than February 2019 would not be unduly burdensome). Nor could they, since they have already produced a significant tranche of similar data in response to court orders. *Cf. Miranda* v. *Mahard Egg Farm, Inc.*, 2019 WL 4573637 at *8 (E.D. Tex. Sep. 20, 2019) (rejecting proportionality defense where defendants previously produced "a great deal" of the requested identification data). As a result, the responses amount to the boilerplate this Court has rejected. *See Hough*, 2025 WL 4102438 at *6–7.

Neither have Defendants shown that the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Critically, the requested documents are

central "to determining who may be potential class members," and that information is within the Defendants' exclusive custody and control. *Miranda*, 2019 WL 4573637 at \*8. Defendants have wholly failed to establish that producing the information would be burdensome at all, let alone unduly so, in a manner which outweighs the Plaintiffs' need for information relevant to ascertaining the scope of the certified class and the duration and extent of the DOC's rampant overdetention of class members.

In this Court's ruling granting class certification, this Court noted that the DOC has confirmed that the CAJUN data would allow the identification of individuals within the class with objective data. Rec. Doc. 164, at 45. Although the defendants asserted that the pull document was an internal document created to aid in a funding request, and there was no certification that its contents were accurate, *id.* at 47, this Court found that any inaccuracies in the pull documents could be corrected with "objective criteria." *Id*. at 52. Ascertainability, this Court noted, does not require that every class member is identified before certification, only that "the court be able to identify class members at some stage of the proceeding." *See Seeligson v. Devon Energy Prod. Co., L.P.*, 753 F. App'x 225, 230 (5th Cir. 2018).

That stage of the proceeding is now. Plaintiffs are entitled to discover information related to the identification of class members to effectuate the "best notice that is practicable under the circumstances." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1102 (5th Cir. 1977) (citing Fed. R. Civ. P. 23(b)(3)); *see also Finkel v. Newbridge*, 2014 WL 3579695 at \*6 (S.D. Fla. July 18, 2014) ("[O]nce a class has been certified, a court has the authority to direct that documents identifying class members be produced, even without a discovery request."). Plaintiffs seek this discovery to be able to identify the class members accurately and provide class notification to individuals who were overdetained within the class definition. Courts frequently grant discovery

to plaintiffs seeking to accurately identify class members for notification. *See*, *e.g.*, *Montelongo v. Hous. Auth. City of El Paso*, No. EP-09-CV-388-KC, 2010 WL 2838354, at *4 (W.D. Tex. July 16, 2010); *Castillo v. Hernandez*, No. EP-10-CV-247-KC, 2010 WL 4595811, at *7 (W.D. Tex. Nov. 4, 2010). This Court has found that Plaintiffs are entitled to conduct discovery for class certification purposes despite the Defendants' argument that it would be premature before a ruling on class certification. *Humphrey* Rec. Doc. 56, at 11-12.

This Court has previously noted that Defendant has "misconstrued" its order concerning the discoverability of pull documents (*Humphrey* Rec. Doc. 56), and Defendant continues to do so here. *See Humphrey* Rec. Doc. 199, at 7. The Court's ruling granting in part Plaintiffs' Motion to Compel Production of CAJUN Data (*Humphrey* Rec. Doc. 56) does not suggest that Defendants are relieved of the obligation to produce accurate and complete pull documents, by reviewing the pull documents to determine whether they accurately identify overdetained individuals.

In Plaintiffs' *Motion to Compel Production of CAJUN Data*, Plaintiffs sought production of pull documents sufficient to identify DOC prisoners who were overdetained during the class period. *See Humphrey* Rec. Doc. 36-1. This Court granted the motion to compel as it related to production of pull documents including CAJUN data, master prison records, and time computation documents for all inmates in DOC custody from April 2019 to May 2020, for all inmates who (1) were eligible for immediate release at the point their time was initially computed, (2) had a "must serve" number less than or equal to zero, and/or (3) had a "must serve" number less than the number of days between the inmate's sentencing date and the date of the inmate's initial time computation. *Humphrey* Rec. Doc. 56, at 14.

In reaching this decision, the Court rejected Defendant's arguments that production would be unduly burdensome or overbroad, *id*. at 9, and likewise rejected the contention that producing

9

pull documents would require the DOC to create new documents, *id*. at 5–6. The Court denied the Motion only insofar as Plaintiffs sought monthly productions of the first three categories of documents, reflecting their status as of the first day of each month, citing the early stage of the litigation. *Id*. at 14.

The information sought here is both relevant and necessary to identify class members and does not impose an undue burden on Defendant. Indeed, Plaintiffs have offered reasonable alternatives to mitigate any purported burden. Specifically, Plaintiffs have proposed that Defendant produces the underlying sentencing documents, which would allow Plaintiffs to conduct the "manual review" that Defendant claims would be unduly burdensome. Plaintiffs have also suggested that Defendant expand the filter applied to the pull documents on a going-forward basis to more quickly capture the full dataset of overdetained individuals. Defendants, however, have declined to adopt either of these proposals.

For these reasons, Plaintiffs respectfully submit that the requested discovery falls squarely within the scope of relevance and proportionality under the Federal Rules. Defendant's continued effort to misconstrue this Court's prior order and resist production is unavailing, particularly where the Court has already rejected arguments of burden and overbreadth. Accordingly, the requested information should be produced so that Plaintiffs may accurately identify and notify class members and advance this litigation on the merits.

## II.    Defendant's Position

Pursuant to the agreement in the March 18, 2026, status conference, Defendant has been on schedule producing the pull documents in three-month increments.  Production of all pull documents from 2019 through 2025 should be completed in a month or so. This discovery dispute concerns Plaintiffs' request for a new set of documents from 2019 to present that expand the pull

document criteria currently being produced. Plaintiffs also request that Defendant either: (1) perform a manual review of records for each individual on the pull documents from 2019 to present; or (2) produce underlying documents for each individual listed on the pull documents from 2019 to present. Defendant asserts these requests for unduly burdensome and unreasonable.

In June 2020, Plaintiffs issued their first request for "Pull Documents." Plaintiffs defined "Pull Documents" using the same parameters as the February 2019 pull document: offenders released in February 2019 within seven days of their time computation. See R.Doc. 36-2, R.Doc. 36-5, p. 28. In opposing Motions to Compel and Class Certification, Defendants have consistently advised the Court and Plaintiffs that the parameters for the "Pull Document" are inmates who were released in a given month within seven days of their time computation. R.Doc. 37-3 ¶ 6. At the Class Certification hearing in October 2023, Melanie Gueho again testified that the parameters for the Pull Documents were inmates released within seven days of their time computation. Transcript, p. 93.

In September 2025, Plaintiffs requested a status conference to discuss production of additional "Pull Documents." Again, Plaintiffs were well aware of the parameters of the "Pull Documents." Pursuant to the status conference and R.Doc. 263, Defendants began creating and producing "Pull Documents," along with last known contact information  for each individual on the "Pull Documents." By January 2026, Defendants produced 12 "Pull Documents" for 2025. Defendant also provided last known contact information for "Pull Documents" previously produced.

As discussed in multiple status conferences, to produce the requested pull documents from 2020 through 2024, Defendants were required to utilize "back ups" of CAJUN data, which included requesting each back up from OTS, loading onto a designated server, and creating a pull

11

document from each backup. The parties agreed that Defendnats would provide "Pull Documents" in three-month increments. On March 18, 2026, Defendnats advised the Court that it could produce a three month pull document each week. R.Doc. 277.

Defendants have been diligently keeping to the schedule set at the March 2026 status conference. R.Doc. 277. Defendants have produced over 60 months of Pull Documents. Production of all Pull Documents from 2019 through 2025 should be complete in one month.

For the first time in this litigation, in late April 2026, Plaintiffs "raised concerns" that the Pull Document criteria, that they selected, was "underinclusive." At this point, Defendant had created and produced over 50 months of Pull Documents (over four years' worth). Defendant advised Plaintiffs that they selected the parameters, they represented to the Court that the Pull Documents identified class members, and the Court accepted Plaintiffs' position over Defendants' objections. Plaintiffs submitted discovery requests seeking additional CAJUN pull data from 2019 to present, over seven years of additional excel spreadsheets for each month (over 80 months). To comply with this request, Defendant would be required to pull back up data for each new excel sheet, and essentially redo all of the substantial efforts that Defendant has undertaken to date. This is, by definition, overly burdensome.

While Plaintiffs argue that they offered to only have Defendant "expand" the pull document parameters for the remaining months to be produced, this "solution" creates even bigger issues. First, Plaintiff's requested expanded data would necessarily pull offenders that would not actually be included in the class definition. Instead, it would pull any offender who was recently time comped and released within. for example, 30 days of that time computation. This would include any release, not those who were recently sentenced. As Defendants have explained throughout this litigation, the original Pull Document parameters were not intended to pull offenders who were

"entitled to release at the time of sentencing." It was only intended to pull offenders who were released shortly after they were time comped.

Plaintiffs have consistently represented to this Court that the Pull Documents are necessary for both merits issues and to identify class members. Plaintiffs have been aware since 2020 what parameters were used to prepare Pull Documents and have tailored their discovery requests to those parameters. Only after Defendant took substantial time and effort in creating and producing years' worth of Pull Documents, Plaintiffs now take the contradictory position that documents created and produced under Plaintiffs' parameters are insufficient to identify class members. The request is overly burdensome and duplicative because the request would require Defendant to (1) again request CAJUN backups for over 84 months; (2) again load month by month onto a designated server; (3) again create a new CAJUN data set (which may not even be workable); (4) again load the data set into a current server to identify last known contact information; and (5) produce again 84 months of excel spreadsheets. Using the same time frame that the parties are currently working under, it would take seven months to prepare new excel data sheets. Given that Plaintiffs requested the specific parameters, requiring Defendant to redo these efforts after Plaintiffs changed their minds is not contemplated under the discovery rules.

As to the request for Defendant to perform an individualized review of each inmate listed on 7 years' worth of pull documents, this request is unduly burdensome. First, Plaintiffs request that Defendant perform an individualized review of each inmate to determine whether that inmate meets the class definition. This would require an individualized review to determine whether each inmate was : (1) entitled to release at the time of their remand (either pursuant to sentencing or parole revocation); (2) released by the DOC more than 48 hours past the date that they were

13

remanded to the DOC's custody; and (3) whether this release was <u>due to Defendant's failure to implement and maintain an adequate process for timely releasing inmates</u>. See R.Doc. 260, p. 4.

This is not a clerical task but requires a determination as to the cause and/or fault of each individual listed on a pull document. This is essentially thousands of "fault determinations" that Plaintiffs want Defendant to undertake. This is also the exact type of review that Defendant urged precluded class certification.

Further, Plaintiffs' "offer" to have Defendants produce thousands of inmate files is also unworkable. At the outset, as explained in the class certification hearing, many offenders on the pull documents can be screened out as not meeting the class definition on the face of the pull documents. See Transcript, pg. 108-109. See also R.Doc. 40, wherein Plaintiffs admitted that from the February 2019 Pull Document, of the 231 inmates on the pull document, only 148 inmates had a raw GTPS date was the same or earlier as the sentence date. Yet, Plaintiffs seek underlying data from all inmates listed on all Pull Documents.

In addition, locating and producing entire files for an estimated 15,000 inmates would be a time consuming and burdensome task. Defendant further objects to Plaintiffs' counsel performing the individualized review of each case to determine whether each inmate meets the class definition, to include whether each circumstance of an inmate's release was due to "<u>Defendant's failure to implement and maintain an adequate process for timely releasing inmates</u>." This exercise would create thousands of mini trials prior to class notice, which is inappropriate for class action cases.

Accordingly, Plaintiffs and Defendant ask this Court for a status conference to discuss this issue.

Dated: June 25, 2026

*/s/ Cecelia Kappel*

Cecelia Trenticosta Kappel, La. Bar No. 32736
Samantha Pourciau, La. Bar 39808
Michael Allen, La. Bar 41142
The Promise of Justice Initiative
1024 Elysian Fields Avenue
New Orleans, LA 70117
Tel: (504) 529-5955
ctkappel@defendla.org
sbosalavage@defendla.org
mallen@defendla.org

Brian Morris, *admitted PHV*
Maria Makar, *admitted PHV*
Loevy & Loevy
311 N. Aberdeen St.
Chicago, IL 60607
Tel: (312) 243-5900
makar@loevy.com
Morris@loevy.com

William Most, La. Bar 36914
Caroline Gabriel, La. Bar 38224
Most & Associates
201 St. Charles Ave., Ste. 2500 #9685
New Orleans, LA 70170
Tel: (504) 509-5023
williammost@gmail.com
caroline.gabriel.ma@gmail.com

*Attorneys for Plaintiffs*

Respectfully submitted,
**JEFF LANDRY**
**Attorney General**

By:  /s/ Andrew Blanchfield
Andrew Blanchfield, T.A. (#16812)
Email: ablanchfield@keoghcox.com
C. Reynolds LeBlanc (#33937)
Email: rleblanc@keoghcox.com
Christopher K. Jones (#28101)
Email: cjones@keoghcox.com
Chelsea A. Payne (#35952)
Email: cpayne@keoghcox.com
Special Assistant Attorneys General
701 Main Street (70802)
Post Office Box 1151
Baton Rouge, Louisiana 70821
Telephone: (225) 383-3796
Facsimile: (225) 343-9612

16